**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| JULIE DURAN,<br><br>Plaintiff,<br><br>v.<br><br>BRAGG LIVE FOOD PRODUCTS, LLC,<br><br>Defendant. | **Case No.: 23-cv-60812-AHS** |

**DEFENDANT BRAGG LIVE FOOD PRODUCTS, LLC'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

Defendant Bragg Live Food Products, LLC ("Bragg") responds to Plaintiff's Motion to Compel Defendant to Collect, Review, and Produce Responsive Documents (ECF 18) ("Motion") as follows:

## INTRODUCTION

This is a narrow and straightforward case. Plaintiff alleges that Bragg, which manufactures and sells liquid apple cider vinegar ("ACV") and two apple cider vinegar supplements ("ACV Supplements"), makes "unfair and deceptive" statements in various marketing and advertising materials, including the labels for these products, in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *See* Compl. (ECF 1-2) ¶¶ 1–3, 37.[1] Plaintiff seeks to represent a class of Florida individuals who purchased ACV and the ACV Supplements who, Plaintiff claims, "have suffered losses because of Bragg's unfair and deceptive acts." Compl. ¶ 39.

Plaintiff filed her motion to compel on October 27, 2023 ("Motion"), four days before the date the parties agreed Bragg would "substantially complete" its production. Since then, Bragg

[1] Bragg removed this case from state court on May 2, 2023. *See* ECF 1 (Notice of Removal).

substantially completed its production and produced over 250 additional documents consisting of over 1,000 pages.[2] Plaintiff filed the Motion without reviewing any of those documents. Plaintiff's Motion fails to quote or identify ***any*** request for production ("RFP") for which Bragg's response is deficient. Likewise, Plaintiff's Motion quotes no specific objections raised by Bragg in response to any such request with which she takes issue. Instead, Plaintiff mischaracterizes Bragg's objections, which are properly stated in its formal discovery responses, not its correspondence with counsel, and makes a blanket allegation that the process Bragg used to identify responsive documents was somehow improper because Bragg did not employ the 11 specific keyword searches Plaintiff unilaterally demanded.

It is well-settled that it is the obligation of the responding party's counsel to devise a reasonable method of searching for documents in response to discovery requests. While search terms can be useful in some cases, they are neither a panacea nor a requirement. The majority of Plaintiff's proposed keyword search terms are unreasonable and unnecessary. First, many are tied to RFPs for which Bragg has advised that no responsive documents exist (*e.g.*, documents related to non-existent federal investigations). When counsel of record represents to the Court it has made a reasonable search and responsive documents do not exist, the Court should rely on counsel's representation unless there is evidence establishing the representation is not accurate. Second, many of the proposed search terms do not match up to Plaintiff's actual RFPs but are simply broad terms unlikely to help identify responsive documents or to identify documents related to any specific RFP, imposing an undue burden on Bragg. Search terms are also unnecessary to locate responsive documents that are readily identifiable (*e.g.*, documents disclosing Bragg's sales in

---

[2] Many of Bragg's documents contained confidential material and were produced upon the Court entering the parties' Confidentiality Order on October 31, 2023.

Florida during the relevant period). For each of these reasons, as more fully explained below, Plaintiff's premature and inadequate motion should be denied.

## FACTUAL BACKGROUND

On July 26, 2023, Bragg received Plaintiff's First Set of Requests for Production of Documents ("Requests"). Bragg then engaged in extensive internal discussions, including discussions with counsel, to determine a methodology to locate and collect responsive documents. On September 14, 2023, Plaintiff's counsel sent Bragg a list of 11 keyword search strings, untethered to any specific RFP, proposing that Bragg use those keywords to collect documents. *See* Pl. Ex. 3.[3] While Bragg's counsel was not averse to running properly tailored search terms should they help locate responsive documents, Bragg was successfully locating responsive documents to Plaintiff's RFPs without applying the proposed keyword search terms. On October 9, 2023, Bragg timely provided written responses and objections to Plaintiff's Requests. *See generally* Bragg Ex. 1. Bragg provided amended responses and objections on October 27, 2023. *See generally* Bragg Ex. 2.

