**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JULIE DURAN,

Plaintiff,

v.

BRAGG LIVE FOOD PRODUCTS, LLC,

Defendant.

**Case No.: 23-cv-60812-AHS**

**DEFENDANT BRAGG LIVE FOOD PRODUCTS, LLC'S MOTION TO COMPEL**

Defendant Bragg Live Food Products, LLC ("Bragg") files this Motion to Compel following Plaintiff's December 8, 2023 deposition and her responses to Bragg's Second Request for Production of Documents, and asks this Court to (a) compel Plaintiff to produce medical records relating to her weight, cholesterol, blood sugar, and immunity from 2016 to the present, when she claims she took Bragg's Apple Cider Vinegar but it "did not work," (Ex. A 81:23-92:17, 89:14-18); (b) overrule Plaintiff's confidentiality objections related to the recent *Chatlogs v. Goli Nutrition Inc.* Apple Cider Vinegar gummy class action settlement, where Plaintiff served as a proposed class representative, and order her to produce it or testify as to its terms; and (c) order Plaintiff to search her phone, social media accounts, and computer for documents, including social media posts, relating to Defendant's discovery requests, which she admitted at her deposition that she did not do, and immediately produce any responsive ESI including her internet search history, social media activity, documents, emails, messages, and any other non-privileged communications concerning Bragg.[1]

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff filed this putative class action against Bragg related to its liquid apple cider vinegar ("Liquid ACV") and two apple cider vinegar capsule supplements ("ACV Supplements") (collectively, "Supplements"), for violation of FDUTPA and unjust enrichment. *See* Compl. (ECF 1-2).

Plaintiff alleges Bragg makes certain claims about its Supplements related to weight, blood sugar/glucose, cholesterol, and immunity and that Bragg's Supplements did not work. *See* Compl. Plaintiff seeks to represent a class of consumers who "feel the same way as" she does: "that the

[1] Plaintiff's Deposition Transcript is attached as Exhibit A. Bragg's First Set of RFPs and Plaintiff's operative amended responses are attached as Exhibits B and C, respectively. Bragg's Second Set of RFPs and Plaintiff's responses are attached as Exhibits D and E, respectively. Exhibits are referred to as "Ex. ___."

product did not work." Ex. A 89:14-18. At her deposition, Plaintiff testified that she repeatedly tested Bragg's Liquid ACV and it did not work:

> Q. In the years that you were taking the apple cider vinegar, did you find it suppressed your appetite?
> A. No.
> Q. Why did you keep taking it for six years?
> A. I just kept trying it.
> Q. So for six years, you took it, and you didn't think it was working, but you kept buying it?
> A. I kept trying to see if it burned fat.
> Q. During the six years you took it, did it burn fat?
> A. No.
> ****
> Q. So, as far as you're concerned, it didn't do anything in the six years, but you kept buying it?
> A. Yes.

Ex. A 81:23-92:17. ***Bragg is entitled to explore the truth of these allegations as part of its defense—including whether its Liquid ACV actually worked when Plaintiff took it or whether there were alternative explanations why Plaintiff did not see results.***

Similarly, while Plaintiff agreed to produce documents from the *Goli* litigation on a rolling basis in response to RFPs, and did produce some documents relating to the *Goli* litigation, during her deposition, Bragg learned that Plaintiff had entered into a settlement agreement and had received a personal payment not disclosed in her production. When questioned, Plaintiff objected to disclosing the terms of the *Goli* settlement or the amount she received based on confidentiality. Ex. A 87:9-88:24, 91:23-92:10.

Plaintiff should be required to produce all the records from the *Goli* litigation, including any settlement agreement she entered into with *Goli*. Plaintiff was a proposed class plaintiff in the *Goli* litigation, just as she is here, and made very similar allegations to those she is making here: that she consumed Goli products – in that case less than ½ bottle – and those products did not work. At some point, Plaintiff reached a settlement with *Goli* and the terms of that settlement and

whether Plaintiff did anything for the class she sought to represent are relevant to the Court's consideration of whether she is an appropriate class representative in this case. Prior experience is a relevant factor in any class certification process.

Finally, Plaintiff should be required to search her phone and computer for any information regarding Bragg. Plaintiff responded to document requests that she had no documents responsive to requests seeking information regarding Bragg and testified that she had not seen documents relating to Bragg and could not identify or recall a single Bragg-sponsored advertisement or social media post she saw, but testified that she did not search her phone, social media, or computer to see if she had relevant materials. Ex. A 74:12-75:9, 122:22-125:7.