On October 13, 2023, the date Bragg produced its first installment of documents, Plaintiff sent Bragg a letter identifying purported deficiencies in Bragg's responses and objections. On October 19, 2023, counsel for Plaintiff and Bragg held a meet and confer to discuss Bragg's responses and objections, as well as the status of Bragg's document production. During the meet and confer, Bragg made it clear to Plaintiff that Bragg believed it could locate responsive documents without a blanket application of the list of keyword search terms Plaintiff proposed, but agreed it would consider a narrow, tailored, and specific keyword search term proposal linked

---

[3] Exhibits to Plaintiff's Motion are referred to as "Pl. Ex. __." Exhibits to Bragg's Response are referred to as "Bragg Ex. __." Internal citations and quotations are omitted, and emphasis is added unless stated otherwise.

to specific RFPs. The parties also agreed Bragg would substantially complete its production by October 31, 2023. Later that same day, rather than sending a narrow and tailored list of search terms linked to specific RFPs, Plaintiff's counsel sent an email listing the exact same proposed keywords from its initial September 14 proposal, which did not address any of the original problems. *See* Pl. Ex. 6.

On October 24, Bragg sent a letter explaining why Plaintiff's proposal was unreasonable, including because the proposed keyword search terms asked Bragg to collect documents Bragg already knew and had stated did not exist, and were overly broad and not narrowly tied to the language of Plaintiff's RFPs and, therefore, unlikely to identify documents responsive to the particular RFP Plaintiff identified. Bragg also noted that many of the proposed keywords were "tied" to RFPs for which Bragg could readily identify documents without the application of search terms. Less than an hour later and without waiting for Bragg's impending production, Plaintiff's counsel asserted that the parties were at an impasse. *See* Bragg Ex. 3. On October 31, 2023, Bragg produced an additional 261 documents consisting of over 1,000 pages. This is in contrast to Plaintiff, who has produced ***not a single document*** responsive to Bragg's requests, including requests for documents showing her purchases of Bragg products, documents relating to her purported damages, and documents containing any Bragg statement that Plaintiff claims was deceptive or untrue.

As discussed below, Plaintiff's Motion is premature, inadequate, and should be denied. Bragg has reasonably responded to Plaintiff's RFPs and produced over 1,000 pages of documents. Incredibly, the Motion fails to identify or quote a single discovery request to which Plaintiff contends Bragg's response was inadequate and fails to identify any specific categories of documents that Plaintiff believes is missing from Bragg's production.

**ARGUMENT**

Rather than identifying any specific RFP for which Plaintiff contends Bragg provided an inadequate response, Plaintiff complains—without reviewing the documents produced—that Bragg did not run Plaintiff's keyword searches and asks the Court to order that such searches be run. But the Motion fails to explain which of Bragg's responses is inadequate, which responsive documents have not been produced, or how the proposed search terms would remedy any of the undisclosed inadequacies of Bragg's responses. Instead, Plaintiff resorts to cherry-picking language from correspondence between the parties and mischaracterizing Bragg's responses in meet and confer conferences and asks the Court to order Bragg to run a series of extremely broad and unnecessary search terms, likely only to run up the costs of litigation without materially advancing the case.

**A. Bragg Has Collected and Produced Responsive Documents**

Fed. R. Civ. P. 26(b)(1) limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Plaintiff's FDUTPA claim has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Marrache v. Bacardi U.S., Inc.*, 17 F.4th 1084, 1097–98 (11th Cir. 2021). Courts use an objective test to determine whether an act is deceptive under FDUTPA and Plaintiff must prove, among other things, that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id.* at 1098. While the scope of discovery is broad, it "is not without limits, and discovery is not a fishing expedition." *Garcia v. Murcia Grp., Inc.*, 2019 WL 13155900, at *2 (S.D. Fla. Aug. 5, 2019). Rather, the scope of discovery is framed by the pleadings. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997) ("The scope of allowable discovery is determined by the claims . . . raised in the case."). Discovery and search terms for ESI should be shaped as "specific as possible." *See Lawson v.*

*Love's Travel Stops & Country Stores*, 2019 WL 7102450, at *2 (M.D. Pa. Dec. 23, 2019).

Plaintiff asserts that Bragg's procedure for reviewing and collecting responsive documents is "indefensible." Motion at 4. Not so. In fact, Bragg's efforts to search for documents was fulsome and routine. After receiving Plaintiff's RFPs, counsel worked with several Bragg senior officials responsible for managing the relevant aspects of the business to develop a strategy to identify, locate, and produce responsive documents. Under counsel's guidance, Bragg applied appropriate technological methods, including date parameters and search terms, to identity responsive, non-privileged documents.[4] While Plaintiff may disagree with the methods Bragg used, "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, Principle 6. Courts across the country have affirmed that the responding party is in the better position to determine how to collect, search for, and produce documents. *See, e.g.*, *Livingston v. City of Chicago*, 2020 WL 5253848, at *3 (N.D. Ill. Sept. 3, 2020); *Little Hocking Water Ass'n v. E.I. DuPont de Nemours & Co.*, 2013 WL 608154, at *9 (S.D. Ohio Feb. 19, 2013).