## ARGUMENT

**A. This Court should order Plaintiff to produce her health/medical records in Response to Bragg's Second Set of RFPs (Ex. D and E, Requests 1-10) showing her weight, cholesterol, blood sugar, immunity, and any changes, fluctuations, or issues related to any of these as she has placed these matters "at issue" by filing this lawsuit claiming she took Bragg's Supplements based on representations about these matters, but claimed the products "did not work," and her deposition testimony revealed there could be other causes for this. (Ex. A 84:3-85:23, 152:10-153:10).**

Evidence "is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, Plaintiff claims the Supplements do not work (because they do not help with weight, cholesterol, blood sugar, or immunity), and therefore, Bragg's advertisements are deceptive. Ex. A 81:23-92:17, 89:14-18.

Plaintiff's medical records showing her weight, cholesterol, blood sugar, and immunity, and changes in these metrics could make whether the Supplements in fact work—and therefore (a) its advertisements are deceptive for her FDUTPA claim, and (b) Bragg received a benefit but Plaintiff did not for her unjust enrichment claim—more or less likely. The records are also important as **there are potential alternatives that could explain why ACV did "not work" for**

**Plaintiff** since she testified that at times, she was also trying to ***gain weight and "consuming more food to build a booty."*** Ex. A 84:3-85:23, 152:10-153:10.

One way to determine if Plaintiff can establish causation and damages, which are required for her claims, is to review her medical records which are in her legal possession. Bragg sought these records in each request in its Second Request for Production, *see* Ex. D and E, but Plaintiff objected and has refused to produce any documents.

This Court has compelled plaintiffs who bring lawsuits that make claims about health issues, placing their "physical condition at issue," to produce relevant records, and it should do so here. *See, e.g., Tyer*, 2015 WL 4537250, at *2 (Valle, M.J.); *Vanderwall v. United Airlines, Inc.*, 2014 WL 12495288, at *2–3 (S.D. Fla. Oct. 17, 2014) (Valle, M.J.) (granting defendant's motion to compel documents responsive to multiple requests based on the "at issue" doctrine where plaintiff filed suit related to a slip and fall injury.).[2] And while reliance may not be an element of a FDUTPA case, causation and injury in fact are required. *See*, *Kurimski v Shell Oil Co.*, WL 2913742 (S.D. Fla. 2022); *Gen. Motors Acceptance Corp., v Laesser*, 718 So.2d 276 (4th DCA 1998).

Plaintiff's objections cite *Cox v. Porsche Fin. Servs.*, 330 F.R.D. 322, 334 (S.D. Fla. 2018), a decision by Judge Gayles adopting a report and recommendation certifying a class—***not a discovery order***—for the proposition that "Courts in the Eleventh Circuit have determined that FDUTPA plaintiffs in a class action need not present individualized evidence that each potential

[2] These records, even if held by Plaintiff's healthcare providers, are in her "possession" or "legal control" because she has "the legal right to obtain the documents requested upon demand." *Spano v. Satz*, 2010 WL 11515691, at *1 (S.D. Fla. May 12, 2010) (Rosenbaum, M.J.) (finding documents in possession of plaintiff's medical providers ***in Plaintiff's legal control***, referencing Eleventh Circuit cases, and concluding Plaintiff had a duty to request medical records and ordering her to provide them to defendants) (quoting *Searock d/b/a Allied Marine v. Stripling*, 736 F.2d 650, 654 (11th Cir. 1984)); *see also Benjamin v. Home Depot, U.S.A., Inc.*, 2010 WL 11602739, at *2–3 (S.D. Fla. Aug. 13, 2010) (Johnson, M.J.) (compelling production of medical records by plaintiff).

class member was actually harmed by a defendant's conduct; the plaintiffs only need to show that a reasonable consumer would have been harmed by defendant's conduct . . . ." Plaintiff however ignores that in *Cox*, the actual plaintiff presented evidence showing he himself was injured because he signed a standard form lease agreement from the defendants and, as part of the transaction, traded in a vehicle with a positive monetary value but not received the appropriate value of his trade-in. In that respect, *Cox* supports Bragg's position that it is entitled to the records it seeks. The issue before Judge Gayle was not whether the plaintiff had to show that the defendant's conduct caused him a loss, but whether under the unique facts of that case, what had to be shown as to each class member.