Plaintiff's example that allegedly demonstrates the inadequacy of Bragg's efforts (*see* Motion at 5) mischaracterizes an example Bragg used to make a point: with respect to Plaintiff's request for "[a]ll non-privileged communications regarding this Lawsuit, including any communications internal to Bragg or with any third-party[,]" Bragg's CEO stated that she did not

---

[4] Plaintiff's reliance on *EEOC v. M1 5100 Corp.*, 2020 WL 3581372 (S.D. Fla. July 2, 2020), is misplaced because the "self-collection" that concerned the court in that case was done "without sufficient attorney knowledge, participation, and counsel." *Id.* at *3. Here, Bragg constantly consulted counsel regarding its discovery responses and document collection efforts.

have any non-privileged communications regarding the lawsuit.[5]

Plaintiff complains that Bragg's first production batch contained only 41 documents. But these 41 documents that Plaintiff scoffs at are scientific studies and scholarly articles that substantiate Bragg's claims and demonstrate the veracity of Bragg's representations. Presumably, these are the documents Plaintiff's expert will evaluate to offer an opinion on the science supporting Bragg's claims.[6] Additionally, the documents Bragg timely produced since Plaintiff filed the Motion include product labels, samples of advertising and marketing materials during the relevant time period, examples of contracts with social media influencers, research on consumer preferences, and Bragg's sales information for the relevant time period—all responsive to Plaintiff's RFPs, and all obviously ignored by Plaintiff's Motion.

### B. Plaintiff's Keyword Search Term Proposal Is Unreasonable

During the October 19 meet and confer, Bragg told Plaintiff that it would consider and evaluate a narrow, tailored, and specific keyword search term proposal for specific RFPs to the extent they might help ensure that all responsive documents were collected. While Bragg acknowledges that keyword searches may be a valuable discovery tool in some cases, "they can create issues of their own as well," including their potential to be over-inclusive. *Townhouse Rest. Of Oviedo, Inc. v. NuCO2, LLC*, 2020 WL 4923732, at *3 (S.D. Fla. June 24, 2020). After the October 19 meet and confer, Bragg expected to evaluate an updated keyword search term proposal

[5] Other Bragg senior employees involved with this lawsuit also stated the same. *See* Bragg Ex. 2 at 9. That Bragg has limited emails and discussions regarding the lawsuit to senior executives of the company is hardly surprising. Moreover, "discussions" between random Bragg employees regarding the lawsuit are hardly likely to be relevant to whether Bragg's marketing and advertising of the products at issue are objectively unfair or deceptive.

[6] Shortly after the litigation began and outside of the discovery process, Bragg provided Plaintiff a complete list of the studies that support Bragg's claims on August 5, 2023. It is unclear to Bragg how it has "jeopardized the case schedule" (Motion at 1) when Plaintiff has had Bragg's substantiation materials since August.

and engage in good-faith negotiations on the use of keywords to help identify and locate responsive documents. Instead, Plaintiff simply reproduced the initial list of wildly search terms. Bragg explained why the proposal was inappropriate and unjustified, hoping to narrow any dispute. Rather than offer to engage in further negotiations, Plaintiff's counsel told Bragg that the parties were at an impasse and Plaintiff filed the Motion. The search term proposal that Plaintiff now asks the Court to order Bragg to apply is unreasonable and not proportional to the needs of the case for several reasons, as discussed below.

### 1. Plaintiff Proposed Keyword Search Terms to Collect Documents That Objectively Do Not Exist

Plaintiff asks the Court to compel Bragg to run keyword searches to locate documents that Bragg has represented do not exist. For example, Plaintiff demanded that Bragg run keyword search terms for RFP No. 7 ("All documents relating to investigations or inquiries by any governmental authority concerning ACV, ACV Supplements, or the use of apple cider vinegar in Bragg products."). Bragg stated in its responses that it was "not aware of any investigations or inquiries by any governmental authority concerning Bragg's ACV, ACV Supplements, or apple cider vinegar products." Bragg Ex. 1 at 5.[7] Bragg's executives and employees would certainly be aware of any such investigations or inquiries. Indeed, Bragg stated in its verified interrogatory responses that it "is not aware of any inquiry or investigation by any local, state, or federal governmental entity relating to Bragg's ACV or ACV Supplements." Bragg Ex. 4 at 4. Bragg's counsel reiterated this during the October 19 meet and confer. Yet Plaintiff continues to insist that Bragg run keyword search terms to locate documents responsive to RFP No. 7.[8]

[7] *See also* Bragg Ex. 2 at 4–5.