*Cox* also did not involve a plaintiff who claimed she used a product, alleged the product failed, but refused to produce documentation to support those allegations. It is axiomatic that if the Supplements worked, ads saying they worked could not be deceptive.

Here, Plaintiff alleges she purchased certain ACV products but they did not work as advertised—i.e., they did not help with weight management. Ex. A 81:23-92:17, 89:14-18. She could not provide any testimony at her deposition about her weight at any given time, conceded it had fluctuated, and provided an alternative explanation for any weight gain. Ex. A 84:3-85:23, 152:10-153:10. She also could not provide details about her blood sugar or cholesterol, but stated that this information was irrelevant because she did not purchase the product for that reason and in any event would be in her medical records. Ex. A 155:8-21.

While there is a dearth of case law in this District, specifically in a FDUTPA context, addressing this precise issue (likely because plaintiffs do not often allege a product doesn't work, place their health at issue, and then resist relevant discovery), *Stanley v. Bayer Healthcare LLC*,

2011 WL 5569761, at *2–3 (S.D. Cal. Nov. 16, 2011) is close to the facts of this case and involves claims under a consumer protection statute related to advertising and health issues.

In *Stanley*, the plaintiff filed a consumer protection, unfair competition, and unjust enrichment putative class action. Specifically, the plaintiff alleged that the defendant's PCH product was not effective and did not provide plaintiff with the represented or advertised health and digestive benefits. The defendant moved to compel "all" plaintiff's medical records and the Court held that:

> Plaintiff's medical records are relevant to the subject matter involved in the action. FED. R. Civ. P. (b)(1). Because ***Plaintiff alleges that PCH is not effective and did not provide Plaintiff with the represented or advertised health and digestive benefits, Plaintiff's medical records are relevant to Defendant's contention that an alternative explanation exists for PCH's alleged failure to provide health benefits to Plaintiff***.

*Id.* (emphasis added).

Similarly, in *Rikos v. Procter & Gamble Co.*, 2013 WL 4714239, at *1 (S.D. Ohio Aug. 30, 2013), another deceptive advertising putative class action regarding the defendant's product's "health benefits" the court also found that the "Plaintiffs placed their medical information at issue by claiming that Defendant's product provides no digestive health benefit." *Id.* The court reasoned:

> In order to defend itself in this action, Defendant must investigate that claim, including Plaintiffs' medical conditions prior to and after using Defendant's product. Courts in similar false advertising cases, including one involving Plaintiff Rikos, have found plaintiffs' medical information relevant and required its production.
>
> Plaintiffs' medical information is relevant to assessing whether an alternative medical explanation exists for the product's alleged failure to provide digestive health benefits. *See Stanley,* 2011 U.S. Dist. LEXIS 132363, at *7, 2011 WL 5569761. It is also relevant to whether Plaintiffs' injuries are "fairly traceable" to the challenged advertising, as Plaintiffs must prove a causal connection between the advertising and the injury. *See Linares,* 2013 U.S. Dist. LEXIS 102997, at * 12.

(footnote with additional citations omitted)." Other courts have ruled similarly.[3]

Here, as in the above cases, Plaintiff has brought claims under a consumer protection statute (i.e., claiming Bragg's products do not work and consumers are deceived by Bragg's advertisements that they help with weight, blood sugar, cholesterol, and immunity), as well as unjust enrichment. Although Plaintiff could not recall specifics about her weight at her deposition, she conceded her medical records would contain this information. Ex. A 155:8-21. These records are also relevant because there are alternative causes for why the Supplements "did not work" for her (relevant to Bragg's defense). Ex. A 81:23-92:17. This Court should compel Plaintiff to produce these records in response to Bragg's Second RFP, Requests 1-10 redacted to reveal only relevant information .[4]