[8] RFP No. 8 seeks the same documents relating to investigations of Bragg by "any consumer protection or watchdog organization." Because Bragg told Plaintiff that there have been no such investigations, Plaintiff's demand that Bragg apply search terms to locate these documents is

Similarly, Plaintiff demanded that Bragg run keyword searches for RFP Nos. 11–14. These RFPs generally seek documents relating to comparisons Bragg made of Bragg's products to other supplement products specifically containing Vitamin B12, Vitamin D3, and Zinc. Bragg stated in its responses that it was unaware of any responsive documents because Bragg does not conduct such comparisons. *See* Bragg Ex. 1 at 6–7. Bragg's counsel reiterated this at the October 19 meet and confer. But Plaintiff still demands Bragg run keyword search terms for these RFPs. Asking Bragg to apply keyword search terms to identify non-existent documents would serve no other purpose than to unnecessarily run up the costs of litigation.

### 2. Plaintiff's Proposed Keyword Search Terms Are Overly Broad and Not Tailored to Specific Requests

Plaintiff's proposed keyword search terms are also overly broad and not tied in any meaningful way to the RFPs identified. For example, Plaintiff insists that Bragg run keyword searches for RFP No. 9 ("Documents sufficient to show the volume and dollar amount of sales of ACV and ACV Supplements in the State of Florida . . . on a quarterly and annual basis."). But Plaintiff's proposed keywords have no relationship to Bragg's sales figures. Instead, Plaintiff demands Bragg use keywords like "(ACV OR 'apple cider vinegar') AND (prefer* OR trend* OR survey* OR study OR trial*)" to identify sales information. Not only are these keywords unlikely to identify the information requested, but Bragg does not need keywords to identify readily available sales information, which Bragg obtained from the appropriate finance employees and produced on October 31, 2023.

Similarly, the keywords that Plaintiff proposed for RFP No. 6 ("All documents relating to ***research, studies, surveys, or other analyses about consumer preferences, demands, or trends***

---

flawed for the same reason. A similar situation exists with respect to RFP No. 10. *See* Bragg Ex. 1 at 5–6; Bragg Ex. 2 at 5 (Bragg's responses stating that no documents exist in response to RFP No. 10).

concerning ACV, ACV Supplements, or other products containing apple cider vinegar") are not crafted to locate research, studies, surveys, analyses, consumer preferences, demands, or trends. Instead, Plaintiff proposes search strings including "(ACV OR 'apple cider vinegar') AND 'quality assurance.'" Without applying Plaintiff's search terms, Bragg successfully located and produced non-privileged, responsive documents to this RFP, including reports and analyses regarding consumer preferences conducted or commenced by Bragg, on October 31, 2023.

Likewise, Plaintiff's proposed keyword searches for RFP No. 17 ("All documents relating to the ***design and content of labels and other packaging material*** used for ACV and ACV Supplements") have nothing to do with labels and packaging. Rather, they include terms such as "(ACV OR 'apple cider vinegar') AND 'quality assurance,'" and "(ACV OR 'apple cider vinegar') AND (analy* OR compar* OR survey* OR overview OR compet*) AND (price* OR pricing OR profit*)." Bragg produced all labels for ACV and ACV Supplements during the relevant time period, as well as materials concerning how these labels were developed, on October 31, 2023.

Rather than craft keyword search terms that would identify documents that exist or are meaningfully tied to specific RFPs, Plaintiff recycled her initial search term proposal and tried to retrofit the keywords to correspond to specific RFPs. But the burden imposed in applying Plaintiff's proposal is unjustifiable because Plaintiff is insisting that Bragg run keyword searches to identify documents that Bragg has explained several times do not exist and is pushing for Bragg to run keyword searches likely to capture non-responsive and irrelevant documents.

## CONCLUSION

For all the reasons set forth above, Plaintiff's Motion should be denied, and Plaintiff should be directed to review the documents timely produced after Plaintiff filed the Motion before burdening the Court with a premature and defective discovery motion.

Dated: November 3, 2023

Respectfully submitted,

*/s/ Mark F. Bideau*

MARK F. BIDEAU, Esq.
MATTHEW A. RICHARD, Esq.
**GREENBERG TRAURIG, P.A.**
777 South Flagler Drive, Suite 300 East
West Palm Beach, FL 33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222
bideaum@gtlaw.com
matthew.richard@gtlaw.com
thomasd@gtlaw.com
FLService@gtlaw.com

*Counsel for Defendant Bragg Live Food Products, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 3, 2023, I served the foregoing document using the CM/ECF system, which will send notification of filing to all counsel of record.

*/s/ Mark F. Bideau*
Mark F. Bideau