---

[3] *See In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528–29 (D.N.J. 2015) (ordering disclosure of children's medical records in consumer class action against a manufacturer of formula and cereal products containing "probiotic" bacteria, plaintiffs alleged defendant made false and misleading statements in its advertising, finding the "the medical records are relevant as to the actual effectiveness of the Products, as well as to disclose any other conditions that may alter the potential effectiveness of the Products"); *see also Townsend v. Monster Beverage Corp.*, 2017 WL 4063536, at *3 (C.D. Cal. Sept. 13, 2017) (in putative class action related to allegedly false advertising about Monster Energy Drinks, finding Plaintiffs' medical records relevant to claims and adequacy as class representatives, explaining that "the distinction between providing health benefits or causing injury to health is a distinction without a difference because both must be proven with medical evidence"); *Allen v. Similasan Corp.*, 2014 WL 1806927, at *4 (S.D. Cal. May 6, 2014) (in putative class action for California consumer protection and false advertising, granting in part request for production of medical records, limited to the symptoms and conditions closely related to the allegations); *Plumlee v. Pfizer, Inc.*, 2014 WL 690511, at *4 (N.D. Cal. Feb. 21, 2014) (compelling plaintiff who brought California consumer protection claims based on defendant's alleged misrepresentations about Zoloft's efficacy as an antidepressant to produce medical records, finding that regardless of whether records were relevant to claims, "Plaintiff's medical history is directly relevant to class certification," including because the product was used for multiple indications, and as to whether individual issues would predominate); *cf. Carlson v. Colorado Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 278-79 (D. Colo. 2022) (compelling plaintiff who brough, among other things, Colorado's relevant consumer protection statute and fraud-based claims related to representations about in vitro fertilization treatment to produce medical records predating her IVF treatment).

[4] Bragg has agreed that these records can be redacted to remove information that does not relate to the specific health issues Plaintiff has placed at issue.

**B. This Court should order Plaintiff to produce her recent settlement agreement in the *Goli v. Chatlos* case—another class action in which she recently filed as a class action, related to apple cider vinegar gummies that she also claims did not work; Plaintiff's only objection is that the settlement agreement is confidential is without merit, as this Court has already entered a confidentiality order. [ECF 20].**

Bragg propounded discovery seeking documents related to Plaintiff's prior involvement in class actions. Related to this inquiry, RFP #6 in Bragg's First Set of RFPs requested:

> Documents sufficient to show your involvement in each class action lawsuit in which you served as, or sought to serve as, a class representative.

Ex. B at 5; Ex. C at 3. Plaintiff responded:

> Plaintiff objects to the extent this Request calls for documents protected from disclosure under any applicable court orders, the Attorney-Client privilege, or the Work Product Doctrine. Plaintiff further objects on the basis that any previous participation in a class action lawsuit involves certain documents that are publicly accessible to Defendant without the need for a discovery request.
>
> In accordance with and subject to those objections, Plaintiff will produce responsive, non-privileged documents in her possession, custody, or control, if any exist, on a rolling basis.

Ex. C at 3-4. Plaintiff then produced documents from the *Goli* litigation but left out those relating to the settlement of the case. When questioned during her recent deposition, Plaintiff disclosed that there was a settlement agreement, but when asked about its terms, disclosed only that she and her lawyers received money. Plaintiff was instructed not to disclose the terms of the *Goli* settlement based on confidentiality. Ex. A 87:9-88:24, 91:23-92:10.

A purported class representative's experience and actions in a prior class action is relevant to whether that individual should be appointed to represent another class. *See, e.g.*, *London v. Walmart*, 340 F.3d 1246 (11th Cir. 2003); *Kirkpatrick v. J.C. Bradford*, 827 .2d 718 (11th Cir. 1987). Here, Plaintiff recently filed a nearly identical class action against *Goli* based on its ACV gummies and settled it on undisclosed terms before a class was certified. Ex. A 87:9-88:24, 91:23-92:10. Whether Plaintiff looked out for the interests of other potential class members, or whether

she just looked out for herself may be relevant to the Court's determination as to whether she should be appointed as a class representative in this case. Plaintiff's lone confidentiality objection, based on the above precedent, is insufficient to shield the settlement from disclosure, particularly since this Court has entered a confidentiality order.

Moreover, there is "nothing magical about a settlement agreement," and "Rule 26 has no exception for settlement agreements." *See, e.g., Northstar Moving Holding Co., Inc. v. King David Van Lines*, 2021 WL 9794638, at *2 (S.D. Fla. Sept. 27, 2021).[5] This Court has ordered parties to produce unredacted copies of settlement agreements where, as here, it has entered a confidentiality and protective order. *See, e.g., Onita-Olojo v. Sellers*, 2013 WL 12408994, at *2 (S.D. Fla. Nov. 14, 2013) (Valle, M.J.) (ordering defendant to produce an unredacted copy of a settlement agreement, explaining that confidentiality concerns were addressed by a protective order). This Court should overrule Plaintiff's objection and order the production of any *Goli* settlement or require plaintiff to testify as to its terms.

**C. Plaintiff should be compelled to search for and produce ESI from her phone, social media accounts, and computer.**

At her deposition, Plaintiff testified that she began taking Supplements in 2016 after seeing something "on social media" but could not remember if what she saw was on Facebook or Instagram, could not identify the "influencer" who posted it, and could not recall the names of any influencers she had ever seen on social media regarding Bragg's products. Ex. A 67:11-70:4. Plaintiff also testified that she did not know if what she saw in 2016 was made or sponsored by Bragg. Ex. A 77:6-11. Bragg propounded various requests seeking documents showing what representations Plaintiff saw and when she saw them. Request #10 seeks:

---

[5] *See also Kadiyala v. Pupke*, 2019 WL 3752654, at *3 (S.D. Fla. Aug. 8, 2019); *Jeld-Wen, Inc. v. Nebula Glass Intern., Inc.*, 2007 WL 1526649, at *3 (S.D. Fla. May 22, 2007).

> All Documents relating to any advertising, label, website, or other statement by Bragg that you saw and relied upon before purchasing any of the Products.

Ex. C at 6; Ex. D at 10. Plaintiff responded she could "provide testimony" related to the subject matter, which would be "less burdensome."

> Plaintiff objects to this Request as repetitive (See Request Nos. 2, 3). Plaintiff also objects on burden grounds, as it is not possible to go back in time and capture various marketing materials Plaintiff viewed, and Plaintiff further objects that such marketing materials are in the possession and control of Defendant. Plaintiff can provide testimony on any marketing materials she recalls viewing, which is a less burdensome means of providing this discovery. Plaintiff is not withholding any responsive documents based on these objections.
>
> In accordance with and subject to those objections, Plaintiff has no responsive documents in her custody, possession, or control.

Ex. D at 10. However, Plaintiff did not recall basic details, and worse, testified that she did not search her phone, computer, or any of her social media accounts for documents relating to Defendant's discovery requests:

> Q. I understand you searched for receipts and you didn't have any. Did you search for any documents that were related to Bragg?
> A. No.
> Q. Do you know if there are any documents related to Bragg on your computer?
> A. No.
> Q. You don't know?
> A. There are no documents.
> Q. Did you go back and look at your search history to see if you have any records of searching for Bragg's website or for information about Bragg in your computer?
> A. No.
> ******
> Q. Did you look on your phone -- did you ever search your phone to see if you had any documents relating to Bragg?
> A. No, other than the receipts.
> Q. Did you ever search the search history on your phone to see whether or not it had any information about websites that you looked at that might relate to Bragg or Bragg's website?
> A. No.
> Q. You never looked?
> A. No.
> Q. How about on your Instagram account; did you look to see whether there's any likes or posts that relate to Bragg?
> A. No.

> Q. Did you ever look to see on your Facebook account if there are any likes or posts relating to Bragg?
> A. No.
> Q. Do you know if there are any likes or posts relating to Bragg on your Facebook or Instagram page?
> A. No.
> Q. You don't?
> A. I don't.
> Q. You don't know if there's anything in the search history of your phone that relates to any website or other things you may have looked at for Bragg either; right?
> 7 A. Correct.

Ex. A 123:3-125:7. Following its January 3, 2024 Discovery Hearing, this Court recognized that e-Discovery is appropriate in this case, and as it ordered Bragg, it should also order Plaintiff to search her computer, phone and files and produce any relevant information, particularly given her incomplete, evasive, testimony and failure to recall basic details at deposition.

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues. Counsel will continue to communicate in an effort to resolve the issues in the motion.

*/s/ Mark F. Bideau*
Mark F. Bideau

Dated: January 12, 2024

Respectfully submitted,

*/s/ Mark F. Bideau*
MARK F. BIDEAU, Esq.
MATTHEW A. RICHARD, Esq.
VANESSA PALACIO, Esq.
**GREENBERG TRAURIG, P.A.**
777 South Flagler Drive, Suite 300 East
West Palm Beach, FL 33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222
bideaum@gtlaw.com
matthew.richard@gtlaw.com
palaciov@gtlaw.com
thomasd@gtlaw.com
FLService@gtlaw.com

*Counsel for Defendant Bragg Live Food Products, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 12, 2024, I served the foregoing document using the CM/ECF system, which will send notification of filing to all counsel of record.

*/s/ Mark F. Bideau*
Mark F. Bideau