UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 23-60812-CIVIL-SINGHAL

JULIE DURAN, et al., Fort Lauderdale, Florida

Plaintiffs, January 3, 2024

vs.

BRAGG LIVE FOOD PRODUCTS, LLC,

Defendant. Pages 1 to 93

---

TELEPHONIC HEARING ON DISCOVERY MOTIONS
(TRANSCRIBED FROM THE AUDIO RECORDING)
BEFORE THE HONORABLE ALICIA O. VALLE,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:
HADYN C. PETTERSON, ESQ.
HILGERS GRABEN, PLLC
1230 Lincoln Mall
Suite 200
Lincoln, Nebraska 68508

CARLY A. KLIGLER, ESQ.
HILGERS GRABEN, PLLC
777 South Flagler Drive
Suite 800 West Tower
West Palm Beach, Florida 33401

FOR THE DEFENDANT:
MARK F. BIDEAU, ESQ.
GREENBERG TRAURIG, P.A.
777 South Flagler Drive
Suite 300 East
West Palm Beach, Florida 33401

VANESSA PALACIO, ESQ.
GREENBERG TRAURIG, P.A.
333 Southeast Second Avenue
Suite 4400
Miami, Florida 33131

TRANSCRIBED BY: LISA EDWARDS, RDR, CRR
Reporterlisaedwards@gmail.com
(305) 439-7168

THE COURT: Calling the case Duran versus Bragg Live Food Products, LLC, Case No. 23-Civil-60812.

This case is assigned to U.S. District Judge Raag Singhal, who has referred the matter to me for all discovery-related motions.

Good afternoon. Thank you all for being here for this telephonic hearing.

Before getting started with the substance of the motions, I want to remind all of you of a few things in connection with the technology that we are using today.

First of all, when you speak, I'm going to ask that you identify yourself, state your name, and that you speak clearly and slowly, even a little slower than you might normally, because sometimes I find that there is a lag in the telephone conferencing system. So if you speak too quickly, our voices can get garbled at the end and we also end up speaking over one another. So if we slow down just a little bit, we can help avoid that.

Second, as you know, the proceedings are being recorded by the Zoom platform. We do not have a live court reporter taking things down. So it's important that we follow these measures so that we can get a more accurate recording in case any of you need a transcript of these proceedings in the future.

Also, when you are not speaking, when someone else is

arguing or doing the speaking, please mute your phones. This will avoid a lot of background noise and interference that we sometimes get during these telephonic hearings.

Also, please know that I do not allow for interruptions. If counsel for the one side is making an argument and you have an objection or you disagree on the accuracy of the statement, et cetera, and you want to correct it, wait your turn. Do not interrupt one another. That just ends up speaking -- causes everyone speaking over one another and it makes for a very bad record. So no ping-pong. Wait. Take things down. Jot it down. And then bring it to my attention when it is your turn to speak.

Finally, if you get disconnected at any time during the hearing, simply call back to the main number that you dialed into. As I said before, I have disconnected the waiting room, so you will be coming right back into the hearing.

I will know that you have been disconnected one of two ways. First of all, I've got your names now on my monitor; and if your name disappears, I'll know that you've dropped off the call. I may also hear a little alarm, a little bell that will go off to alert me to the fact that someone has left the conference. So as soon as one of those two things happens, we will stop and we'll wait for you to rejoin.

At this point, I'm going to ask everyone to please place your appearances formally on the record. Announce

yourselves, beginning with Plaintiff's counsel.

MR. PETTERSON: Your Honor, Hadyn Petterson here from Hilgers Graben on behalf of Plaintiff, Julie Duran, and those similarly situated. And I'm joined by my colleague Carly Kligler, also from Hilgers Graben.

THE COURT: Thank you.

For the Defendants?

MR. BIDEAU: Good morning, your Honor -- good afternoon, Judge. Mark Bideau and Vanessa Palacio here for the Defendant, Bragg.

THE COURT: All right. Thank you.

So we are here this afternoon on three discovery-related motions, all of which have been referred to me by Judge Singhal.

The first is Plaintiff's motion to compel Defendants to collect, review and produce responsive documents filed on October 27th at ECF No. 18. That motion is ripe.

Defendants have filed their response at ECF No. 47. And I'm going to refer to that motion as the motion for search terms and custodians related to ESI.

The second motion is Plaintiff's motion to compel Defendant to produce responsive documents. And that deals with three requests for productions: No. 5, 6 and 17. That motion is also ripe.

Lastly, we have Defendant's motion for protective order

relating only to Topic 1 of the corporate representative deposition. That was filed at ECF No. 27. And that is also ripe for adjudication.

So those are the three motions that we will be dealing with today.

On December 20th, the parties filed a joint status report pursuant to my order indicating that the disputes on the motion to compel regarding the custodians and search terms at ECF 18 and the motion to compel regarding the three requests for productions at ECF 23 still remained.

So what we will do is I'll use the JSR, the joint status report, to go through the arguments in these two motions and then I will rule on those two motions.

I will also separately handle the motion for protective order at ECF 27 regarding Topic 1 for the corporate representative.

As is my practice, before beginning with the argument, I just want to go over the relevant part of the record and the trial deadlines to make sure that everyone is on the same page regarding the status of the case.

Relevant here, the complaint was filed -- actually, removed from state court at ECF 1 back in May of 2023.

Defendant filed its answer and affirmative defenses at ECF 9 later in the month.

The current motion, Plaintiff's motion to compel

regarding custodians and search terms, was filed October 27th. As I said, that is ripe. The response came in at ECF No. 21. I think I misspoke before.

Right after that motion was filed, I granted a joint motion for confidentiality, for a confidentiality order at ECF No. 20 on October 31st.

The next motion is ECF 23. That's Plaintiff's motion to compel regarding the three requests for productions at ECF 23. That was filed December 7th. And as I said, that is ripe. The response came in at ECF 35.

Defendant's motion for protective order regarding Topic 1 was filed on December 11th at ECF 27. That is also ripe at ECF No. 34, is their response.

I already mentioned the joint status report, which is at ECF No. 36.

In terms of upcoming deadlines, the scheduling order that was entered in this case at ECF 12 controls. The discovery deadline is at the end of the month, January 30th, 2024.

Your motion -- dispositive pretrial motion deadline is March 28th of 2024.

You have a calendar call on October 16th and a trial period of October 21st, 2024. That's all in the scheduling order.

What I plan to do is I will hear arguments on each

motion, beginning with Plaintiff's two motions, since they are somewhat related. Then I'll allow the defense to respond. And then we will hear arguments from the Defendant on its motion for protective order, allowing Plaintiff time to respond.

For the first two motions, since they're somewhat related, I'm going to give each side 20 minutes to argue both motions. And for the last motion, the protective order, I'm going to give each side 15 minutes.

Just so you know, my plan is not to issue a long written separate order, but rather to rule from the bench today. And I will follow my rulings with a very short paperless order that basically says granted, denied or, you know, both or in part for the reasons stated on the record of the hearing today. That's why I said if you need a copy of the transcript, make sure that you get one by ordering it from the court reporters' office in Miami.

So with that, before even hearing argument on the motion, I just want to resolve one issue. Initially as to ECF No. 23 regarding the timeliness of that motion, I read in the briefs that the parties disagree about whether the motion to compel at ECF 23 was timely filed within the 28-day period set forth in the local rules.

Although the motion seems to have been filed about six days after the 28 days, I find the delay excusable and also find that it was not prejudicial to the Defendant, as the

parties were actively conferring and attempting to resolve the dispute during that time.

Accordingly, in my discretion, I will determine the motion to compel, ECF 23, on the merits and overrule any objections or challenge based on timeliness. So we don't have to address that.

So now I'm going to -- we're going to turn to the Plaintiff's two motions, 18 and 23. And I will hear argument from Plaintiff. I'm going to set a timer for 20 minutes.

Who's going to be arguing on Plaintiff's behalf?

MR. PETTERSON: Hayden Petterson, your Honor.

THE COURT: Mr. Petterson, are you going to reserve any time for rebuttal?

MR. PETTERSON: Yes, your Honor. If we could please reserve five minutes for rebuttal.

THE COURT: Okay. So I'm going to set my phone, give you 15 minutes to argue both these motions, beginning with No. 18.

Please don't be surprised if I interrupt you with questions. If I do and you need to finish a point, then I will certainly give you the time to do that.

And the way I want you to do this, Mr. Petterson, is I read your -- I read the complaint; I read the answer; and I read the briefs and a lot of the cases that everyone has cited, so you don't have to waste a lot of time educating me. So go

straight to your argument.

And I'm going to ask that we proceed by using the joint status report as a guide to our arguments. So we'll go right through it.

Are you ready?

MR. PETTERSON: Thank you, your Honor.

THE COURT: You may proceed.

MR. PETTERSON: Thank you, your Honor.

Turning to the joint status report, I think the parties both lay out some broad points under their position as to the proposed custodians. And I think it would be helpful to view maybe all of the joint status report through two main points. And that is, in our opinion, these disputes are better understood and probably more efficiently addressed not really about any individual search string or proposed custodian or discovery request, but about the principles in general of relevance and proportionality, which Bragg quotes in its own briefing very adamantly.

But the parties are at an impasse as to each and every discovery dispute before the Court because Bragg fundamentally misconstrues or misunderstands what relevance and proportionality mean under Plaintiff's FDUTPA class claims.

Now, in short, the impasse is that Plaintiff believes that Bragg's internal documents and communications are relevant. And Bragg categorically denies this.

In Bragg's position under the proposed custodian -- I believe it's the third paragraph -- Bragg states: Bragg's internal thoughts are irrelevant.

Another --

THE COURT: Let me stop you for a minute, Mr. Petterson, because I have some basic questions to ask you on this.

So you list 11 individuals. I know that subsequently you've got some documents from the Defendant on Jared Muscat, who's No. 9, and a woman named Carolyn Tao. But putting that aside, who are these 11 people? Are these 11 people looking -- are they listed in the Defendant's initial disclosures?

MR. PETTERSON: Yes, your Honor. To clarify, I don't actually believe that we have received any documents from Jared Muscat or Carolyn Tao, or at least if we have they haven't been pointed out to us about the sources from which they came.

But yes. The first six individuals listed are from Defendant's initial disclosures. Jared Muscat, we discovered -- we named him. We proposed him based on our review of the productions.

And then the other individuals, Plaintiff had to resort to LinkedIn searches just because Bragg has given us very limited insight as to who all works for the company. And because we didn't have any individual's [indiscernible] marketing or social media department in front of us, we went on

our own to search and propose these custodians.

THE COURT: So what makes you think that these custodians have any relevant information?

MR. PETTERSON: So, your Honor, we have, for example, Exhibit 8 to the motion to compel regarding the RFPs, which was filed under seal as a third-party-authored document regarding consumer research. And this was produced to us as in Bragg's possession. We're not sure how this was kept in the normal course of the business or whether there were any other emails relating to it.

But there's good reason to believe that a company who's receiving multiple -- I think we have about a dozen of these third-party-authored presentations -- would be discussing these presentations. The presentations indicate things like health claims that Bragg might --

THE COURT: Is that the one that you're referring to in 2021 in your motion to compel at Pages 7 and 8?

MR. PETTERSON: Let me see here. I believe so. Let me check. Page 7 and 8.

THE COURT: The bottom of Page 7, on to the top of Page 8 --

MR. PETTERSON: Excuse me.

THE COURT: -- on the motion to compel.

MR. PETTERSON: Yes. Yes. That is correct.

THE COURT: Okay. And you're saying that was disclosed

and you're thinking there must be just logically more information back and forth regarding that presentation?

MR. PETTERSON: Correct. And the point is that 8 is exemplary of -- that Exhibit 8 was exemplary of the principle that we know based on Bragg's productions that they have these sort of either third-party-authored documents, which recommends that they take steps, and then other documents which show that they did take those steps.

And there must just be discussions that accompany about this.

So --

THE COURT: So let me ask you -- let me ask you this just to kind of clarify, because they filed an amended response and produced additional documents. That's what the defense tells me later on.

So we went from 200 or whatever, 400 documents, to more.

My question to you, Mr. Petterson, is: Are all the documents that have been produced to you so far what I'm going to call external public documents? That's what you said in your motion. But I got the feeling that in the amended production you might have gotten more.

MR. PETTERSON: No, your Honor. We still have -- to the extent that they're nonpublic documents, they're almost exclusively third-party-authored. The vast, vast majority of

the productions are single-page images of products or videos from influencers that Bragg hired.

We still have not received a single internal communication in any of the production.

THE COURT: So, for example, you've not gotten any email communications?

MR. PETTERSON: Not one email communication.

And I believe that that speaks to the -- to this point that, broadly, Bragg doesn't believe that any of those as a matter of category are relevant to this case at all.

The Plaintiff had over the course of four months four meet-and-confers, several deficiency letters and emails back and forth trying to show and explain to Bragg the relevance of this. And we cited cases like *Kraft* or *Life of America*, for example. I'm happy to go into detail to the extent that that would be helpful to the Court. But those are cases which state that internal documents are relevant in these circumstances.

And to our knowledge, Bragg hasn't provided a single case that supports its contention that its internal documents and communications are categorically irrelevant to a FDUTPA claim.

I think that's the --

THE COURT: Have you --

MR. PETTERSON: -- the --

THE COURT: Go ahead. I'm sorry to interrupt. Finish

your thought.

MR. PETTERSON: Oh, no. I'm sorry. That's all.

THE COURT: In your meet-and-confers -- and I know you've had several -- did you discuss or did Bragg's counsel tell you specifically how it was that their employees searched? What I read in their motion is that We don't have to do this ESI term search because what we did is we went to our senior management and we guided them along the way and they each individually searched their computers and found no responsive documents.

Is that a correct statement of the Defendant's position?

MR. PETTERSON: I'm not actually sure. I know that they used examples of people that they asked if they have responsive documents relating to maybe a specific RFP, and they said that the answer was no.

We've never gotten to my knowledge Bragg's position that they've asked all of them or conducted searches for all of them among their time management -- of their email accounts. In fact, we don't believe that this has occurred.

And we especially believe that, based on the most recent meet-and-confer per the Court's order, where we asked if Bragg would consider running any of our proposed search terms against any proposed custodian, and Bragg stated that it did not intend to run any proposed search term against any proposed

custodian and objected on the basis of relevance.

So if I may continue, you know, I believe that this is about a misunderstanding as to what's relevant.

What this isn't about is three things, the first of which I think Bragg will likely harp on the most, which is that this is not about getting into the weeds as to the specific marketing that Plaintiff herself used or the specific subjective reasons for which Plaintiff bought any particular Bragg product. And that seems to be really what Bragg wants to limit these searches to if it's going to conduct any searches at all.

But as Bragg was the first to admit at a prior meet-and-confer, FDUTPA has an objective standard. And this Court in *Collins v. Quincy Bioscience* and in the Eleventh Circuit in *Fitzpatrick v. General Mills* has expressly denied that a plaintiff's subjective reliance limits the scope of her FDUTPA class claim.

I don't believe that Bragg cites any authority that shows that discovery should be limited to Plaintiff's subjective reliance, even though Plaintiff has alternatively shown Bragg authority as to why it should not be limited to subjective reliance.

So I think on this point, which might be the crux of this issue, Bragg is simply wrong about the FDUTPA standard.

And the --

THE COURT: Mr. Petterson, so I understand your argument clearly. Your argument is that the information or the discussion about surveys, for example, or studies about the efficacy of the apple cider vinegar and its supplements, that if any studies were, for example, conducted, it would show that it was not significantly different from the other products that just contain zinc or Vitamin B-12 or whatever, that that would go to the FDUTPA claim?

MR. PETTERSON: That's correct, your Honor. That it would at least bear on it.

So FDUTPA explicitly incorporates federal law, federal case precedent, on the FTC act as constituting violations of FDUTPA. And so those cases are informative.

And in several of those cases, we see courts find, for example, in the *Kraft* case -- this is an excerpt from that case -- quote: "Significantly, despite repeated warnings, Kraft persisted in running the challenged ads," end quote, or in the *Life of America* case, quote: "The fact that Defendants persisted in making the subject claims despite receiving repeated warnings about the falsity of their claims may also be relevant," end quote.

And so their knowledge of the deception, while it's not necessary for Plaintiff to prove her case Bragg's knowledge or intent to deceive, may bear on whether it was objectively deceptive. For example, if there are communications where

Bragg discusses, you know, the research shows that this doesn't actually do what consumers are purchasing it for, but we're going to sell it to them anyway.

And then maybe Bragg has, for example, a consumer research simply not even commenting on it, but simply reflecting data that shows reasons for which consumers are purchasing the product are inappropriate reasons, those internal documents reflecting that or communications discussing it that may bear on -- may go towards showing the objective deceptive nature of their products.

THE COURT: And I understand your argument.

Defendant also complains that you're looking for ESI on Requests For Production 7 and 11 through 14 on which it has clearly told you there are no responsive documents.

MR. PETTERSON: Yes, your Honor.

And as to those -- you said 7?

THE COURT: Yes. I thought it was 7 and 11 through 14. I could be wrong. That's what Defendant says. They could be wrong and I'm just repeating them.

MR. PETTERSON: Well, I believe -- so if you look at 7, I believe that Bragg -- you're correct. I believe Bragg says that Bragg does not [indiscernible] vitamins or whatever to its other -- to its products. And some of these other ones -- I'm sorry. It was 11 through -- what was the --

THE COURT: Through 14.

MR. PETTERSON: I'm sorry. I might be misunderstanding you. When you say 11 through 14 --

THE COURT: Of the requests for productions.

MR. PETTERSON: Oh, yes. Okay.

THE COURT: They say that you're asking for them to run electronic searches for 7 and 11 through 14 on which they've already told you there are no such documents.

MR. PETTERSON: And our position on that, your Honor, is similar to our position on when Bragg said that, for example, its CEO has no relevant documents at all in this case as far as emails go.

We find that hard to believe and wonder whether just because Bragg is inappropriately narrowly considering what we're asking for.

And so I just -- it's our position that it's not too much to ask Defendant to simply run a hit count, which running a hit count of the data in place is not a costly -- or should not be a costly venture. And that would be the sort of regular expected work for Defendant to prove that the search requests are unduly burdensome or overly broad.

We're happy to at least -- if there really aren't any hit counts for these documents, then, you know, we're happy with that answer. But at this point, especially considering that there are -- seem to be a whole [indiscernible] of inconsistencies in Defendant's production for other requests,

it's just unclear that the Defendant has really shown that it doesn't have responsive documents on these requests.

THE COURT: All right. Let me go through some of these, because I have some more questions for you.

I know that one of Defendant's arguments -- meanwhile, we're going over time, but I do have a lot of questions -- another one of Defendant's arguments is that Plaintiff should be limited in discovery to Plaintiff's claimed use at her deposition of the liquid ACV for purposes of losing weight and burning fat. What is your response to that?

MR. PETTERSON: Yes, your Honor.

So that has sort of two different components. One is I believe they're saying she should be limited in her specific use of a sort of type of Bragg product. And then second, that that should even be limited to the purposes for which she used that product.

So on the first point --

THE COURT: The first point was liquid ACV and the second point is weight loss.

MR. PETTERSON: Correct.

So on the first point about the liquid ACV, this Court -- and actually, Judge Singhal, I believe, about a year ago today entered into the docket his opinion in *Nuwer v. FCA United States*, which found that even there, it wasn't appropriate to evaluate on the merits at the class

certification stage in the standing.

The opinions have -- quote: "The named Plaintiffs have class standing to represent purchasers of other models and vehicles if the models contained a design defect that was materially identical," end quote.

So the analogy there is that Bragg's products all have the identical effective ingredient, which is this ACV. That's what gives the liquid ACV value; that is where people are purchasing its supplements as opposed to just a cheaper Vitamin B product.

And so our contention is that we're not addressing Plaintiff's adequacy at this stage and that there is case law directly on point from this Court in the last year that speaks to when there are -- the identical active ingredient goes across products, that Plaintiff is an adequate class member or a class representative for all of those.

So we believe that whatever her deposition testimony may say or however Bragg may wish to spin it, especially at this early stage, it's just not appropriate to rule out those other products, especially where we believe there's good case law suggesting that she's an adequate representative.

As to her subjective uses, I think that goes back to our discussions with *Collins versus Quincy Bioscience* or the Eleventh Circuit's opinion in *Fitzpatrick v. General Mills*. In *Fitzpatrick*, the Eleventh Circuit vacated a class certification

where it was limited to those who purchased Yo Plus, quote, "to obtain its claimed digestive benefits," end quote.

The Eleventh Circuit said that was too narrow, that instead it should be for any consumer who purchased the product, and said explicitly, quote, "A Plaintiff need not prove their reliance on the allegedly false statement to recover damages under FDUTPA, but rather Plaintiff must simply prove that an objective, reasonable person could have been deceived," end quote.

So this is not a car crash injury, personal injury sort of case, your Honor. This is an injury where a jury will have to decide whether to the objective person, to the reasonable consumer, the marketing is deceptive; and it simply doesn't matter under FDUTPA the specific things that Plaintiff saw or relied upon.

THE COURT: All right. Hold on. I've got more questions for you. Give me one second as I go through the JSR.

Now, you proposed these terms that we're going to talk about in a minute, 1 through 11. On 2, the Defendant on a couple of occasions initially and then again a second time, Defendant objected. Did you ever try to sit down with Defendant to work out these terms and narrow the scope not just, you know, of the custodians, maybe, or to the key custodians, but also the terms themselves? I mean, this could result in a pretty wide net.

MR. PETTERSON: I totally agree, your Honor. And we have made repeated offerings to Defendant to counter-propose a narrowed set of terms. The Defendant has not taken us up on that. And we really mean that. I mean, if Defendant had offered any narrower version, that would be in the record. We'd have it before the Court. But Defendant has not.

Defendant has otherwise suggested recently -- I believe December 26th -- that we could send Defendant some limited search terms as to those -- what Plaintiff contends are inappropriately narrow categories of, like, weight loss-related claims as to only liquid ACV.

And Plaintiff didn't send those because -- we think that because the root issue is just about whether any internal discussions, any internal documents are relevant at all, that it would be best for the Court to first rule on this root issue.

But the parties have met several times and have invited Bragg to make a counterproposal. And I'm not sure if Bragg thinks that it's just on us to continually send new search terms until, you know, they find something that they'll agree to.

But Bragg did sign the joint scheduling report last June saying that they would work together with Plaintiff to come up with an agreeable ESI protocol. And it's just Plaintiff's position that sending search terms over and over

again and waiting for Defendant to approve them is not -- is not in accord with the spirit of working together.

THE COURT: Let me -- let's turn over. But again, this is important, and I want to try to do my best to understand your positions and rule to the best of my ability.

Let's turn in the JSR to Page 8, which begins with proposed string No. 1. And you've got 11 of these proposed strings.

Defendant complains that they're not tied specifically to any request for production. What's your response to that, briefly?

MR. PETTERSON: I'm not sure what Defendant means by that. We suggested in here the various RFPs that these are related to.

Defendant, I believe, said that it's inappropriate to just suggest these sort of search terms over email with a tie to RFPs. I'm not sure -- I don't believe Defendant cites any authority for that. I'm not sure why it's inappropriate.

But no. We believe these search terms are reasonably tailored to hit on and result in produced documents that are responsive to the different RFPs that we list in our position.

THE COURT: Okay. Let me just see what other questions I have.

I mean, my initial reaction is that you may be right -- I'm not ruling; this is my initial reaction -- is that you may

be right with reference to Defendant having to conduct an electronic search for documents -- for electronically stored documents on the one hand.

On the other hand, I'm a little wary of the strings, the 11 strings, because they are -- like I said, they cast a very wide net. They're somewhat duplicative. So I think it would be in everyone's best interest to sit down. I mean, I can come up and craft something, but I'm not in the best position to do that. I think the two of you are in the best position to do that. But we'll talk about that, I guess.

MR. PETTERSON: If I may, your Honor --

THE COURT: Yes, but first let me just give you an example. First of all, do you agree with Plaintiff -- with Defendant, for example, that proposed string No. 2, apple cider vinegar or ACV and quality assurance really doesn't seem to be relevant? There's no discovery request at all dealing with quality assurance.

You cited to 6 and 17. But when I looked at 6 and 17, it has nothing to do with quality assurance. So that's just an example --

MR. PETTERSON: Your Honor --

THE COURT: -- of stuff that's not quite on point.

MR. PETTERSON: Correct. So I do believe that quality assurance does relate to, for example, the design, content of the labels, you know, with Bragg's ability to deliver what it

promises.

But to the -- I think to your main concern about proportionality, Plaintiff is absolutely willing to narrow these search terms. But I think that we need to have, you know, hit counts. Again, the hit counts which we asked for back in September --

THE COURT: You know what? Do me a favor, Mr. Petterson, and explain what you mean by a hit count.

MR. PETTERSON: Yes. So what we asked for back in September was for Bragg to simply run these search terms over its Outlook data or whatever other email or whatever ESI databases it has to just generate a number. You know, is this search string No. 2, for example -- did it hit on ten documents? Does it hit on 10,000 documents? From there, Plaintiff -- and Plaintiff has expressed this repeatedly -- is willing to narrow as appropriate.

But the problem is that Bragg has refused to even run that simple and presumably cheap or free search over its custodians' email, any custodian's email, to even see, you know, if there's any disproportionality at all. Because we agree, your Honor, that some of these might be too broad.

Number one, it's hard to say right now, though, whether search string No. 1 would hit on ten emails or 10,000. I mean, if it's a low number, then we don't believe it'd be disproportionate. And if it's a high number, we're very

willing to work with Bragg on how to more narrowly tailor these strings.

We're not asking that Bragg run these and then produce every single document it hits on. What we wanted this whole time is simply numbers -- for [indiscernible] indicate about how many documents it has that would hit on these and therefore whether we need to narrow the protocol.

But Bragg has just maintained that it doesn't need to give us a single internal document because it thinks they're irrelevant to our claims totally. And we believe it's an exclusively indefensible position.

THE COURT: Right.

Now, looking at proposed string No. 3 on Page 12, the Defendant claims in its response in the Opponents column that it has produced basically four categories of responsive documents. It says it's produced hundreds of pages of studies and research to substantiate that product claims that Plaintiff has -- that Plaintiff's expert has evaluated the studies and issued a report, that the Defendant has its own expert report and that Defendant produced consumer research during the claims period.

Why is that not enough?

MR. PETTERSON: Because, your Honor, Defendant seems to think that this search term is only after its research.

But it's also after Defendant's discussion of its

research, its reflections on its research. For example, the studies that are produced are not their own studies or their own discussion of studies. It's just third-party-authored studies.

And not only that; this search string is also tailored to get after things like preferences that the marketing team observes about consumer trends and demand, things like that.

So this isn't -- so first of all, Bragg limits it to maybe one RFP. But there are many RFPs that this is relevant to.

And then secondly, even if it is limited to that one RFP, we have no internal Bragg email discussing their research or how they're going to implement the research whatsoever.

THE COURT: What -- I'm sorry. What RFP is Bragg limiting this to, string No. 3?

MR. PETTERSON: I believe it's limiting the string to No. 4. And I'm not sure, but based on their responses and how they're discussing the studies, the scholarly articles, the clinical trials, things like that. I assume that that's what they're limiting it to.

THE COURT: All right. So --

MR. PETTERSON: Bragg doesn't really talk about [indiscernible].

THE COURT: Unfortunately for me, I took the time last night to go through your strings and compare them with the

actual RFPs. And you're telling me -- and I know that, you know, this isn't argument -- but you're saying that these are relevant to documents responsive to Nos. 4 through 6, 9 through 17, 19 and 20.

I agree with you as to 4, 5 and 6. 4 is research/studies regarding the benefits of ACV and supplements.

5 is marketing or advertisement of the related benefits of that.

6 is research and studies regarding consumer preferences and trends.

16 is duplicative of 13 and 14, which is a comparison of profit margins and comparison of profit margins for ACV and true stories, which are not really related to this string search.

The bottom line is, I think of all the numbers that you gave me, only 4, 5 and 6, maybe 17, design of current labels, you know, would be related to this particular string that you propose.

That doesn't matter. I understand that you're just trying to show counsel that it's relevant to stuff. But I think you overextend it, the relevancy there.

But as to 4, 5, 6, maybe 17, I think these search terms may be applicable.

But I know it's hard to come up with [indiscernible]. It would be much better if you guys did it.

Let's go to No. 4. Here, Defendant says that it has represented no such documents exist because it has not been the subject of any investigation.

Why is that not enough?

MR. PETTERSON: Again, your Honor, I believe we're not satisfied with that answer because it's unclear to us that they've done the sort of work that's necessary.

We cite a case -- I think it's called *EEOC* -- in our opening motion about how self-collection, simply asking, Hey, do you have any responsive documents to this? And then the self-representation "no" is not enough, but that there needs to be some attorney -- that an attorney has to have -- I believe the language is "close knowledge of the documents."

And because we haven't seen -- we don't know. I mean, this has been really a black box as to how this has gone about. We don't know whose email they searched, if any, what other databases they searched, if any, what sort of search terms they used, if any, what questions they asked, if any.

And given that they're for things like, you know, "Our custodians just have no relevant information," I mean, we find that so difficult to believe that we're just not sure we can trust them when they also say that they have no documents related to any investigation or inquiries from a public attorney.

THE COURT: I'm just going through my notes to see if

there are any other questions on this.

All right. I don't have any other questions for you. And I think we went way over your time. But I did want to go through those things.

So, Mr. Petterson, I give you ten minutes for rebuttal just because I took up so much of your time with my questions.

I'm going to turn now to the defense side. Who's arguing?

MR. BIDEAU: Your Honor, it's Mark Bideau. And I will argue for defense.

THE COURT: All right, Mr. Bideau.

So you heard a lot of the questions that I asked Plaintiffs, and I'm going to be asking you pretty much the opposite. So I'll give you your -- we'll say 20 minutes and we'll see how it goes with my questioning.

MR. BIDEAU: Sure. Okay. Thank you very much, Judge.

First, first of all, Judge, our primary -- just one of our primary difficulties with this particular motion is that it is not tied to the discovery requests that Plaintiff served in this case.

Bragg has never taken the position that it is not required to look through and find responsive documents. And in fact, unlike the representations that have been made by Plaintiff, what Bragg did was it received the original document requests in this case, was to meet with the CEO, the chief

science officer, the chief marketing officer and various other senior people at the company, send out the requests, work with them to gather documents and produce documents.

And we have to date produced lots of documents, both public documents, which, by the way, one of their requests was: Give us all of the documents and survey, research, that backs up your -- the claims you've made. And so all of that stuff is public. We nonetheless produced all of it to them.

Again, we'd actually produced it to them even before discovery started in this case in the hopes that that research would be sufficient to put an end to this case.

But on top of that, we went ahead and we produced for them -- now, a lot of this was after the motion, because what happened here was, they filed -- they served discovery requests. We in responding to the discovery, about 50 days into the period, they sent us out of the blue these 12 search requests.

Our initial reaction to that was: Well, how does this tie to the requests for production? Because we immediately noticed that a lot of the requests -- that they were sort of untethered to these requests. The typical way you would handle discovery like this is there'd be a request for production of documents; we would be responding to that request; and if there was a need to do search terms in response to that request, we would talk about that.

Our position was and remains that there is no need and no -- it's not appropriate to do wide-range electronic discovery in a FDUTPA case like this, which is actually in this case based on the Plaintiff's deposition, a much narrower case than we even thought when we looked at the complaint.

The Plaintiff --

THE COURT: Mr. Bideau, let me ask you this, picking up where I left off before I started with the Plaintiff: Has Bragg searched for electronically stored information in its computers and its emails?

MR. BIDEAU: Bragg has -- Bragg has searched for electronically stored information, and that's where a lot of those -- you know, those consumer reports that counsel talked about, the third-party consumer reports that exist, that sort of thing all came from.

With respect to email communications, our position early on was, our internal thought process is not relevant to your FDUTPA claim here. We'll give you all this stuff, and then let's talk about where we are and what you need with respect to the outstanding discovery.

Now --

THE COURT: You would agree with me, Mr. Bideau, I assume, that relevance for discovery purposes is a lot broader than relevance for admissibility purposes?

MR. BIDEAU: Well, I don't -- I don't know that I

agree, your Honor, that it's a lot -- under the new rules of 2015 it's a lot different. But it's certainly different. That's true.

But you still have to tether it to what the allegations in the complaint are, what the case is about in this case. Okay?

And so in a FDUTPA case, what the basic claim is is that --

THE COURT: We're going to go there in a minute, but I want to stay where we are right now. You're going to give me the element and you're going to tell me that it's objective. But we'll get to that in a minute.

Tell me, have you turned over any internal emails about, for example, those studies or --

MR. BIDEAU: No.

THE COURT: -- or the marketing --

MR. BIDEAU: No. To my recollection -- my recollection is that we have not turned over internal emails about the studies. We have turned over the study, all of the studies and all of the material that relates to the studies.

And your Honor was correct: We noted that both parties have already produced their expert reports on the science and the rebuttal reports on the science.

In fact, the last rebuttal report, I think, came in last night. All of the experts on the science have already

weighed in on this case without any difficulty based on the production that's been done here. So they've all weighed in on the actual science, which is frankly the key issue --

THE COURT: Right.

MR. BIDEAU: -- as to --

THE COURT: Let me stop you there again.

Putting actual science -- it's out there and you've turned that over, but what Plaintiff is also looking for, as Mr. Petterson explained in his motion and to me during the hearing, is evidence that shows, you know, your knowledge. It may not be that -- it is relevant to a FDUTPA claim in showing that you may have known about the limited health benefits of the product that you were advertising had tremendous health benefits.

So although not directly relevant to, you know, Plaintiff's use of the product, it's relevant to showing, for lack of a better word -- my term -- your state of mind or your knowledge of that.

What is your response to that? I think --

MR. BIDEAU: Under FDUTPA, Judge, frankly, our state of mind and our knowledge is completely irrelevant. And in fact, the one case that counsel talked to you about, the *FTC* case, wasn't a FDUTPA case. In fact, none of the cases they cite for the proposition that our knowledge is somehow relevant is, in fact, a FDUTPA case, because none of them are.

And they cited two cases. One was *Kraft* and I forgot what the other one was. One was an FTC investigation and one -- I forget exactly what it was, but it wasn't a FDUTPA case at all.

No. Our subjective understanding, our subjective intent, would be completely irrelevant to a FDUTPA -- to an actual FDUTPA claim.

The question is simply: Is the ad reasonably likely to confuse or mislead the consumer?

That's the standard. Okay? So our subjective thoughts about that are not relevant.

Now, what we did say once we -- because we have been going back and forth. And what our requests had always been, Judge, is: Tie these two, you know, specific document requests, because what you're doing -- they've really used these search terms to expand them.

The very first day after we got them, we did have a meet-and-confer. We said: Hey, can you guys narrow these and tie them, you know -- give us just search terms that relate to specific document requests that you're concerned about? Because we don't think this case merits spending a fortune, which is what happens to all defendants in those cases, where, you know, the plaintiff's individual claim is like 150 bucks. We spent hundreds of thousands of dollars dealing with e-discovery in these cases when the e-discovery is not

particularly relevant to any issue that's in the case.

And so we thought the Plaintiffs had it backwards.

I mean, frankly, Judge, I have never seen a motion to compel the use of specific search terms as opposed to the other way around, which I think the local rules require -- at least they did before the most recent amendment -- which is: Tell me what's wrong with my discovery response. All right? Deal with my discovery response. File a motion to compel as to a discovery response saying, Hey, you didn't produce the documents that are responsive to Request No. 2 or Request No. 3 or Request No. 4. And then we can argue that out or we can do search terms that relate to those.

What they did is they came out with this list of very broad search terms and then said: Oh, and by the way, these search terms apply to five or six or seven or eight different requests for production.

We said: Well, no. That's not -- many times, they didn't. As you start to compare them, they had nothing to do with those. Some of them had to do with things like, for example, the question that counsel asked -- that you asked counsel about, the internal investigations -- I mean, investigations.

The actual document request that was served on us was No. 7: All documents relating to investigation or inquiries by government authorities concerning ACV, ACV supplements or the

use of apple cider vinegar and Bragg products. Okay?

Our response to that was: We are aware of no such documents.

And we got that directly from the CEO. We said: Have you been involved during the class period -- which is this four-year period of time -- have you been involved in any government investigations? Have you been, you know, interviewed by the government? Has any proceeding been filed?

And the answer was no.

THE COURT: All right. Let me stop you there for a minute, Mr. Bideau, because the clock is ticking.

So the first question I asked you is whether you have produced any internal communications.

And the answer to that is no, because you feel that they are not relevant because in a FDUTPA claim the subjective intent is irrelevant. Correct?

MR. BIDEAU: Correct. However, Judge, just -- just to put a finer point on it, once we took the Plaintiff's deposition and she testified that she only used the liquid and that she only used it for --

THE COURT: Weight loss.

MR. BIDEAU: -- [indiscernible] the allegations in the complaint. But she knew about these two things. And she said weight loss.

We went back and we grabbed the email. Now -- the

email accounts of the person in charge of the social media during the period and the marketing person who we thought would have the most responsive documents.

And we did. And we are actually in the process now of reviewing it. We ran the terms "weight" and we ran the terms "fat" --

THE COURT: I understand, Mr. Bideau, that you want to limit the scope to those two terms which she admitted to in her deposition as well as the liquid apple cider vinegar.

But would you agree with me that the complaint is broader than that? I forget the paragraph numbers, but there's a paragraph in the complaint that talks about the claims on Amazon, which included cholesterol, immune system and the stuff on its webpage, which included blood sugar levels.

That's -- the pleading in this case, ECF No. 1, the complaint, is my measuring stick for discovery. Would you agree with that? Not Plaintiff's deposition.

MR. BIDEAU: Well, no, Judge. I think in a class action like this, I think once we took the Plaintiff's deposition -- and I asked her specifically about that, because it's in the complaint. I said: Hey, do you know anything about -- or did you take this product -- because causation is an element. What reliance is and what causation is for the named Plaintiff. And so I'm just reading it has to have caused her injury in fact.

So I said: Hey, specifically, did you do this? Did you measure your blood sugar? Did you look at cholesterol? Did you do any testing?

She was [indiscernible].

[Indiscernible] by for that reason, I don't know anything about that. I don't know anything about cholesterol.

THE COURT: And the --

MR. BIDEAU: I never saw anything about cholesterol.

THE COURT: Mr. Bideau, is that not a better argument in summary judgment as opposed to in a discovery -- in opposing a discovery motion?

MR. BIDEAU: No. I think it's relevant to a discovery motion, Judge, because it goes to proportionality.

I mean, if the Plaintiff herself is saying, Hey, I don't know anything about that; I didn't use it for that purpose; I never saw anything about that, she only -- she could only testify as to the liquid, Judge.

And none of that -- none of the material about cholesterol, even weight for that matter or blood sugar is on any of the labels for the liquid.

The liquid is very different from the two supplements. And we asked her: Well, did you take -- because the complaint says she used the supplements beginning in 2021.

So we asked her: Did you use the supplements?

I don't recall. I recall using the liquid in --

starting in 2016, which is even before our class period. I don't recall ever using the supplements. I can't recall. I can't recall. I can't recall the supplements.

So you've got a Plaintiff who is now testifying, I can't recall using the supplements. And I didn't use it for any purpose other than fat -- to burn fat and weight. And I don't know where I got that information. And I can't tie it to anything Bragg said.

Then what we said was: You know what? We will run those terms. And I did send -- I did tell them at the last meet-and-confer, if you've got search terms that you want us to run as to these two specific custodians that relate to these topics, send them to us. And we'll run them.

And so we did run fat and we did run weight burning [sic]. And I think we got something like initial hits of 5,000 documents, which is not surprising, because we've produced 80-plus ads and videos and social media posts that -- all of which have that term in it.

And by the way, Judge, virtually all of the ads during the class period that have the words "fat" or -- none have "fat." They all have weight, maintaining a healthy weight, also deal with the cholesterol and the sugar. I mean, all the ads are pretty much the same. Different influencers, different sorts of things. And we've produced all of those ads.

We hit about 5,000 that were in the process of

[indiscernible]. Now, with all the families and attachments, it's like 25,000 documents theoretically.

[Indiscernible] by the way, Judge, two custodians, one of which was on our list and one isn't. But the one who isn't we believe is -- actually has more information and just deal with this one claim of weight.

And that's why we think it's important to narrow whatever discovery we're doing here to the issues that really relate to what this case is about.

And after all -- right now, you don't have a class action. We have a named Plaintiff in the case whose only testimony is sometime in 2016 somewhere on social media I saw something about Bragg's liquid apple cider vinegar helping with weight loss and burning fat.

I can't tie it to Bragg. I don't know.

THE COURT: Mr. Bideau --

MR. BIDEAU: And through --

THE COURT: Mr. Bideau, I have a lot of questions that I want to ask you. I understand that argument. So let me ask you some more questions.

Plaintiff proposes, as I said, initially 11 custodians. You added one more: Ms. Tao.

The first six proposed custodians were, according to Plaintiff, on your initial disclosures. Is that correct? Yes or no.

MR. BIDEAU: The first six were on our initial disclosures. Yes.

THE COURT: Okay. As to those, what did you do to determine whether there was any ESI that was relevant to --

MR. BIDEAU: Well --

THE COURT: -- Plaintiff's requests?

MR. BIDEAU: Well, first, Dr. Bloomberg, we told them, well, he's on our initial disclosures as somebody who has knowledge.

He doesn't even have a Bragg email account. So there's nothing we could do with Dr. -- he's a member of the scientific advisory board. And so he doesn't even have a Bragg account. We put him on the initial disclosures because he was a member of our scientific advisory board. He speaks on the topic and he clearly has knowledge.

In fact, he is one of the people we submitted an expert report from.

THE COURT: Right. Perhaps there may be emails from Mr. Bloomberg to Linda Boardman, the Bragg CEO. Why is that not discoverable, relevant? Right?

MR. BIDEAU: Well, like I said, I can't run email searches on Dr. Bloomberg's -- I can't search. We don't even have access to them because he's -- while he's a consultant to the company, he certainly isn't somebody employed by the company. He doesn't have one of our email addresses.

But in terms of Dr. Bloomberg's emails to Ms. Boardman, the question there is whether they -- how is it relevant to any issue in the case?

And the answer -- the answer that we have is, it's not relevant, Judge, to an issue in the case or to any of the discovery requests that they actually served on us, because when we responded, we were clear to say that with respect to our response to, for example, the one about the request for production dealing with the science and say that we would go ahead and produce the studies, that we thought the "all documents" request was just way, way too broad here.

And so in addition, No. 4, Jones Chen was a consultant who hasn't been with the company for a long time.

Ms. Chen was a consultant. There was a document or two that we knew existed from her and that would be relevant that's been produced. But we don't have access to her or anything about her at this point. And she doesn't have any Bragg email address as well. We've told --

THE COURT: I understand.

MR. BIDEAU: -- her --

THE COURT: I understand that neither Ms. Chen or Mr. Chen or Bloomberg have a Bragg email account.

But it's possible and probably likely that these two individuals from their own email, non-Bragg account, communicated with Bragg personnel because they were hired to do

just that: to be consultants. Isn't that correct?

MR. BIDEAU: Yes. Yes, your Honor. I'm sure that Dr. Bloomberg and at some point Jones Chen would have communicated with a number of people within Bragg.

THE COURT: Let's move on, please. We've got a minute left and I really have a lot of questions to ask you.

So we talked about the six proposed custodians. And you're saying -- you explained about Chen and Bloomberg.

Mr. Petterson alluded to the fact that he seems to think that you think it's his responsibility alone to come up with appropriately defined search terms, whereas he says the rule and the practice in this district is for both of you to roll up your sleeves and come up with terms to resolve this. And, you know, that happens as soon as -- you know, as early as the discovery conference.

Why haven't you sat down with Mr. Petterson as opposed to just waiting for him to give you what you find to be proper terms?

MR. BIDEAU: We have, Judge. We've had multiple conversations.

And in fact, even before we filed this last report, we were on the phone and I started going through the first one, which is probably the broadest one of all. And I got about halfway through it when Ms. Kligler said to me: Why are you doing this? You're just wasting my time. Okay?

And I said: Because I think before you even talk about the studies we need to go through these requests because a lot of this stuff doesn't appear to be relevant to any issue in the case. Nervous system, metabolism. Where did this come from? Energy levels.

Certainly there's stuff about weight and there's stuff about loss.

And I was told I'm wasting -- you're wasting my time to go through this.

When we first got the request, Judge, our immediate response back was: Hey, we're willing to go through a discussion of these search terms as they apply to specific requests. Please -- and we thought they were going to narrow the search terms to the requests and we'd move forward.

And instead of doing that, they sent us back the exact same search terms and said: These relate to a broad scope, just like they put in No. 1, where they listed, like, seven or eight requests that they said they applied to.

And we said: Well, that's backwards, guys. What search terms do you think apply to, say, the one about study? What's the term on the one about studies that you want us to look at? What do you care about? We don't think anything's relevant vis-à-vis our intent. But what do you want? Sort of like I just did with weight recently.

And they chose not to respond, because they want to, I

guess, figure out sort of where the Court's going with this, was to figure out, you know, what's really relevant, how we can do this, because we start to see -- we ran, for example -- we took their 12 search terms and ran it against these last three people over the holiday weekend, the ones where we collect -- the marketing people.

And in some cases we got very few hits and in some we got a lot. We got a ton of hits.

But they're not tied to any specific request anywhere. And that's what we think is backwards. I mean, you're supposed to do this as a motion to compel with respect to a document request that you don't think's been properly responded to. And they haven't done that.

THE COURT: I'm going to stop you there, Mr. Bideau, because you said this in your motion and you're repeating it now.

I understand there is a motion to compel specific requests. But more broadly, there is also a proper motion to compel ESI discovery. That is a proper motion to compel. He's telling me that he is not satisfied with the way that Bragg has conducted or produced internal documents. In fact, you can see that you have not produced those documents because you believe that they were irrelevant.

I don't think I've misstated your position. Is that correct?

MR. BIDEAU: In certain search [indiscernible], that's right. We have agreed to produce the documents that -- from the two senior marketing people that deal with the ads that relate to the subjects the Plaintiff has talked about and are in the process of reviewing those. And we have agreed to review any search -- additional search terms that the Plaintiff wants as to those two marketing people with respect to the claims that Plaintiff has asserted.

THE COURT: But even those, you are limiting it to weight or fat burning. Is that correct?

MR. BIDEAU: We are limiting it to, yeah, the two claims she talked about, weight and fat burning, because she was adamant that those were the only things that mattered to her. And from a causation standpoint -- and causation is relevant in FDUTPA -- that's -- but I will tell you, Judge, having looked at all of the ads, all of the ads that talk about weight also talk about cholesterol and also talk about glucose levels.

And so if you've got one, you get them all. And so in that respect, we have agreed to do that.

We don't think it's relevant to do broader ESI discovery here, particularly when we can never get agreement. You know, I asked them, for example, when we got to the one about investigations, okay? I said: Guys, why would I ever run one for investigations when we know there's been no

investigation? I mean, the CEO would know if there's been an investigation. Do you have any reason to think there was one during the class period?

And the answer was: No. But just run it.

Well, running this stuff is not only a question of a cost to gathering it all and running it all, but it's then the lawyer time in reviewing it. Because I can tell you, the way one of these -- the way the search term was drafted, even people who have nothing to do with litigation, because phrases like "AG" were in there or "district" were in there, it comes up with hits. And then you look at it and say, Oh, yeah, but it has nothing to do with an investigation.

And we know there's no investigation. I think the case law is clear. You know, at some level, you have to rely on the Defendant's -- the party's answer, which is: We have not been -- we have no knowledge of any investigation [indiscernible] during this period. And that applies to 7 -- Request No. 7; it applies to Request No. 8, all documents relating to investigation or inquiry by consumer protection or watchdog organizations.

Again, we've answered during the past we have not been the subject of any such investigation.

We did disclose that we actually sued one of our competitors, Goli, who they have also sued, claiming they were making misrepresentations about apple cider vinegar, and agreed

we would produce the pleadings in that case, although presumably they got those from Goli as well.

THE COURT: Mr. Bideau, let me go back a minute to your answer to Request For Production No. 8, because it reminded me that I had a question about your answers where you're saying there were no documents.

You actually didn't say that there were not any documents; you said you're not aware.

I just want to make sure that when you say you are not -- and you say that with reference to 7, I believe, and 8. You also did it with reference to No. 11: "Not aware." That's different than "There aren't any," number --

MR. BIDEAU: Well, Judge, what we said was we were not aware of -- and again, Judge, we were responding to document requests in 7. And we said we were not aware of any investigations done by the government of us.

The CEO would know if there are investigations. She's not aware of any investigation done of us. If there's no investigation that's been done of Bragg in the four-year period that's relevant to this discovery request, then by definition there can't be any documents about an investigation that didn't occur.

And so you have the CEO saying, you know, Is it conceivable that somewhere in the bureaucracy of the government somebody thought about an investigation and never told us

about? I guess. But we're -- we've never been contacted during the class period by a government agency challenging us or going after our products.

And on No. 8, it was all documents relating to any investigation or inquiries by consumer protection or watchdog groups about Bragg's supplements or its ACV or its apple cider vinegar in any of Bragg's products. Okay?

THE COURT: Let me ask --

MR. BIDEAU: And we said --

THE COURT: Mr. Bideau, let me ask you this. I understand what you're saying about you're not aware of anything. But my question to you is: Can you amend those answers to affirmatively say that Bragg has no documents about any government investigation or investigation by consumer protection groups?

MR. BIDEAU: Well, what I will amend the answer to say is: Bragg has not been investigated by any of these people. And I'm always hesitant to say "no document." I figure it goes without saying if we haven't been investigated, there is no document, because if we haven't -- if nobody's investigated us, how could there be a document?

But what I specifically ask -- because you don't typically do searches for an investigation that didn't exist. So to --

THE COURT: Your CEO may not remember it, whereas

perhaps a lower-level employee may remember it. That's the difference.

MR. BIDEAU: Well, but Judge, we had in Bragg -- the CEO's one of the people who's going to testify as the corporate rep, and she's got her hand in everything.

But we had this conversation with the CEO, the chief science officer, the guy in charge of marketing, the IT people. Okay? And the answer was: We have not been investigated by any government agency during this class period. We have not been investigated by any watchdog group during this class period.

THE COURT: Well, then --

MR. BIDEAU: What we have --

THE COURT: Then you can amend your answer to that, because the answer as it stands now is somewhat equivocal: "We are not aware."

MR. BIDEAU: Okay. I can certainly amend my answer to say, "We have not been the subject of any of these investigations," because we haven't been.

THE COURT: All right.

MR. BIDEAU: And that's pretty easy.

And on 9 -- I think it was 9 through 13 you asked about. Maybe it was 9 through -- not 9. The comparison ones. 9, for example, was documents sufficient to show the volume and dollar amount of sales.

And we've produced all of our sales reports. And so those were the documents sufficient. We didn't think, Well, why would we run email searches? If you asked me a document request, give me documents sufficient to show what our sales are for a given period of time and given reason, we got the financial documents showing what the sales were and gave it to them. So they have that information.

Running additional searches couldn't possibly be relevant to any issue if you've gotten the actual sales data and that's all you've asked for.

But again, some of these requests, they then say, Oh, and this is responsive to No. 9, like they do for No. 1. No. 9, I mean, for Proposed Search Term No. 3, they say, Oh, it's responsive to 9.

Well, 9 only asked us for documents sufficient to show our sales. We gave them all of our regional sales reports for -- we don't have to do any additional ESI. We went on the computer system. We found all of our sales reports and we gave it to them. That was the answer we gave: Here's all of our sales reports.

With respect to Nos. 11 through 14, which I think you were asking about, Judge, was comparisons, our answer was: We don't do comparisons between our product and other products that have Vitamin D or zinc. First of all, the liquid, which the Plaintiff took, doesn't have Vitamin D or zinc. Those are

additional -- those are ingredients in the supplements. They're not even ingredients in the liquid.

And another reason, Judge, by the way, why the distinction between the liquid and the supplements is relevant, while the complaint seems to talk about the -- almost entirely the supplements -- there's a couple passing references to the liquid -- when the Plaintiff said she only used the liquid, the liquid is a food product that's been around for generations. It isn't even regulated by the Supplement Act, which would govern the supplements if they were at all relevant to the case.

And so there are major distinctions. And we think -- I know we're not getting into some of these standing issues. And counsel was talking about a number of cases, but there are a whole host of cases in the Southern District that say that, you know, Plaintiff has to actually have purchased the product.

I mean, here the supplements are a very, very different product than the actual liquid. The liquid is, as I said, a food product that's been around -- that's actually used for a whole host of things other than, quote, "health-related issues."

THE COURT: All right.

MR. BIDEAU: And the --

THE COURT: Thank you, Mr. Bideau. I'm going to -- I've looked through my notes as you were speaking. I don't

have any other questions.

Mr. Petterson, we've gone way over on both Plaintiff's side and defense side. Is there anything that you want to say in five minutes or less in terms of rebuttal?

MR. PETTERSON: Yes, your Honor. I think I can keep it under five minutes, if I may.

THE COURT: All right. You've got five minutes. This time I will enforce it.

MR. PETTERSON: Your Honor, as you pointed out, counsel for Bragg is making summary judgment-type arguments. And this is a discovery hearing. The bar for relevant discovery is much lower.

But even on the merits, Bragg is wrong. Bragg asserts on Page 4 of the JSR, quote, "Bragg's internal thoughts are irrelevant," end quote. Bragg doesn't cite any authority for that.

Bragg then asserts on the next page that FDUTPA has, quote, "a subjective component as to class members," end quote. Again, no cited authority. And that's exactly wrong as to FDUTPA.

And Plaintiff has cited several cases, like *Fitzpatrick*, *Nuwer*, *Collins*, the FTC cases, which, contrary to what Mr. Bideau said, that FDUTPA expressly incorporates that precedent into it.

And as these cases all expressly state, this case is

not limited by Plaintiff's subjective reliance, her subjective intentions or her subjective purchases. Bragg has cited no authority to rebut this. And counsel's self-serving statements about what should govern here is incorrect and it isn't founded on anything.

And then Plaintiff just doesn't believe that Bragg was sincere about running these search terms. Mr. Bideau did not state that he would run new proposed search terms related to weight. He said at the eleventh hour in his email that he would consider running a proposal. We sent it to him. The last time we sent him our proposal, he just [indiscernible] inappropriate and wouldn't advise or offer any counterproposal. And that type of feet-dragging and inaction has been Bragg's MO in all of these disputes.

Mr. Bideau also said that the CEO has her hand in everything, yet Plaintiff doesn't have a single document from the CEO.

Additionally, we -- as to the hit counts, we've never said that Bragg must review all the documents records in its hit counts. We just want the hit counts so that we can then proceed to work with Bragg to tailor these search strings to identify relevant documents that should be produced.

And as your Honor pointed out earlier, you know, even where the Court believes -- and frankly, maybe rightly so -- that some of these search strings aren't relevant to certain of

the identified requests that we highlight, they are still tied to other related requests for production.

And so, you know, to the extent they're overbroad and should be trimmed down, we still believe that all of them have a solid foundation for why Bragg should run them and at least give a hit count so that if additional tailoring is necessary that can be done.

Also, Mr. Bideau just said for the first time to your knowledge -- we hadn't heard this before just now -- that he did run our search terms and that some resulted in very few hits.

Bragg has now sent us those hit counts. It sounds like they've been completed as to two possible custodians that I think that if Bragg was ordered to run our proposed search terms against the remaining custodians and provided us those hit counts and both directed that relevance will not be limited by Plaintiff's subjective reliance, intentions or purchases in accord with the FDUTPA case law, I think that would go a very long ways towards resolving it.

And then to the extent that proportionality comes up, we're very happy, as we always have been, to work with Bragg to narrow and to resolve the proportionality issues.

Thank you.

THE COURT: All right. Thank you.

You had a minute to spare.

Now we're going to turn to the last motion, which is Defendant's motion. I think I said 15 minutes, although quite frankly I don't think we'll need 15 minutes. That's a relatively discrete motion.

So, Mr. Bideau, I will hear from you on your motion for protective order.

MR. BIDEAU: I won't need 15. You're right, Judge. It is a very narrow issue.

Plaintiff served us with a -- to the corporate rep with a substantial corporate rep designation notice.

We worked together with Plaintiff to narrow the -- to clarify -- I shouldn't say "narrow" -- to clarify some of the broader requests that were difficult, mostly to make sure we prepared a witness appropriately and that there were no surprises and we got everything done.

And the only snag came on the very last one -- the very first one, which is -- which, when they initially sent it to us was an extremely broad request requesting -- one second, Judge; I lost something here -- a very broad, very broad request which asked us to produce a witness dealing with our entire corporate structure, the ownership structure, the corporate governance [indiscernible], including identity of any investor, beneficiaries and Bragg's relationship with any parent or subsidiaries.

And we object to that because there was -- there's no

issue in this case about anybody other than Bragg. They certainly have no entitlement to find out who Bragg's investors are, beneficiaries --

THE COURT: Right. But that's been amended. They took that out.

MR. BIDEAU: They did amend -- they did amend it; but in their amendment they said, okay, essentially Bragg's structure, including, you know, people who --

THE COURT: It's Bragg's --

MR. BIDEAU: -- work --

THE COURT: Let me read the amended for the record. The amended language was narrowed to say: "Bragg's corporate structure, including any parent or subsidiary entity involved in the research, development or marketing of Bragg's ACV products." That's much narrower and tailored specifically to Bragg's ACV products.

MR. BIDEAU: That is correct, your Honor.

And so I went back to counsel and said: Okay. But what does that mean to say Bragg's corporate structure, including -- and then talking about the structure when -- and talking about the ACV products when the next six topics in your deposition notices are the rules, policies, procedures and practices regarding Bragg's product development and marketing; the research, testing, analysis and review Bragg conducted or relied upon relating to the purported health benefits of apple

cider vinegar and so on?

And then No. 4 was all our research and testing.

No. 5 is the creation of new products and marketing material.

No. 6 is all marketing.

So I said: You seem to have covered all of our activities -- all of Bragg's activities; and the two people who are going to be the corporate reps, at least two of them, are the CEO, Linda Boardman, okay? And the chief science officer. And it's possible we will use a third one on one topic unrelated to this.

So I don't understand what you mean by "corporate structure" even if you're limiting it to those topics because those topics are now included within 2, 3, 4, 5 and 6. We've not objected.

And so I don't want to get in a position where corporate structure means something amorphous. I mean, what you're entitled to is anything that relates to the case, but not to our corporate structure and not to, you know, our -- this is a private company made up of, you know, partnerships, LLCs, that sort of thing. You're going to get the corporate rep deposition of the CEO and the chief science officer on every topic that you have asked for, which is product development and marketing, which is, you know, advertising, which is research, which is all of those topics. Okay?

And so I don't understand what else -- what else you want here.

And the only answer was: We want to know kind of who's in charge.

And I said: Well, you're going to have the lady who's in charge. She's the company's CEO. She's going to be testifying.

So corporate structure is not an issue in the case, even as limited corporate structure is not an issue that's in the case.

And so they're going to have -- like I said, they're going to have the very senior people in the company testifying as to the corporate representatives here because they are the most logical people to do it.

And the lady that -- she was at the Plaintiff's deposition. She's the one who, you know, is the ultimate decision-maker, subject of course to reporting to a board of directors, like at every corporation.

And so we continue to object to No. 1 because we just don't think it's appropriate to have to ask -- to prepare a witness on a topic that is just not relevant to the case. What's the structure -- what does corporate structure have to do with anything?

This case has to do with our development, marketing and sale of apple cider vinegar; in our view, apple cider vinegar

in a liquid form.

But nonetheless -- so we don't think the corporate structure matters.

And that's all I have to say about it, judge.

THE COURT: All right. Thank you.

Mr. Petterson, Mr. Bideau took five minutes, so you'll have five minutes as well.

MR. PETTERSON: Thank you, your Honor.

First, Plaintiff believes that at the outset this Court's precedent shows that Bragg's motion is inappropriate because this Court doesn't often, if ever, grant a protective order against a noticed topic.

In fact, Bragg hasn't cited a single analogous case for this position, but cites cases where the Court's granted protective orders in other -- in totally unrelated contexts. In the one case it does discuss a 30(b)(6) topic, I actually think that it's directly on point and it proves the relevance in Plaintiff's position. That would be *Kraft*, which is on Page 5, I believe, of Defendant's motion.

THE COURT: Let me --

MR. PETTERSON: The Court there --

THE COURT: -- ask you this, Mr. Petterson. Let me interrupt you for a minute and ask you this: I'm aware of at least two cases, one by Judge Maynard, where she ruled in advance that a 30(b)(6) deposition topic was facially

overbroad. The case was *Cornelius versus Rollins Ranches*, a 2021 case. And I also have granted a motion for protective order on a Rule 30(b)(6) corporation designation where I found that the topic was overbroad.

And my case is *Tropical Paradise*, Southern District of Florida, September of 2018.

I do agree with you that other judges in this district have found that it's premature to do that and rather that, you know -- they've denied motions for protective orders. And I think the two cases that you cite are *Balu versus Costa Crociere*, which is a Judge Torres case, and *Acevedo versus NCL*, which is a McAliley case.

So clearly, judges in this district are doing different things with reference to that. And at least by my research, the Eleventh Circuit has been silent on the issue.

MR. PETTERSON: Your Honor --

THE COURT: Why should we go your way?

MR. PETTERSON: I apologize for overlooking your cases on this issue.

But I do think that on the merits that, going through Bragg's argument, Plaintiff wholeheartedly agrees that her discovery is limited to the claims and defenses in this action.

But we also believe that Bragg's chain of command over its ACV [indiscernible] research, development and marketing, as you alluded to earlier, is pretty narrow and much narrower than

the original topic, and that it's relevant to Plaintiff's FDUTPA claims for all the same reasons, actually, that Bragg's internal documents and communications from the previous motions are relevant.

You know, Plaintiff is entitled to know the structures by which Bragg is making decisions about research, development and marketing.

And further, this isn't -- as Mr. Bideau said, the CEO is going to be the witness and so she likely has a fairly good handle on -- I presume about the corporate structure. And so this isn't particularly harassing and there's no harm that will come to this and it doesn't seem like an undue burden to ask the CEO some questions about the structure as it relates to the claims in this case.

So we do believe that this is -- this topic seems relevant information again for the same reasons as Bragg's internal documents are relevant and that there's very little burden for Bragg in preparing its witness for these sorts of questions.

THE COURT: All right.

MR. BIDEAU: If I could have one 30-second rebuttal.

THE COURT: You have literally one minute.

I'm sorry, Mr. Petterson. Are you done?

MR. PETTERSON: Yes. I'm done, your Honor.

THE COURT: All right. Thank you.

You've got one minute, Mr. Bideau.

MR. BIDEAU: Bragg is a private company. It is not a public company. It shouldn't have to disclose its corporate structure when that is not an issue in the case.

And also when every relevant topic that is an issue in the case is covered by Requests 2 through 6 to which Bragg has not objected and will have a corporate representative there to testify.

THE COURT: All right. Thank you.

What we're going to do now is we're going to take a break. So if you need a personal comfort break, please do so. Oh, this timer is going crazy.

I'm going to create a third -- a separate room where I can go and think about this for a few minutes so that I can come back and rule from the bench.

I'll be back in between 15 to 20 minutes; so if you take a personal comfort break, make sure you're back in 15 minutes because I'll be back between 15 and 20 minutes.

Do not hang up. You can stay on the line, talk to each other if you so choose. I will stop the recording, so the matter will be off the record. And then we will -- I will rejoin you here in about 15 minutes to 20 minutes. So it's 3:37. So I'm going to stop the recording now.

(Pause in the digital audio recording.)

THE COURT: All right, everyone. Thank you. It's 4:11

and I'm back after considering the parties' arguments so that I can rule orally from the bench.

We are back on the record.

And I've confirmed that everyone is here, all counsel for Plaintiff and all counsel for the defense.

Now, my ruling today will be framed by the following legal principles: First, under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Rule 26(b) also allows discovery through the increased reliance on the concept of proportionality, *In Re: Takata Airbag Product Liability Litigation*, Southern District of Florida, March 1st, 2016, quoting Chief Justice Roberts's 2015 year-end report on the judiciary.

If the opposing party objects to a request for production, the requesting party may then file a motion to compel pursuant to Federal Rule of Civil Procedure 37, but only after its counsel in good faith confers with opposing counsel to resolve the disputes without further court intervention.

That's Rule 37(a)(1).

Moreover, the Federal Rules also afford the Court broad authority to control the scope of discovery, *Josendis versus Wall to Wall Residence Repairs*, Eleventh Circuit, 2011, at Pages 1306 and 1307.

But the rules strongly favor full discovery whenever possible, *Farnsworth versus Proctor & Gamble*, Eleventh Circuit, 1985, at Page 1547.

Accordingly, the Courts employ a liberal and broad scope of discovery in keeping with the spirit and purpose of these rules, *Rosenbaum versus Becker & Poliakoff*, Southern District of Florida, 2010, at Page 1306.

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts and therefore embody a fair and just result, *Shapiro versus Dynamic Recovery Solutions*, Southern District of Florida, July 26th, 2018, at Page 4.

Accordingly, when a party objects to discovery, the onus is on the objecting party to demonstrate with specificity how the objected-to request is unreasonable or otherwise unduly burdensome, *Powers versus Target Corporation*, Southern District of Florida, January 24, 2020, at Page 2.

My ruling is also framed by Rule 26(b)(2)(C), which

authorizes the Court to limit discovery if the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome or less expensive or the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues, *JCW Software versus Embroidme.com*, Southern District of Florida, May 31, 2011, at Page 1.

Relevant to the first motion, ECF No. 18, are also the rules and procedures regarding ESI. I will summarize these.

The central issue in almost all discovery management is the determination of scope. Federal Rule of Civil Procedure 1 provides that the rules, quote, "should be construed and administered to secure the just, speedy and inexpensive determination of every action and proceeding," unquote.

As officers of the Court, attorneys share this responsibility with the judge to whom the case is assigned. Rule 1 imposes an obligation on the bench and on the bar to take affirmative steps to ensure that discovery in any case is proportional to the stakes and the issues involved in the case and is undertaken with cooperation among the parties.

Rule 26(b)(2)(C) requires that a judge limit discovery to what is proportional to the needs of the case. Whether the

proportionality requirement of Rule 26(b)(2)(C) is satisfied may depend on the type of ESI being sought.

As with all information sought in discovery, ESI must also be relevant to the claims or defenses asserted in the pleadings and not privileged or protected.

In the context of ESI, key custodians' production of active data available to the responding party in the ordinary course of a party's activities is most likely to satisfy the proportionality requirement. Active electronic records are generally those currently being created, received or processed. Even requests for certain additional ESI, however, may be -- I'm sorry -- even requests for active ESI may be disproportionate under certain circumstances.

For example, system data, which includes such things as when people logged on or off the computer or network, the applications or passwords used and what websites they visited may be more remote and more costly to produce.

To ensure that proportionality -- the proportionality requirement is met, the Court may review, as I have today, the parties' proposed requests for productions. Normally, parties are encouraged to stage the discovery of electronically stored information by first searching for what's reasonably accessible as information associated with most critical or key players, examining the results of that search and using those results to refine subsequent searches, if necessary.

The parties are also encouraged to use search methods and criteria that are cost-effective and proportional to reasonable discovery needs.

Although not here -- although there are many types of electronically stored information, Plaintiff is seeking only email messages and attached files. Keyword searches are considered an appropriate and relatively cost-effective way to locate relevant ESI in emails.

The process of using keyword searches usually includes at least two steps: First, the attorneys together develop a list of keywords; and, second, the list of keywords that is mutually agreeable is then applied to the ESI which must then be manually reviewed to ensure that no privileged information is being turned over and that the ESI contains the keywords. That's how the process should work.

Against this general background, I'm going to turn to the JSR to rule on the motions to compel first custodians and search terms, which is ECF No. 18, and then as to requests for production, which is ECF No. 23.

On the first, which is ECF No. 18, dealing with custodians and search terms, as to custodians, I am going to -- as to this motion, I'm going to grant the motion in part and deny it in part as follows:

First, I'm going to limit the number of custodians for whom the searches will be run from 11 to eight. These eight

will consist of the six individuals that the Defendant identified in its initial disclosures plus Mr. Muscat, M-U-S-C-A-T, and Ms. Tao, T-A-O. So we will go down from 11 to eight.

Second, as to search terms, Plaintiff in the motion seeks internal communications of Bragg employees regarding Plaintiff's claims as alleged in the complaint.

Initially, I find that internal communications are indeed relevant to Plaintiff's claims.

Second, I find that in terms of relevancy, communications are not going to be limited to Plaintiff's deposition testimony about only fat burning and weight loss or liquid ACV. Rather, relevant documents include all purported health benefits listed in the complaint, which is what controls the scope of discovery.

If my memory serves me correctly, the complaint alleged health benefits -- multiple health benefits, including helping with cholesterol, helping with blood sugar levels, helping with immune benefits and weight loss and appetite suppression.

Finding that these documents are relevant, I also find that they are proportional and related to the issue at stake in the action.

Plaintiff's attempt to craft search terms to facilitate Defendant's response to her requests for production is, in fact, an appropriate mechanism pursuant to Federal Rule of

Civil Procedure 26(f)(3)(C). That said, however, I find that Plaintiff's proposed terms are overbroad and somewhat duplicative.

Rather than the Court trying to sit down to craft appropriate search terms, which really is the responsibility of the parties, the parties are ordered to meet and confer within seven days of today -- that is, by January 10th -- to develop mutually agreeable keyword searches to locate and then produce responsive emails and their attachment or other ESI responsive to Plaintiff's requests for production.

If no documents exist to a specific request, for example -- and this is an example only -- Nos. 7 and 8, dealing with the investigations, government investigations, law enforcement investigations or consumer protection boards, then Defendant is to amend its responses to the requests for production to clearly state that no such documents exist.

To clarify, the Defendant need not run an ESI search as to those requests for productions on which Defendant states that no documents exist.

Lastly, the discovery deadline, as you know -- and I said it in the beginning of this hearing -- expires on January 30th. Therefore, unless the parties agree otherwise, responsive documents resulting from application of the keyword search must be produced to Plaintiff by January 24th, 2024.

Just to be clear, I cannot modify the discovery

deadline. If necessary, that is something that has to be done by motion to Judge Singhal.

Turning next to ECF 23, dealing with a motion to compel for Requests For Production 5, 6 and 17, first a global ruling as to all three: As to 5, 6 and 17, I am going to -- I know that Defendant's response after a series of objections starts with "subject to and without waiver" and then proceeds to provide a response.

I find that that is a boilerplate objection, and I will strike that language. This Court does not recognize boilerplate objections, which make unclear what documents are being produced and what documents are being withheld.

Turning now to Request For Production No. 5, I'm going to grant the motion to compel. The Defendant is to produce internal communications. To the extent that confidentiality is an issue, there is a confidentiality order already in place which I signed at ECF No. 20.

As to Request For Production No. 6, I'm going to grant the motion to compel in part, deny it in part, and I'm going to limit it to Bragg products only, not non-Bragg.

As to Request For Production No. 7, I'm going to grant the motion to compel to include, as I said before, internal communications discussing the content and design of the labels and not just the face of the labels themselves.

Because production of these documents may also include

production of ESI, the ESI component will be due by January 24th. Any non-ESI will be due within seven days.

That takes me to the last motion, which is Defendant's motion for a protective order.

Under Rule 26(c)(1), the Court may for good cause issue an order to protect a party or a person from annoyance, embarrassment or pressure or undue burden or expense.

Rule 26(c)'s good cause requirement indicates that the party seeking a protective order has the burden to show the necessity for its [indiscernible] which contemplates a particular and specific demonstration of fact as distinguished from stereotypical or conclusory statements.

Relevant to the motion for protective order is also Rule 30(b)(6). Rule 30(b)(6) governs deposition notices directed to organizations. In the deposition notice, the party must describe with reasonable particularity the matters for examination.

In response, the organization must designate an agent or other person to testify on its behalf about information known or reasonably available to the organization.

The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to the designee or to matters on which the designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past

employees or other sources. And I'm citing to *Krantz versus State Farm Fire Insurance*, Middle District of Louisiana, January 25, 2016, at Pages 7 through 9.

Upon review of the case law on the issue whether a court can issue a protective order prior to a Rule 30(b)(6) deposition, I note that there is a split among districts and even in this district among different judges with no binding Eleventh Circuit precedent on the issue.

On the one hand, some courts have limited Rule 30(b)(6) deposition topics for being overly -- that are overly broad, vague or ambiguous. And that includes the *Krantz* case, which I previously cited, at Pages 7 through 9.

Similarly, as I mentioned during the hearing, Judge Maynard, Magistrate Judge Maynard in this district, has also ruled in advance of a deposition that certain topics are facially overbroad. And the case on that was *Cornelius versus Rollins Ranches*, Southern District of Florida, September 29, 2021, at Page 4. And that decision was affirmed.

In the past, as I mentioned also, I have also granted a motion for protective order on a Rule 30(b)(6) corporate deposition where I found that the deposition topic was overbroad. And the case in which I did that was *Tropical Paradise Resorts versus JBSHBM*, Southern District of Florida, September 5, 2018, at Page 2.

On the other hand, I am also aware of cases cited by

the Plaintiffs at ECF 34, Page 2, where other judges in this district have denied similar motions for protective order to limit or preclude deposition of a corporate representative. Specifically, the cases cited by Plaintiff are *Balu versus Costa Crociere*, Southern District of Florida, 2011, an opinion by Judge Torres, and *Acevedo versus NCL Bahamas*, Southern District of Florida, 2017, an opinion by Judge McAliley.

Despite the split within the district -- and there has been no Eleventh Circuit precedent on the issue. So in the absence of Eleventh Circuit precedent, based on the facts of this case -- and for me, in the interest of efficient case management and using my discretion to control discovery -- I will determine the motion for protective order on the merits and I will overrule Plaintiff's objection that the motion should be procedurally disallowed as premature.

Presently, Plaintiff has amended or narrowed Topic No. 1 to the following, quote: "Bragg's corporate structure, including any parent or subsidiary entity involved in the research, development or marketing of Bragg's ACV products," unquote.

As narrowed by the Plaintiff, I find that Topic 1 is relevant to the claims and defenses in the case. Accordingly, the motion for protective order is denied.

To the extent that there are any confidentiality concerns about this type of information, again, I note that ECF

20 is a confidentiality order that is already in place.

The last thing for me to consider is the issue of fees. As you know, Rule 37 provides for the payment of expenses, including attorney's fees, when a court grants a motion to compel.

In this instance, however, I find that the motions, all three, and responses were substantially justified; and therefore, attorney's fees and costs are not warranted. Each party will bear their own expenses.

That is my ruling.

Anything further from the parties? Anything from the Plaintiff?

MR. PETTERSON: No, your Honor. Thank you.

THE COURT: Anything from the defense, Mr. Bideau?

MR. BIDEAU: Yes, your Honor.

Two -- well, one statement and two questions.

Judge, if I may, as a practical standpoint, with the number of additional custodians, I do want to put on the record that I don't see any way that we could actually produce all the documents that would be -- that would be hit by the 24th. But that's an issue that we will have to amongst the parties address and address with the trial judge, I guess.

THE COURT: Exactly.

MR. BIDEAU: And I want -- I needed to get some clarification with respect to Jones Chen and Dr. Jeffrey

Bloomberg, who do not have Bragg email accounts and for whom we don't -- so obviously, I can't -- I can't search through their emails. I can search emails in Bragg that other people in Bragg may have gotten from them, but I can't -- there's no way I can do any ESI on anything they might have, because they don't have Bragg email accounts.

THE COURT: Well, that's --

MR. BIDEAU: I can get their email account, but I can't get those.

THE COURT: Right. But I can expect that you can search the custodians that I've just listed for emails they received from Mr. Bloomberg or Chen or on which they were copied or to them.

MR. BIDEAU: I can do that, your Honor. That's the only clarification I wanted.

THE COURT: That's what I intended.

So, you know, it's from or to either directly or as a CC --

MR. BIDEAU: Okay.

THE COURT: -- or containing anything like that. All right?

All right, everyone. Thank you very much. I appreciate the time and effort it took to go through all of these. These were important issues to the parties and to the Court.

So I thank you for being prepared and for answering all of my questions and staying alert and being patient while I deliberated on this.

Thank you, everyone. Happy New Year, by the way.

MR. BIDEAU: Thank you, Judge.

MR. PETTERSON: Thank you, your Honor.

THE COURT: This concludes our hearing and we are free to go.

Anything else from Plaintiff?

MR. PETTERSON: No, your Honor.

THE COURT: Anything else from defense?

MR. BIDEAU: No, your Honor.

THE COURT: All right. Thank you, everyone. You're free to go. Have a great day.

MR. BIDEAU: Thanks.

(Proceedings concluded.)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter produced to the best of my ability.

____________ /s/Lisa Edwards
DATE LISA EDWARDS, RDR, CRR
(305) 439-7168
Reporterlisaedwards@gmail.com

## /

**/s/Lisa** [1] - 79:23

## 1

**1** [17] - 1:8, 6:1, 6:15, 6:22, 7:12, 22:19, 24:7, 26:23, 39:15, 46:17, 53:12, 61:19, 68:10, 68:14, 68:20, 76:17, 76:21
**10,000** [2] - 26:14, 26:23
**10th** [1] - 72:7
**11** [16] - 11:8, 11:11, 18:13, 18:17, 18:24, 19:2, 19:6, 22:19, 24:7, 25:5, 42:21, 50:11, 53:21, 70:25, 71:3
**11th** [1] - 7:12
**12** [4] - 7:17, 27:13, 32:16, 47:4
**1230** [1] - 1:15
**13** [2] - 29:11, 52:22
**1306** [2] - 67:5, 67:12
**1307** [1] - 67:5
**14** [7] - 18:13, 18:17, 18:25, 19:2, 19:6, 29:11, 53:21
**15** [9] - 8:8, 9:17, 58:2, 58:3, 58:7, 65:16, 65:17, 65:18, 65:22
**150** [1] - 36:23
**1547** [1] - 67:8
**16** [1] - 29:11
**16th** [1] - 7:22
**17** [8] - 5:23, 25:18, 29:4, 29:16, 29:22, 73:4, 73:5
**18** [7] - 5:17, 6:9, 9:8, 9:18, 68:11, 70:18, 70:20
**19** [1] - 29:4
**1985** [1] - 67:8
**1st** [1] - 66:19

## 2

**2** [9] - 22:19, 25:14, 26:13, 37:10, 60:14, 65:6, 67:24, 75:24, 76:1
**20** [10] - 7:6, 8:6, 9:9, 29:4, 31:14, 65:16, 65:18, 65:22, 73:17, 77:1
**200** [2] - 1:16, 13:16
**2010** [1] - 67:12
**2011** [3] - 67:4, 68:10, 76:5
**2015** [2] - 34:2, 66:19
**2016** [4] - 41:1, 42:12, 66:19, 75:3
**2017** [1] - 76:7
**2018** [3] - 63:6, 67:19, 75:24
**2020** [1] - 67:24
**2021** [4] - 12:17, 40:23, 63:2, 75:18
**2023** [1] - 6:22
**2024** [5] - 1:5, 7:19, 7:21, 7:23, 72:24
**20th** [1] - 6:6
**21** [1] - 7:2
**21st** [1] - 7:23
**23** [9] - 6:10, 7:7, 7:9, 8:19, 8:21, 9:4, 9:8, 70:19, 73:3
**23-60812-CIVIL-SINGHAL** [1] - 1:2
**23-Civil-60812** [1] - 3:2
**24** [1] - 67:24
**24th** [3] - 72:24, 74:2, 77:20
**25** [1] - 75:3
**25,000** [1] - 42:2
**26(b** [1] - 66:16
**26(b)(1** [1] - 66:8
**26(b)(2)(C** [3] - 67:25, 68:24, 69:1
**26(c)'s** [1] - 74:8
**26(c)(1** [1] - 74:5
**26(f)(3)(C)** [1] - 72:1
**26th** [2] - 23:8, 67:19
**27** [3] - 6:2, 6:15, 7:12
**27th** [2] - 5:17, 7:1
**28** [1] - 8:24
**28-day** [1] - 8:21
**28th** [1] - 7:21
**29** [1] - 75:17

## 3

**3** [6] - 1:5, 27:13, 28:15, 37:10, 53:13, 60:14
**30(b)(6** [8] - 62:16, 62:25, 63:3, 74:14, 74:21, 75:5, 75:9, 75:20
**30(b)(6)** [1] - 74:14
**30-second** [1] - 64:21
**300** [1] - 1:22
**305** [2] - 2:2, 79:24
**30th** [2] - 7:18, 72:22
**31** [1] - 68:10
**31st** [1] - 7:6
**33131** [1] - 1:25
**333** [1] - 1:24
**33401** [2] - 1:19, 1:22
**34** [2] - 7:13, 76:1
**35** [1] - 7:10
**36** [1] - 7:15
**37** [2] - 66:23, 77:3
**37(a)(1)** [1] - 67:1
**3:37** [1] - 65:23

## 4

**4** [14] - 28:17, 29:3, 29:5, 29:16, 29:22, 30:1, 37:11, 44:12, 55:14, 60:2, 60:14, 67:19, 75:18
**400** [1] - 13:16
**439-7168** [2] - 2:2, 79:24
**4400** [1] - 1:25
**47** [1] - 5:18
**4:11** [1] - 65:25

## 5

**5** [12] - 5:23, 29:5, 29:7, 29:16, 29:22, 60:3, 60:14, 62:19, 73:4, 73:5, 73:13, 75:24
**5,000** [2] - 41:15, 41:25
**50** [1] - 32:15

## 6

**6** [14] - 5:23, 25:18, 29:3, 29:5, 29:9, 29:16, 29:22, 60:5, 60:14, 65:6, 73:4, 73:5, 73:18
**68508** [1] - 1:16

## 7

**7** [17] - 12:17, 12:19, 12:20, 18:13, 18:16, 18:17, 18:20, 19:6, 37:24, 49:17, 49:18, 50:10, 50:15, 72:12, 73:21, 75:3, 75:12
**777** [2] - 1:18, 1:21
**7th** [1] - 7:9

## 8

**8** [12] - 12:5, 12:17, 12:19, 12:21, 13:3, 13:4, 24:6, 49:18, 50:4, 50:10, 51:4, 72:12
**80-plus** [1] - 41:17
**800** [1] - 1:19

## 9

**9** [14] - 6:24, 11:10, 29:3, 52:22, 52:23, 52:24, 53:12, 53:13, 53:14, 53:15, 75:3, 75:12

## A

**ability** [3] - 24:5, 25:25, 79:21
**above-entitled** [1] - 79:21
**absence** [1] - 76:10
**absolutely** [1] - 26:3
**access** [3] - 43:23, 44:16, 66:12
**accessible** [1] - 69:22
**accompany** [1] - 13:9
**accord** [2] - 24:2, 57:18
**according** [1] - 42:23
**accordingly** [4] - 9:3, 67:9, 67:20, 76:22
**account** [5] - 43:10, 43:12, 44:22, 44:24, 78:8
**accounts** [4] - 15:19, 39:1, 78:1, 78:6
**accuracy** [1] - 4:7
**accurate** [3] - 3:22, 67:16, 79:20
**Acevedo** [2] - 63:11, 76:6
**Act** [1] - 54:9
**act** [1] - 17:12
**action** [8] - 39:19, 42:11, 63:22, 66:11, 67:16, 68:7, 68:17, 71:22
**active** [4] - 21:14, 69:7, 69:9, 69:12
**actively** [1] - 9:1
**activities** [3] - 60:7, 69:8
**actual** [7] - 29:1, 35:3, 35:7, 36:7, 37:23, 53:9, 54:18
**ACV** [18] - 20:9, 20:18, 20:21, 21:7, 21:8, 23:11, 25:15, 29:6, 29:12, 37:25, 51:6, 59:14, 59:16, 59:21, 63:24, 71:13, 76:19
**ad** [1] - 36:8
**adamant** [1] - 48:13
**adamantly** [1] - 10:18
**added** [1] - 42:22
**addition** [1] - 44:12
**additional** [8] - 13:14, 48:6, 53:8, 53:17, 54:1, 57:6, 69:11, 77:18
**additionally** [1] - 56:18
**address** [4] - 9:6, 44:18, 77:22
**addressed** [1] - 10:14
**addresses** [1] - 43:25
**addressing** [1] - 21:11
**adequacy** [1] - 21:12
**adequate** [2] - 21:15, 21:21
**adjudication** [1] - 6:3
**administered** [1] - 68:16
**admissibility** [1] - 33:24
**admit** [1] - 16:12
**admitted** [1] - 39:8
**ads** [8] - 17:17, 41:17, 41:19, 41:23, 41:24, 48:3, 48:16
**advance** [2] - 62:25, 75:15
**advertisement** [1] - 29:7
**advertising** [2] - 35:13, 60:24
**advise** [1] - 56:12
**advisory** [2] - 43:12, 43:14
**affirmatively** [1] - 51:13
**affirmed** [1] - 75:18
**afford** [1] - 67:2

**afternoon** [3] - 3:6, 5:9, 5:12
**AG** [1] - 49:10
**agency** [2] - 51:2, 52:9
**agent** [1] - 74:18
**ago** [1] - 20:23
**agree** [11] - 23:1, 23:20, 25:13, 26:21, 29:5, 33:22, 34:1, 39:10, 39:17, 63:7, 72:22
**agreeable** [3] - 23:24, 70:12, 72:8
**agreed** [4] - 48:2, 48:5, 48:20, 49:25
**agreement** [1] - 48:22
**agrees** [1] - 63:21
**ahead** [3] - 14:25, 32:12, 44:10
**Airbag** [1] - 66:18
**al** [1] - 1:4
**alarm** [1] - 4:20
**alert** [2] - 4:21, 79:2
**ALICIA** [1] - 1:11
**allegations** [2] - 34:4, 38:22
**alleged** [2] - 71:7, 71:16
**allegedly** [1] - 22:6
**allow** [2] - 4:4, 8:2
**allowing** [1] - 8:4
**allows** [1] - 66:16
**alluded** [2] - 45:9, 63:25
**almost** [3] - 13:24, 54:5, 68:13
**alone** [1] - 45:10
**alternatively** [1] - 16:20
**Amazon** [1] - 39:13
**ambiguous** [1] - 75:11
**amend** [7] - 51:12, 51:16, 52:14, 52:17, 59:6, 72:15
**amended** [6] - 13:13, 13:21, 59:4, 59:11, 59:12, 76:16
**amendment** [2] - 37:6, 59:7
**America** [2] - 14:14, 17:18
**amorphous** [1] - 60:17
**amount** [3] - 52:25, 66:11, 68:6
**analogous** [1] - 62:13
**analogy** [1] - 21:6
**analysis** [1] - 59:24
**announce** [1] - 4:25
**annoyance** [1] - 74:6
**answer** [20] - 6:23, 9:23, 15:16, 19:23, 30:6, 38:9, 38:14, 44:4, 49:4, 49:15, 50:4, 51:16, 52:8, 52:14, 52:15, 52:17, 53:19, 53:22, 61:3
**answered** [1] - 49:21
**answering** [1] - 79:1
**answers** [2] - 50:5, 51:13
**anyway** [1] - 18:3
**apologize** [1] - 63:18
**appear** [1] - 46:3
**APPEARANCES** [1] - 1:13
**appearances** [1] - 4:25
**appetite** [1] - 71:19
**apple** [10] - 17:4, 25:14, 38:1, 39:9, 42:13, 49:25, 51:6, 59:25, 61:25
**applicable** [1] - 29:23
**application** [1] - 72:23
**applications** [1] - 69:16
**applied** [2] - 46:18, 70:12
**applies** [2] - 49:17, 49:18
**apply** [3] - 37:15, 46:12, 46:20
**appreciate** [1] - 78:23
**appropriate** [8] - 20:25, 21:19, 26:16, 33:2, 61:20, 70:7, 71:25, 72:5
**appropriately** [2] - 45:11, 58:14
**approve** [1] - 24:1
**argue** [4] - 8:6, 9:17, 31:10, 37:11
**arguing** [3] - 4:1, 9:10, 31:8
**argument** [12] - 4:6, 6:17, 8:17, 9:8, 10:1, 17:2, 18:11, 29:2, 40:9, 42:19, 63:21
**arguments** [8] - 6:12, 7:25, 8:3, 10:3, 20:5, 20:7, 55:10, 66:1
**articles** [1] - 28:18
**aside** [1] - 11:11
**asserted** [2] - 48:8, 69:4
**asserts** [2] - 55:13, 55:17
**assigned** [2] - 3:3, 68:19
**associated** [1] - 69:23
**assume** [2] - 28:19, 33:23
**assurance** [4] - 25:15, 25:17, 25:19, 25:24
**attached** [1] - 70:6
**attachment** [1] - 72:9
**attachments** [1] - 42:1
**attempt** [1] - 71:23
**attempting** [1] - 9:1
**attention** [1] - 4:12
**attorney** [3] - 30:12, 30:24
**attorney's** [2] - 77:4, 77:8
**attorneys** [2] - 68:18, 70:10
**audio** [1] - 65:24
**AUDIO** [1] - 1:11
**authored** [5] - 12:6, 12:13, 13:6, 13:25, 28:3
**authorities** [1] - 37:25
**authority** [7] - 16:18, 16:21, 24:18, 55:15, 55:19, 56:3, 67:3
**authorizes** [1] - 68:1
**available** [3] - 69:7, 74:20, 74:25
**Avenue** [1] - 1:24
**avoid** [2] - 3:18, 4:2
**aware** [10] - 38:2, 50:8, 50:11, 50:14, 50:15, 50:18, 51:11, 52:16, 62:23, 75:25

## B

**B-12** [1] - 17:7
**background** [2] - 4:2, 70:16
**backs** [1] - 32:6
**backwards** [3] - 37:2, 46:19, 47:10
**bad** [1] - 4:10
**Bahamas** [1] - 76:6
**Balu** [2] - 63:10, 76:4
**bar** [2] - 55:11, 68:20
**based** [9] - 9:5, 11:19, 13:5, 15:21, 28:17, 33:4, 35:1, 67:16, 76:10
**basic** [2] - 11:6, 34:7
**basis** [1] - 16:1
**Beach** [2] - 1:19, 1:22
**bear** [4] - 17:10, 17:24, 18:9, 77:9
**Becker** [1] - 67:11
**BEFORE** [1] - 1:11
**beginning** [6] - 5:1, 6:17, 8:1, 9:17, 40:23, 72:21
**begins** [1] - 24:6
**behalf** [3] - 5:3, 9:10, 74:19
**believes** [3] - 10:23, 56:24, 62:9
**bell** [1] - 4:20
**bench** [4] - 8:10, 65:15, 66:2, 68:20
**beneficiaries** [2] - 58:23, 59:3
**benefit** [2] - 66:15, 68:5
**benefits** [10] - 22:2, 29:6, 29:7, 35:12, 35:14, 59:25, 71:14, 71:17, 71:19
**best** [7] - 23:15, 24:4, 24:5, 25:7, 25:8, 25:9, 79:21
**better** [4] - 10:13, 29:25, 35:17, 40:9
**between** [4] - 53:23, 54:4, 65:16, 65:18
**beyond** [1] - 74:22
**Bideau** [23] - 5:9, 31:9, 31:11, 33:7, 33:22, 38:11, 39:7, 40:9, 42:16, 42:18, 47:14, 50:3, 51:10, 54:24, 55:23, 56:7, 56:15, 57:8, 58:5, 62:6, 64:8, 65:1, 77:14
**BIDEAU** [47] - 1:20, 5:8, 31:9, 31:16, 33:11, 33:25, 34:15, 34:17, 35:5, 35:20, 38:17, 38:22, 39:18, 40:8, 40:12, 42:17, 43:1, 43:5, 43:7, 43:21, 44:20, 45:2, 45:19, 48:1, 48:11, 50:13, 51:9, 51:16, 52:3, 52:13, 52:17, 52:21, 54:23, 58:7, 59:6, 59:10, 59:17, 64:21, 65:2, 77:15, 77:24, 78:8, 78:14, 78:19, 79:5, 79:12, 79:15
**binding** [1] - 75:7
**Bioscience** [2] - 16:14, 21:23
**bit** [1] - 3:17
**black** [1] - 30:15
**blood** [4] - 39:14, 40:2, 40:19, 71:18
**Bloomberg** [7] - 43:7, 43:19, 44:22, 45:3, 45:8, 78:1, 78:12
**Bloomberg's** [2] - 43:22, 44:1
**blue** [1] - 32:16
**board** [3] - 43:12, 43:14, 61:17
**Boardman** [3] - 43:19, 44:1, 60:9
**boards** [1] - 72:14
**boilerplate** [2] - 73:9, 73:11
**bottom** [2] - 12:20, 29:15
**bought** [1] - 16:8
**box** [1] - 30:15
**Bragg** [90] - 3:1, 5:10, 10:17, 10:20, 10:25, 11:2, 11:22, 12:15, 14:2, 14:9, 14:13, 14:18, 15:23, 15:24, 16:5, 16:9, 16:12, 16:18, 16:21, 16:24, 18:1, 18:4, 18:21, 18:22, 19:9, 19:13, 20:14, 21:18, 23:18, 23:22, 26:10, 26:17, 27:1, 27:3, 27:8, 28:8, 28:12, 28:14, 28:22, 31:21, 31:24, 33:9, 33:11, 38:1, 41:8, 42:15, 43:10, 43:12, 43:19, 44:17, 44:22, 44:24, 44:25, 45:4, 47:20, 50:19, 51:13, 51:17, 52:3, 55:10, 55:13, 55:15, 55:17, 56:2, 56:6, 56:19, 56:21, 57:5, 57:12, 57:14, 57:21, 59:1, 59:24, 62:13, 64:6, 64:18, 65:2, 65:6, 71:6, 73:20, 78:1, 78:3, 78:4, 78:6

**BRAGG** [1] - 1:7
**Bragg's** [32] - 10:24, 11:1, 11:2, 12:7, 13:5, 15:4, 15:17, 17:23, 21:6, 25:25, 42:13, 51:6, 51:7, 55:14, 56:13, 58:23, 59:2, 59:7, 59:9, 59:12, 59:14, 59:16, 59:19, 59:23, 60:7, 62:10, 63:21, 63:23, 64:2, 64:16, 76:17, 76:19
**break** [3] - 65:11, 65:17
**briefing** [1] - 10:18
**briefly** [1] - 24:11
**briefs** [2] - 8:20, 9:24
**bring** [1] - 4:11
**broad** [12] - 10:10, 19:20, 26:21, 37:14, 44:11, 46:16, 58:18, 58:19, 67:2, 67:9, 75:10
**broader** [4] - 33:23, 39:11, 48:21, 58:13
**broadest** [1] - 45:23
**broadly** [2] - 14:9, 47:18
**bucks** [1] - 36:23
**burden** [6] - 64:12, 64:18, 66:14, 68:4, 74:7, 74:9
**burdensome** [3] - 19:20, 67:23, 68:3
**bureaucracy** [1] - 50:24
**burn** [1] - 41:6
**burning** [6] - 20:10, 41:14, 42:14, 48:10, 48:12, 71:12
**business** [1] - 12:9
**BY** [1] - 2:1

## C

**calendar** [1] - 7:22
**cannot** [1] - 72:25
**car** [1] - 22:10
**care** [1] - 46:22
**CARLY** [1] - 1:17
**Carly** [1] - 5:4
**Carolyn** [2] - 11:10, 11:15
**CASE** [1] - 1:2
**case** [75] - 3:1, 3:3, 3:22, 6:20, 7:17, 14:10, 14:19, 17:12, 17:15, 17:16, 17:18, 17:23, 19:10, 21:12, 21:20, 22:11, 30:8, 31:20, 31:25, 32:10, 32:11, 33:3, 33:4, 34:5, 34:7, 35:1, 35:22, 35:23, 35:25, 36:4, 36:21, 37:1, 39:15, 42:9, 42:11, 44:3, 44:5, 46:4, 49:13, 50:1, 54:11, 55:25, 57:18, 59:1, 60:18, 61:8, 61:10, 61:21, 61:24, 62:13, 62:16, 63:1, 63:2, 63:5, 63:11, 63:12, 64:14, 65:4, 65:6, 66:10, 68:6, 68:19, 68:21, 68:22, 68:25, 75:4, 75:11, 75:16, 75:22, 76:11, 76:22
**Case** [1] - 3:2
**cases** [21] - 9:24, 14:14, 14:16, 17:13, 17:14, 35:23, 36:1, 36:22, 36:25, 47:7, 54:14, 54:15, 55:21, 55:22, 55:25, 62:14, 62:24, 63:10, 63:18, 75:25, 76:4
**cast** [1] - 25:5
**categorically** [2] - 10:25, 14:20
**categories** [2] - 23:10, 27:15
**category** [1] - 14:10
**causation** [4] - 39:22, 39:23, 48:14
**caused** [1] - 39:24
**causes** [1] - 4:9
**CC** [1] - 78:18
**central** [1] - 68:13
**CEO** [16] - 19:10, 31:25, 38:4, 43:19, 49:1, 50:17, 50:23, 51:25, 52:6, 56:15, 56:17, 60:9, 60:22, 61:6, 64:8, 64:13
**CEO's** [1] - 52:4
**certain** [5] - 48:1, 56:25, 69:11, 69:13, 75:15
**certainly** [6] - 9:21, 34:2, 43:24, 46:6, 52:17, 59:2
**certification** [2] - 21:1, 21:25
**certify** [1] - 79:19
**cetera** [1] - 4:7
**chain** [1] - 63:23
**challenge** [1] - 9:5
**challenged** [1] - 17:17
**challenging** [1] - 51:2
**charge** [4] - 39:1, 52:7, 61:4, 61:6
**cheap** [1] - 26:18
**cheaper** [1] - 21:9
**check** [1] - 12:19
**Chen** [8] - 44:12, 44:14, 44:21, 44:22, 45:3, 45:8, 77:25, 78:12
**chief** [5] - 31:25, 32:1, 52:6, 60:9, 60:22
**Chief** [1] - 66:19
**cholesterol** [8] - 39:13, 40:2, 40:6, 40:8, 40:19, 41:22, 48:17, 71:18
**choose** [1] - 65:20
**chose** [1] - 46:25
**cider** [10] - 17:4, 25:14, 38:1, 39:9, 42:13, 49:25, 51:6, 60:1, 61:25
**Circuit** [9] - 16:15, 21:25, 22:3, 63:15, 67:4, 67:7, 75:8, 76:9, 76:10
**Circuit's** [1] - 21:24
**circumstances** [2] - 14:17, 69:13
**cite** [4] - 30:8, 35:23, 55:15, 63:10
**cited** [11] - 9:24, 14:14, 25:18, 36:1, 55:19, 55:21, 56:2, 62:13, 75:12, 75:25, 76:4
**cites** [3] - 16:18, 24:17, 62:14
**citing** [1] - 75:1
**civil** [1] - 67:15
**Civil** [4] - 66:7, 66:23, 68:14, 72:1
**claim** [11] - 14:21, 16:17, 17:8, 33:18, 34:7, 35:11, 36:7, 36:23, 38:15, 42:6, 66:9
**claimed** [2] - 20:8, 22:2
**claiming** [1] - 49:24
**claims** [20] - 10:22, 12:15, 17:19, 17:20, 23:11, 27:10, 27:14, 27:17, 27:20, 32:7, 39:12, 48:8, 48:12, 63:22, 64:2, 64:14, 69:4, 71:7, 71:9, 76:22
**clarification** [2] - 77:25, 78:15
**clarify** [5] - 11:13, 13:13, 58:12, 72:17
**class** [17] - 10:22, 16:17, 20:25, 21:3, 21:15, 21:16, 21:25, 38:5, 39:18, 41:1, 41:20, 42:10, 49:3, 51:2, 52:9, 52:10, 55:18
**clear** [3] - 44:7, 49:14, 72:25
**clearly** [6] - 3:12, 17:2, 18:14, 43:15, 63:13, 72:16
**clinical** [1] - 28:19
**clock** [1] - 38:11
**close** [1] - 30:13
**colleague** [1] - 5:4
**collect** [2] - 5:16, 47:5
**collection** [1] - 30:9
**Collins** [3] - 16:14, 21:23, 55:22
**column** [1] - 27:14
**comfort** [2] - 65:11, 65:17
**coming** [1] - 4:16
**command** [1] - 63:23
**commenting** [1] - 18:5
**communicated** [2] - 44:25, 45:4
**communication** [2] - 14:4, 14:7
**communications** [13] - 10:24, 14:6, 14:20, 17:25, 18:8, 33:16, 38:13, 64:3, 71:6, 71:8, 71:11, 73:15, 73:23
**company** [10] - 11:23, 12:11, 32:2, 43:24, 43:25, 44:13, 60:20, 61:12, 65:2, 65:3
**company's** [1] - 61:6
**compare** [2] - 28:25, 37:18
**comparison** [3] - 29:11, 29:12, 52:23
**comparisons** [2] - 53:22, 53:23
**compel** [24] - 5:15, 5:21, 6:8, 6:9, 6:25, 7:8, 8:21, 9:4, 12:5, 12:17, 12:23, 37:4, 37:8, 47:11, 47:17, 47:19, 66:23, 70:17, 73:3, 73:14, 73:19, 73:22, 77:5
**competitors** [1] - 49:24
**complains** [2] - 18:12, 24:9
**complaint** [14] - 6:21, 9:23, 33:5, 34:5, 38:23, 39:10, 39:12, 39:16, 39:21, 40:22, 54:5, 71:7, 71:14, 71:16
**completed** [1] - 57:13
**completely** [2] - 35:21, 36:6
**component** [2] - 55:18, 74:1
**components** [1] - 20:12
**computer** [2] - 53:18, 69:15
**computers** [2] - 15:9, 33:10
**conceivable** [1] - 50:24
**concept** [1] - 66:17
**concern** [1] - 26:2
**concerned** [1] - 36:20
**concerning** [1] - 37:25
**concerns** [1] - 76:25
**concluded** [1] - 79:16
**concludes** [1] - 79:7
**conclusory** [1] - 74:12
**conduct** [2] - 16:10, 25:1
**conducted** [4] - 15:18, 17:5, 47:21, 59:24
**confer** [5] - 15:22, 16:13, 36:18, 41:11, 72:6
**conference** [2] - 4:22, 45:15
**conferencing** [1] - 3:15
**conferring** [1] - 9:1
**confers** [3] - 14:12, 15:3, 66:24
**confidentiality** [6] - 7:5, 73:15, 73:16, 76:24, 77:1
**confirmed** [1] - 66:4
**confuse** [1] - 36:9

**connection** [1] - 3:10
**consider** [3] - 15:23, 56:10, 77:2
**considered** [1] - 70:7
**considering** [5] - 19:13, 19:23, 66:1, 66:10, 68:5
**consist** [1] - 71:1
**constituting** [1] - 17:12
**construed** [1] - 68:15
**consultant** [3] - 43:23, 44:12, 44:14
**consultants** [1] - 45:1
**consumer** [14] - 12:7, 18:4, 22:4, 22:13, 27:20, 28:7, 29:9, 33:13, 33:14, 36:9, 49:19, 51:5, 51:14, 72:14
**consumers** [2] - 18:2, 18:6
**contacted** [1] - 51:1
**contain** [1] - 17:7
**contained** [1] - 21:4
**containing** [1] - 78:20
**contains** [1] - 70:14
**contemplates** [1] - 74:10
**contends** [1] - 23:9
**content** [2] - 25:24, 73:23
**contention** [2] - 14:19, 21:11
**context** [1] - 69:6
**contexts** [1] - 62:15
**continually** [1] - 23:19
**continue** [2] - 16:2, 61:19
**contrary** [1] - 55:22
**control** [2] - 67:3, 76:12
**controls** [2] - 7:17, 71:14
**controversy** [2] - 66:12, 68:6
**convenient** [1] - 68:3
**conversation** [1] - 52:6
**conversations** [1] - 45:20
**cooperation** [1] - 68:23
**copied** [1] - 78:13
**copy** [1] - 8:14
**Cornelius** [2] - 63:1, 75:16
**corporate** [25] - 6:1, 6:15, 52:4, 58:9, 58:10, 58:20, 58:21, 59:12, 59:19, 60:8, 60:12, 60:17, 60:19, 60:21, 61:8, 61:9, 61:13, 61:22, 62:2, 64:10, 65:3, 65:7, 75:20, 76:3, 76:17
**Corporation** [1] - 67:23
**corporation** [2] - 61:18, 63:3
**correct** [16] - 4:7, 12:24, 13:3, 15:11, 17:9, 18:21, 20:20, 25:23, 34:21, 38:16, 38:17, 42:24, 45:1, 47:25, 48:10, 59:17
**correctly** [1] - 71:16
**cost** [3] - 49:6, 70:2, 70:7
**cost-effective** [2] - 70:2, 70:7
**Costa** [2] - 63:10, 76:5
**costly** [3] - 19:17, 19:18, 69:17
**costs** [1] - 77:8
**counsel** [15] - 4:5, 5:1, 15:4, 29:20, 33:13, 35:22, 37:20, 37:21, 54:14, 55:9, 59:18, 66:4, 66:5, 66:24
**counsel's** [1] - 56:3
**count** [4] - 19:16, 19:17, 26:8, 57:6
**counter** [1] - 23:2
**counter-propose** [1] - 23:2
**counterproposal** [2] - 23:18, 56:12
**counts** [8] - 19:22, 26:5, 56:18, 56:20, 57:12, 57:16
**couple** [2] - 22:20, 54:6
**course** [4] - 12:9, 14:11, 61:17, 69:8
**court** [6] - 3:20, 6:22, 8:16, 66:25, 75:5, 77:4
**Court** [18] - 10:20, 14:16, 16:14, 20:22, 21:13, 23:6, 23:15, 56:24, 62:11, 62:21, 67:2, 68:1, 68:18, 69:19, 72:4, 73:10, 74:5, 78:25
**COURT** [91] - 1:1, 3:1, 5:6, 5:11, 9:12, 9:16, 10:7, 11:5, 12:2, 12:16, 12:20, 12:23, 12:25, 13:12, 14:5, 14:23, 14:25, 15:3, 17:1, 18:11, 18:17, 18:25, 19:3, 19:5, 20:3, 20:18, 22:16, 24:3, 24:22, 25:12, 25:22, 26:7, 27:12, 28:14, 28:21, 28:24, 30:25, 31:11, 33:7, 33:22, 34:9, 34:16, 35:4, 35:6, 38:10, 38:21, 39:7, 40:7, 40:9, 42:16, 42:18, 43:3, 43:6, 43:18, 44:19, 44:21, 45:5, 47:14, 48:9, 50:3, 51:8, 51:10, 51:25, 52:12, 52:14, 52:20, 54:22, 54:24, 55:7, 57:24, 59:4, 59:9, 59:11, 62:5, 62:20, 62:22, 63:17, 64:20, 64:22, 64:25, 65:9, 65:25, 77:14, 77:23, 78:7, 78:10, 78:16, 78:20, 79:7, 79:11, 79:13
**Court's** [4] - 15:22, 47:1, 62:10, 62:14
**courts** [2] - 17:14, 75:9
**Courts** [1] - 67:9
**covered** [2] - 60:6, 65:6
**craft** [3] - 25:8, 71:23, 72:4
**crash** [1] - 22:10
**crazy** [1] - 65:12
**create** [1] - 65:13
**created** [1] - 69:10
**creation** [1] - 60:3
**criteria** [1] - 70:2
**critical** [1] - 69:23
**Crociere** [2] - 63:11, 76:5
**CRR** [2] - 2:1, 79:24
**crux** [1] - 16:23
**cumulative** [1] - 68:2
**current** [2] - 6:25, 29:16
**custodian** [4] - 10:15, 11:1, 15:24, 16:1
**custodian's** [1] - 26:19
**custodians** [22] - 5:20, 6:8, 7:1, 10:11, 12:1, 12:3, 22:23, 22:24, 30:20, 41:12, 42:3, 42:21, 42:23, 45:7, 57:13, 57:15, 70:17, 70:21, 70:24, 77:18, 78:11
**custodians'** [2] - 26:19, 69:6

## D

**damages** [1] - 22:7
**data** [6] - 18:6, 19:17, 26:11, 53:9, 69:7, 69:14
**databases** [2] - 26:12, 30:17
**date** [1] - 32:4
**DATE** [1] - 79:24
**days** [5] - 8:24, 32:15, 72:7, 74:2
**deadline** [4] - 7:18, 7:20, 72:20, 73:1
**deadlines** [2] - 6:19, 7:16
**deal** [4] - 37:7, 41:22, 42:5, 48:3
**dealing** [8] - 6:4, 25:16, 36:24, 44:9, 58:20, 70:20, 72:12, 73:3
**deals** [1] - 5:22
**deceive** [1] - 17:24
**deceived** [1] - 22:9
**December** [4] - 6:6, 7:9, 7:12, 23:8
**deception** [1] - 17:22
**deceptive** [3] - 17:25, 18:10, 22:13
**decide** [1] - 22:12
**decision** [2] - 61:17, 75:18
**decision-maker** [1] - 61:17
**decisions** [1] - 64:6
**defect** [1] - 21:4
**DEFENDANT** [1] - 1:20
**defendant** [1] - 1:8
**Defendant** [37] - 5:10, 5:22, 6:23, 8:3, 8:25, 11:9, 18:12, 18:18, 19:16, 19:19, 20:1, 22:19, 22:21, 22:22, 23:2, 23:3, 23:4, 23:6, 23:7, 23:8, 24:1, 24:9, 24:12, 24:15, 24:17, 25:1, 25:14, 27:14, 27:19, 27:20, 27:23, 30:1, 71:1, 72:15, 72:17, 72:18, 73:14
**Defendant's** [15] - 5:25, 7:11, 11:12, 11:18, 15:11, 19:25, 20:5, 20:7, 27:25, 49:15, 58:2, 62:19, 71:24, 73:6, 74:3
**defendants** [1] - 36:22
**Defendants** [4] - 5:7, 5:15, 5:18, 17:18
**defense** [9] - 8:2, 13:14, 31:7, 31:10, 55:3, 66:5, 66:10, 77:14, 79:11
**defenses** [4] - 6:23, 63:22, 69:4, 76:22
**deficiency** [1] - 14:12
**defined** [1] - 45:11
**definition** [1] - 50:20
**delay** [1] - 8:24
**deliberated** [1] - 79:3
**deliver** [1] - 25:25
**demand** [1] - 28:7
**demonstrate** [1] - 67:21
**demonstration** [1] - 74:11
**denied** [5] - 8:12, 16:15, 63:9, 76:2, 76:23
**denies** [1] - 10:25
**deny** [2] - 70:23, 73:19
**department** [1] - 11:25
**deponent** [1] - 74:24
**deposition** [21] - 6:2, 20:9, 21:17, 33:4, 38:19, 39:9, 39:17, 39:20, 59:22, 60:22, 61:16, 62:25, 71:12, 74:14, 74:15, 75:6, 75:10, 75:15, 75:21, 76:3
**describe** [1] - 74:16
**design** [4] - 21:4, 25:24, 29:16, 73:23
**designate** [1] - 74:18
**designation** [2] - 58:10, 63:3
**designee** [4] - 74:22, 74:23, 74:24
**despite** [3] - 17:16, 17:19, 76:8

**detail** [1] - 14:15
**determination** [2] - 68:14, 68:17
**determine** [3] - 9:3, 43:4, 76:13
**develop** [2] - 70:10, 72:7
**development** [7] - 59:14, 59:23, 60:24, 61:24, 63:24, 64:6, 76:19
**dialed** [1] - 4:14
**difference** [1] - 52:2
**different** [13] - 17:6, 20:12, 24:21, 34:2, 37:15, 40:21, 41:23, 50:12, 54:17, 63:13, 75:7
**difficult** [2] - 30:21, 58:13
**difficulties** [1] - 31:18
**difficulty** [1] - 35:1
**digestive** [1] - 22:2
**digital** [1] - 65:24
**directed** [2] - 57:16, 74:15
**directly** [5] - 21:13, 35:15, 38:4, 62:17, 78:17
**directors** [1] - 61:18
**disagree** [2] - 4:6, 8:20
**disallowed** [1] - 76:15
**disappears** [1] - 4:19
**disclose** [2] - 49:23, 65:3
**disclosed** [1] - 12:25
**disclosure** [1] - 67:14
**disclosures** [7] - 11:12, 11:18, 42:24, 43:2, 43:8, 43:13, 71:2
**disconnected** [3] - 4:13, 4:15, 4:17
**discoverable** [1] - 43:20
**discovered** [1] - 11:19
**discovery** [57] - 3:5, 5:13, 7:18, 10:16, 10:20, 16:19, 20:8, 25:16, 31:19, 32:10, 32:14, 32:15, 32:22, 33:3, 33:20, 33:23, 36:25, 37:7, 37:8, 37:9, 39:16, 40:10, 40:11, 40:12, 42:8, 44:6, 45:15, 47:19, 48:22, 50:20, 55:11, 63:22, 66:8, 66:14, 66:15, 66:16, 67:3, 67:6, 67:10, 67:13, 67:20, 68:1, 68:5, 68:8, 68:13, 68:21, 68:24, 69:3, 69:21, 70:3, 71:15, 72:20, 72:25, 76:12
**DISCOVERY** [1] - 1:10
**discovery-related** [2] - 3:5, 5:13
**discrete** [1] - 58:4
**discretion** [2] - 9:3, 76:12
**discuss** [2] - 15:4, 62:16
**discusses** [1] - 18:1
**discussing** [5] - 12:13, 18:8, 28:12, 28:18, 73:23
**discussion** [4] - 17:3, 27:25, 28:3, 46:12
**discussions** [3] - 13:9, 21:23, 23:14
**dispositive** [1] - 7:20
**disproportionality** [1] - 26:20
**disproportionate** [2] - 26:25, 69:13
**dispute** [2] - 9:2, 10:20
**disputed** [1] - 67:15
**disputes** [4] - 6:7, 10:13, 56:14, 66:25
**distinction** [1] - 54:4
**distinctions** [1] - 54:12
**distinguished** [1] - 74:11
**District** [13] - 3:3, 54:15, 63:5, 66:18, 67:12, 67:18, 67:23, 68:9, 75:2, 75:17, 75:23, 76:5, 76:7
**district** [8] - 45:12, 49:10, 63:7, 63:13, 75:7, 75:14, 76:2, 76:8
**DISTRICT** [2] - 1:1, 1:1
**districts** [1] - 75:6
**DIVISION** [1] - 1:2
**docket** [1] - 20:23
**document** [15] - 12:6, 27:4, 27:9, 31:24, 36:14, 36:20, 37:23, 44:14, 47:11, 50:14, 51:18, 51:20, 51:21, 53:3, 56:16
**documents** [78] - 5:16, 5:22, 10:24, 11:9, 11:14, 13:6, 13:7, 13:14, 13:16, 13:19, 13:20, 13:24, 14:17, 14:19, 15:10, 15:15, 18:8, 18:14, 19:7, 19:10, 19:22, 20:2, 23:14, 24:20, 25:2, 25:3, 26:14, 27:6, 27:16, 29:3, 30:2, 30:10, 30:13, 30:22, 31:22, 32:3, 32:4, 32:5, 32:6, 32:23, 37:10, 37:24, 38:3, 39:3, 41:16, 42:2, 44:11, 47:21, 47:22, 48:2, 49:18, 50:6, 50:8, 50:21, 51:4, 51:13, 52:24, 53:2, 53:4, 53:6, 53:15, 56:19, 56:22, 64:3, 64:17, 71:13, 71:20, 72:11, 72:16, 72:19, 72:23, 73:11, 73:12, 73:25, 74:25, 77:20
**dollar** [1] - 52:25
**dollars** [1] - 36:24
**done** [11] - 30:7, 35:2, 47:13, 50:16, 50:18, 50:19, 57:7, 58:15, 64:23, 64:24, 73:1
**down** [10] - 3:17, 3:21, 4:11, 22:21, 25:7, 45:16, 57:4, 71:3, 72:4
**dozen** [1] - 12:12
**Dr** [6] - 43:7, 43:11, 43:22, 44:1, 45:3, 77:25
**drafted** [1] - 49:8
**dragging** [1] - 56:13
**Drive** [2] - 1:18, 1:21
**dropped** [1] - 4:19
**due** [2] - 74:1, 74:2
**duplicative** [4] - 25:6, 29:11, 68:2, 72:3
**DURAN** [1] - 1:4
**Duran** [2] - 3:1, 5:3
**during** [15] - 4:3, 4:13, 9:2, 27:20, 35:9, 38:5, 39:2, 41:19, 49:3, 49:17, 49:21, 51:2, 52:9, 52:10, 75:13
**duty** [1] - 74:21
**Dynamic** [1] - 67:18

## E

**e-discovery** [2] - 36:25
**early** [3] - 21:19, 33:17, 45:14
**East** [1] - 1:22
**easy** [1] - 52:21
**ECF** [29] - 5:17, 5:18, 6:2, 6:9, 6:10, 6:15, 6:22, 6:24, 7:2, 7:5, 7:7, 7:8, 7:10, 7:12, 7:13, 7:15, 7:17, 8:18, 8:21, 9:4, 39:15, 68:11, 70:18, 70:19, 70:20, 73:3, 73:17, 76:1, 76:25
**educating** [1] - 9:25
**Edwards** [1] - 79:23
**EDWARDS** [2] - 2:1, 79:24
**EEOC** [1] - 30:8
**effective** [3] - 21:7, 70:2, 70:7
**efficacy** [1] - 17:4
**efficient** [1] - 76:11
**efficiently** [1] - 10:14
**effort** [1] - 78:23
**eight** [5] - 37:15, 46:18, 70:25, 71:4
**either** [2] - 13:6, 78:17
**electronic** [4] - 19:6, 25:2, 33:2, 69:9
**electronically** [5] - 25:2, 33:9, 33:12, 69:21, 70:5
**element** [2] - 34:11, 39:23
**Eleventh** [10] - 16:14, 21:24, 21:25, 22:3, 63:15, 67:4, 67:7, 75:8, 76:9, 76:10
**eleventh** [1] - 56:9
**email** [24] - 14:6, 14:7, 15:19, 24:16, 26:11, 26:19, 28:12, 30:16, 33:16, 38:25, 39:1, 43:10, 43:21, 43:25, 44:17, 44:22, 44:24, 53:3, 56:9, 70:6, 78:1, 78:6, 78:8
**emails** [14] - 12:9, 14:12, 19:11, 26:23, 33:10, 34:13, 34:18, 43:18, 44:1, 70:8, 72:9, 78:3, 78:11
**embarrassment** [1] - 74:7
**embody** [1] - 67:17
**Embroidme.com** [1] - 68:9
**employ** [1] - 67:9
**employed** [1] - 43:24
**employee** [1] - 52:1
**employees** [3] - 15:5, 71:6, 75:1
**encouraged** [2] - 69:21, 70:1
**end** [12] - 3:16, 7:18, 17:17, 17:21, 21:5, 22:2, 22:9, 32:11, 55:15, 55:18, 66:20
**ends** [1] - 4:9
**energy** [1] - 46:5
**enforce** [1] - 55:8
**enforcement** [1] - 72:14
**ensure** [3] - 68:21, 69:18, 70:13
**entered** [2] - 7:17, 20:23
**entire** [1] - 58:20
**entirely** [1] - 54:5
**entitled** [3] - 60:18, 64:5, 79:21
**entitlement** [1] - 59:2
**entity** [2] - 59:13, 76:18
**equivocal** [1] - 52:15
**ESI** [24] - 5:20, 15:7, 18:12, 23:24, 26:11, 43:4, 47:19, 48:21, 53:17, 68:12, 69:2, 69:3, 69:6, 69:11, 69:12, 70:8, 70:12, 70:14, 72:9, 72:17, 74:1, 74:2, 78:5
**especially** [4] - 15:21, 19:23, 21:18, 21:20
**ESQ** [4] - 1:14, 1:17, 1:20, 1:23
**essentially** [1] - 59:7
**et** [2] - 1:4, 4:7
**evaluate** [1] - 20:25
**evaluated** [1] - 27:18
**evidence** [1] - 35:10
**exact** [1] - 46:15
**exactly** [3] - 36:3, 55:19, 77:23
**examination** [1] - 74:17
**examining** [1] -

69:24
**example** [24] - 12:4, 14:5, 14:15, 17:3, 17:5, 17:15, 17:25, 18:4, 19:10, 25:13, 25:14, 25:20, 25:24, 26:13, 28:1, 34:14, 37:20, 44:8, 47:3, 48:23, 52:24, 69:14, 72:12
**examples** [1] - 15:14
**excerpt** [1] - 17:15
**exclusively** [2] - 13:25, 27:11
**excusable** [1] - 8:24
**excuse** [1] - 12:22
**exemplary** [2] - 13:4
**Exhibit** [2] - 12:5, 13:4
**exist** [6] - 30:2, 33:14, 51:23, 72:11, 72:16, 72:19
**existed** [1] - 44:15
**expand** [1] - 36:16
**expect** [1] - 78:10
**expected** [1] - 19:19
**expense** [3] - 66:15, 68:4, 74:7
**expenses** [2] - 77:3, 77:9
**expensive** [1] - 68:4
**expert** [4] - 27:18, 27:19, 34:22, 43:16
**experts** [1] - 34:25
**expires** [1] - 72:21
**explain** [2] - 14:13, 26:8
**explained** [2] - 35:9, 45:8
**explicitly** [2] - 17:11, 22:5
**expressed** [1] - 26:15
**expressly** [3] - 16:15, 55:23, 55:25
**extent** [7] - 13:24, 14:15, 57:3, 57:20, 73:15, 74:24, 76:24
**external** [1] - 13:20
**extremely** [1] - 58:18

## F

**face** [1] - 73:24
**facially** [2] - 62:25, 75:16
**facilitate** [1] - 71:23
**fact** [16] - 4:21, 15:20, 17:18, 31:23, 34:24, 35:21, 35:23, 35:25, 39:25, 43:16, 45:9, 45:21, 47:21, 62:13, 71:25, 74:11
**facts** [2] - 67:17, 76:10
**fair** [1] - 67:17
**fairly** [1] - 64:9
**faith** [1] - 66:24
**false** [1] - 22:6
**falsity** [1] - 17:20
**families** [1] - 42:1
**far** [2] - 13:19, 19:11
**Farm** [1] - 75:2
**Farnsworth** [1] - 67:7
**fat** [11] - 20:10, 39:6, 41:6, 41:14, 41:20, 41:21, 42:14, 48:10, 48:12, 71:12
**favor** [2] - 26:7, 67:6
**FCA** [1] - 20:23
**FDUTPA** [27] - 10:22, 14:20, 16:13, 16:17, 16:24, 17:8, 17:11, 17:13, 22:7, 22:14, 33:3, 33:18, 34:7, 35:11, 35:20, 35:23, 35:25, 36:3, 36:6, 36:7, 38:15, 48:15, 55:17, 55:20, 55:23, 57:18, 64:2
**Federal** [6] - 66:7, 66:23, 67:2, 67:13, 68:14, 71:25
**federal** [2] - 17:11
**fees** [3] - 77:2, 77:4, 77:8
**feet** [1] - 56:13
**feet-dragging** [1] - 56:13
**few** [4] - 3:9, 47:7, 57:10, 65:14
**figure** [3] - 47:1, 47:2, 51:18
**file** [2] - 37:8, 66:22
**filed** [17] - 5:16, 5:18, 6:2, 6:6, 6:21, 6:23, 7:1, 7:4, 7:9, 7:12, 8:21, 8:23, 12:6, 13:13, 32:14, 38:8, 45:21
**files** [1] - 70:6
**finally** [1] - 4:13
**financial** [1] - 53:6
**finer** [1] - 38:18
**finish** [2] - 9:20, 14:25
**Fire** [1] - 75:2
**first** [35] - 3:11, 4:18, 5:15, 8:5, 11:17, 16:4, 16:12, 20:17, 20:18, 20:21, 23:15, 25:12, 25:13, 28:8, 31:17, 36:17, 38:12, 42:23, 43:1, 43:7, 45:22, 46:10, 53:24, 57:8, 58:17, 62:9, 66:7, 68:11, 69:22, 70:10, 70:17, 70:20, 70:24, 73:4
**Fitzpatrick** [4] - 16:15, 21:24, 21:25, 55:22
**five** [7] - 9:15, 37:15, 55:4, 55:6, 55:7, 62:6, 62:7
**Flagler** [2] - 1:18, 1:21
**FLORIDA** [1] - 1:1
**Florida** [14] - 1:4, 1:19, 1:22, 1:25, 63:6, 66:19, 67:12, 67:19, 67:24, 68:9, 75:17, 75:23, 76:5, 76:7
**follow** [2] - 3:21, 8:11
**following** [2] - 66:6, 76:17
**follows** [1] - 70:23
**FOOD** [1] - 1:7
**food** [2] - 54:8, 54:19
**Food** [1] - 3:2
**FOR** [2] - 1:14, 1:20
**foregoing** [1] - 79:19
**forget** [2] - 36:3, 39:11
**forgot** [1] - 36:1
**form** [1] - 62:1
**formally** [1] - 4:25
**FORT** [1] - 1:2
**Fort** [1] - 1:4
**forth** [4] - 8:22, 13:2, 14:13, 36:13
**fortune** [1] - 36:21
**forward** [1] - 46:14
**foundation** [1] - 57:5
**founded** [1] - 56:4
**four** [5] - 14:11, 27:15, 38:6, 50:19
**four-year** [2] - 38:6, 50:19
**framed** [2] - 66:6, 67:25
**frankly** [5] - 35:3, 35:20, 37:3, 56:24, 58:3
**free** [3] - 26:18, 79:7, 79:14
**FROM** [1] - 1:11
**front** [1] - 11:25
**FTC** [4] - 17:12, 35:22, 36:2, 55:22
**full** [2] - 67:6, 67:16
**fundamentally** [1] - 10:20
**future** [1] - 3:24

## G

**Gamble** [1] - 67:7
**garbled** [1] - 3:16
**gather** [1] - 32:3
**gathering** [1] - 49:6
**General** [2] - 16:15, 21:24
**general** [2] - 10:16, 70:16
**generally** [1] - 69:10
**generate** [1] - 26:12
**generations** [1] - 54:8
**given** [4] - 11:22, 30:19, 53:5
**global** [1] - 73:4
**glucose** [1] - 48:17
**Goli** [2] - 49:24, 50:2
**govern** [2] - 54:10, 56:4
**governance** [1] - 58:21
**government** [9] - 37:25, 38:7, 38:8, 50:16, 50:24, 51:2, 51:14, 52:9, 72:13
**governs** [1] - 74:14
**grabbed** [1] - 38:25
**Graben** [2] - 5:3, 5:5
**GRABEN** [2] - 1:15, 1:18
**grant** [5] - 62:11, 70:22, 73:14, 73:18, 73:21
**granted** [5] - 7:4, 8:12, 62:14, 63:2, 75:19
**grants** [1] - 77:4
**great** [1] - 79:14
**GREENBERG** [2] - 1:21, 1:24
**group** [1] - 52:10
**groups** [2] - 51:6, 51:15
**guess** [4] - 25:10, 47:1, 51:1, 77:22
**guide** [1] - 10:3
**guided** [1] - 15:8
**guy** [1] - 52:7
**guys** [4] - 29:25, 36:18, 46:19, 48:24

## H

**HADYN** [1] - 1:14
**Hadyn** [1] - 5:2
**halfway** [1] - 45:24
**hand** [6] - 25:3, 25:4, 52:5, 56:15, 75:9, 75:25
**handle** [3] - 6:14, 32:21, 64:10
**hang** [1] - 65:19
**happy** [4] - 14:15, 19:21, 19:22, 57:21
**Happy** [1] - 79:4
**harassing** [1] - 64:11
**hard** [3] - 19:12, 26:22, 29:24
**harm** [1] - 64:11
**harp** [1] - 16:5
**Hayden** [1] - 9:11
**health** [8] - 12:14, 35:12, 35:13, 54:20, 59:25, 71:14, 71:17
**health-related** [1] - 54:20
**healthy** [1] - 41:21
**hear** [5] - 4:20, 7:25, 8:3, 9:8, 58:5
**heard** [2] - 31:12, 57:9
**hearing** [10] - 3:7, 4:14, 4:16, 8:14, 8:17, 35:10, 55:11, 72:21, 75:13, 79:7
**HEARING** [1] - 1:10
**hearings** [1] - 4:3
**help** [1] - 3:17
**helpful** [2] - 10:11, 14:16
**helping** [4] - 42:13, 71:17, 71:18
**hereby** [1] - 79:19
**herself** [2] - 16:7, 40:14
**hesitant** [1] - 51:18
**high** [1] - 26:25
**highlight** [1] - 57:1
**HILGERS** [2] - 1:15, 1:18
**Hilgers** [2] - 5:3, 5:5
**hired** [2] - 14:2, 44:25
**hit** [19] - 19:16, 19:17, 19:22, 24:20, 26:5, 26:8, 26:13, 26:14, 26:23, 27:6, 41:25, 56:18, 56:20,

57:6, 57:12, 57:16, 77:20
**hits** [6] - 27:4, 41:15, 47:7, 47:8, 49:11, 57:11
**hold** [1] - 22:16
**holiday** [1] - 47:5
**Honor** [37] - 5:2, 5:8, 9:11, 9:14, 10:6, 10:8, 11:13, 12:4, 13:23, 17:9, 18:15, 19:8, 20:11, 22:11, 23:1, 25:11, 25:21, 26:21, 27:23, 30:5, 31:9, 34:1, 34:21, 45:2, 55:5, 55:9, 56:23, 59:17, 62:8, 63:16, 64:24, 77:13, 77:15, 78:14, 79:6, 79:10, 79:12
**HONORABLE** [1] - 1:11
**hopes** [1] - 32:10
**host** [2] - 54:15, 54:20
**hour** [1] - 56:9
**hundreds** [2] - 27:16, 36:24

## I

**identical** [3] - 21:5, 21:7, 21:14
**identified** [2] - 57:1, 71:2
**identify** [2] - 3:12, 56:22
**identity** [1] - 58:22
**images** [1] - 14:1
**immediate** [1] - 46:10
**immediately** [1] - 32:19
**immune** [2] - 39:13, 71:19
**impasse** [2] - 10:19, 10:23
**implement** [1] - 28:13
**importance** [4] - 66:11, 66:13, 68:7, 68:8
**important** [4] - 3:21, 24:4, 42:7, 78:24
**imposes** [1] - 68:20
**inaction** [1] - 56:13
**inappropriate** [5] - 18:7, 24:15, 24:18, 56:12, 62:10
**inappropriately** [2] - 19:13, 23:10
**include** [3] - 71:13, 73:22, 73:25
**included** [3] - 39:13, 39:14, 60:14
**includes** [3] - 69:14, 70:9, 75:11
**including** [7] - 58:22, 59:8, 59:13, 59:20, 71:17, 76:18, 77:4
**inconsistencies** [1] - 19:25
**incorporates** [2] - 17:11, 55:23
**incorrect** [1] - 56:4
**increased** [1] - 66:16
**indeed** [1] - 71:9
**indefensible** [1] - 27:11
**indicate** [2] - 12:14, 27:5
**indicates** [1] - 74:8
**indicating** [1] - 6:7
**indiscernible** [13] - 11:24, 18:22, 19:24, 27:5, 38:22, 40:5, 42:3, 48:1, 49:17, 56:11, 58:22, 63:24, 74:10
**indiscernible]** [4] - 28:23, 29:24, 40:4, 42:1
**individual** [2] - 10:15, 36:23
**individual's** [1] - 11:24
**individually** [1] - 15:9
**individuals** [5] - 11:8, 11:17, 11:21, 44:24, 71:1
**inexpensive** [1] - 68:16
**influencers** [2] - 14:2, 41:23
**information** [19] - 12:3, 13:2, 17:2, 30:20, 33:9, 33:12, 41:7, 42:5, 53:7, 64:16, 66:13, 67:14, 69:3, 69:22, 69:23, 70:5, 70:13, 74:19, 76:25
**informative** [1] - 17:13
**ingredient** [2] - 21:7, 21:14
**ingredients** [2] - 54:1, 54:2
**initial** [11] - 11:12, 11:18, 24:24, 24:25, 32:18, 41:15, 42:24, 43:1, 43:8, 43:13, 71:2
**injury** [4] - 22:10, 22:11, 39:25
**inquiries** [3] - 30:23, 37:24, 51:5
**inquiry** [1] - 49:19
**insight** [1] - 11:23
**instance** [1] - 77:6
**instead** [2] - 22:4, 46:15
**Insurance** [1] - 75:2
**intend** [1] - 15:25
**intended** [1] - 78:16
**intent** [4] - 17:24, 36:6, 38:16, 46:23
**intentions** [2] - 56:2, 57:17
**interest** [2] - 25:7, 76:11
**interference** [1] - 4:2
**internal** [23] - 10:24, 11:3, 14:3, 14:17, 14:19, 18:8, 23:13, 23:14, 27:9, 28:12, 33:17, 34:13, 34:18, 37:21, 38:13, 47:21, 55:14, 64:3, 64:17, 71:6, 71:8, 73:15, 73:22
**interrupt** [4] - 4:8, 9:19, 14:25, 62:23
**interruptions** [1] - 4:5
**intervention** [1] - 66:25
**interviewed** [1] - 38:8
**investigated** [5] - 51:17, 51:19, 51:20, 52:8, 52:10
**investigation** [19] - 30:3, 30:23, 36:2, 37:24, 49:1, 49:2, 49:12, 49:13, 49:16, 49:19, 49:22, 50:18, 50:19, 50:21, 50:25, 51:5, 51:14, 51:23
**investigations** [11] - 37:21, 37:22, 38:7, 48:24, 48:25, 50:16, 50:17, 52:19, 72:13, 72:14
**investor** [1] - 58:22
**investors** [1] - 59:2
**invited** [1] - 23:17
**involved** [6] - 38:5, 38:6, 59:13, 68:22, 74:23, 76:18
**irrelevant** [8] - 11:3, 14:20, 27:10, 35:21, 36:6, 38:16, 47:23, 55:15
**issue** [29] - 8:9, 8:18, 16:24, 23:13, 23:16, 35:3, 37:1, 44:3, 44:5, 46:3, 53:9, 58:8, 59:1, 61:8, 61:9, 63:15, 63:19, 65:4, 65:5, 68:13, 71:21, 73:16, 74:5, 75:4, 75:5, 75:8, 76:9, 77:2, 77:21
**issued** [1] - 27:19
**issues** [11] - 42:8, 54:13, 54:21, 57:22, 66:11, 66:14, 67:15, 68:7, 68:8, 68:22, 78:24
**IT** [1] - 52:7
**it'd** [1] - 26:24

## J

**January** [8] - 1:5, 7:18, 67:24, 72:7, 72:21, 72:24, 74:1, 75:3
**Jared** [3] - 11:9, 11:14, 11:18
**JBSHBM** [1] - 75:23
**JCW** [1] - 68:8
**Jeffrey** [1] - 77:25
**joined** [1] - 5:4
**joint** [8] - 6:6, 6:11, 7:4, 7:14, 10:2, 10:9, 10:12, 23:22
**Jones** [3] - 44:12, 45:3, 77:25
**Josendis** [1] - 67:3
**jot** [1] - 4:11
**JSR** [5] - 6:11, 22:17, 24:6, 55:14, 70:17
**JUDGE** [1] - 1:12
**judge** [5] - 62:4, 68:19, 68:24, 77:17, 77:22
**Judge** [34] - 3:3, 5:9, 5:14, 20:22, 31:16, 31:17, 35:20, 36:14, 37:3, 38:17, 39:18, 40:13, 40:17, 41:19, 42:3, 44:5, 45:19, 46:10, 48:15, 50:13, 50:14, 52:3, 53:22, 54:3, 58:7, 58:18, 62:24, 63:11, 73:2, 75:13, 75:14, 76:6, 76:7, 79:5
**judges** [4] - 63:7, 63:13, 75:7, 76:1
**judgment** [2] - 40:10, 55:10
**judgment-type** [1] - 55:10
**judiciary** [1] - 66:20
**Julie** [1] - 5:3
**JULIE** [1] - 1:4
**July** [1] - 67:19
**June** [1] - 23:23
**jury** [1] - 22:11
**Justice** [1] - 66:19
**justified** [1] - 77:7

## K

**keep** [1] - 55:5
**keeping** [1] - 67:10
**kept** [1] - 12:8
**key** [4] - 22:23, 35:3, 69:6, 69:23
**keyword** [4] - 70:6, 70:9, 72:8, 72:23
**keywords** [3] - 70:11, 70:14
**kind** [2] - 13:13, 61:3
**Kligler** [2] - 5:5, 45:24
**KLIGLER** [1] - 1:17
**knowledge** [13] - 14:18, 15:17, 17:22, 17:23, 30:13, 35:10, 35:18, 35:21, 35:24, 43:9, 43:15, 49:16, 57:9
**known** [3] - 35:12, 74:20, 74:22
**Kraft** [5] - 14:14, 17:15, 17:17, 36:1, 62:18
**Krantz** [2] - 75:1, 75:11

## L

**labels** [5] - 25:25, 29:16, 40:20, 73:23, 73:24
**lack** [1] - 35:17
**lady** [2] - 61:5, 61:15
**lag** [1] - 3:14
**language** [3] - 30:13, 59:12, 73:10
**last** [14] - 8:7, 21:13, 23:22, 28:24, 34:24,

34:25, 41:10, 45:21, 47:4, 56:11, 58:1, 58:16, 74:3, 77:2
**lastly** [2] - 5:25, 72:20
**LAUDERDALE** [1] - 1:2
**Lauderdale** [1] - 1:4
**law** [7] - 17:11, 21:12, 21:21, 49:14, 57:18, 72:13, 75:4
**lawyer** [1] - 49:7
**lay** [1] - 10:10
**least** [9] - 11:15, 17:10, 19:21, 37:5, 57:5, 60:8, 62:24, 63:14, 70:10
**left** [3] - 4:21, 33:8, 45:6
**legal** [1] - 66:7
**less** [3] - 55:4, 68:3, 68:4
**letters** [1] - 14:12
**level** [2] - 49:14, 52:1
**levels** [4] - 39:14, 46:5, 48:18, 71:18
**Liability** [1] - 66:18
**liberal** [1] - 67:9
**Life** [2] - 14:14, 17:18
**likely** [7] - 16:5, 36:8, 44:23, 64:9, 66:15, 68:5, 69:8
**limit** [7] - 16:10, 39:8, 68:1, 68:24, 70:24, 73:20, 76:3
**limited** [16] - 11:23, 16:19, 16:21, 20:8, 20:13, 20:15, 22:1, 23:8, 28:11, 35:12, 56:1, 57:16, 61:9, 63:22, 71:11, 75:9
**limiting** [6] - 28:15, 28:16, 28:20, 48:9, 48:11, 60:13
**limits** [2] - 16:16, 28:8
**Lincoln** [2] - 1:15, 1:16
**Linda** [2] - 43:19, 60:9
**line** [2] - 29:15, 65:19
**LinkedIn** [1] - 11:22
**liquid** [22] - 20:9, 20:18, 20:21, 21:8, 23:11, 38:19, 39:9, 40:17, 40:20, 40:21, 40:25, 42:13, 53:24, 54:2, 54:4, 54:7, 54:8, 54:18, 62:1, 71:13
**LISA** [2] - 2:1, 79:24
**list** [6] - 11:8, 24:21, 37:13, 42:4, 70:11
**listed** [5] - 11:12, 11:17, 46:17, 71:14, 78:11
**literally** [1] - 64:22
**litigation** [1] - 49:9
**Litigation** [1] - 66:18
**LIVE** [1] - 1:7
**Live** [1] - 3:1
**live** [1] - 3:20
**ILC** [1] - 1:7
**LLC** [1] - 3:2
**LLCs** [1] - 60:21
**local** [2] - 8:22, 37:5
**locate** [2] - 70:8, 72:8
**logged** [1] - 69:15
**logical** [1] - 61:14
**logically** [1] - 13:1
**look** [5] - 18:20, 31:22, 40:2, 46:22, 49:11
**looked** [4] - 25:18, 33:5, 48:16, 54:25
**looking** [4] - 11:11, 18:12, 27:13, 35:8
**losing** [1] - 20:9
**loss** [8] - 20:19, 23:10, 38:21, 38:24, 42:14, 46:7, 71:12, 71:19
**loss-related** [1] - 23:10
**lost** [1] - 58:19
**Louisiana** [1] - 75:2
**low** [1] - 26:24
**lower** [2] - 52:1, 55:12
**lower-level** [1] - 52:1

## M

**MAGISTRATE** [1] - 1:12
**Magistrate** [1] - 75:14
**main** [3] - 4:14, 10:12, 26:2
**maintained** [1] - 27:8
**maintaining** [1] - 41:21
**major** [1] - 54:12
**majority** [1] - 13:25
**maker** [1] - 61:17
**Mall** [1] - 1:15
**management** [4] - 15:8, 15:19, 68:13, 76:12
**manually** [1] - 70:13
**March** [2] - 7:21, 66:19
**margins** [2] - 29:12
**MARK** [1] - 1:20
**mark** [1] - 5:9
**Mark** [1] - 31:9
**marketing** [21] - 11:25, 16:7, 22:13, 28:6, 29:7, 32:1, 34:16, 39:2, 47:6, 48:3, 48:7, 52:7, 59:14, 59:23, 60:3, 60:5, 60:24, 61:24, 63:24, 64:7, 76:19
**material** [3] - 34:20, 40:18, 60:4
**materially** [1] - 21:5
**matter** [8] - 3:4, 14:10, 22:14, 29:19, 40:19, 65:21, 66:9, 79:21
**mattered** [1] - 48:13
**matters** [5] - 62:3, 74:16, 74:22, 74:23, 74:24
**Maynard** [3] - 62:24, 75:14
**McAliley** [2] - 63:12, 76:7
**mean** [21] - 10:22, 22:24, 23:4, 24:24, 25:7, 26:8, 26:23, 30:14, 30:20, 37:3, 37:21, 40:14, 41:22, 47:10, 49:1, 53:13, 54:17, 59:19, 60:12, 60:17
**means** [2] - 24:12, 60:17
**meanwhile** [1] - 20:5
**measure** [1] - 40:2
**measures** [1] - 3:22
**measuring** [1] - 39:16
**mechanism** [1] - 71:25
**media** [4] - 11:25, 39:1, 41:17, 42:12
**meet** [8] - 14:12, 15:3, 15:22, 16:13, 31:25, 36:18, 41:11, 72:6
**meet-and-confer** [4] - 15:22, 16:13, 36:18, 41:11
**meet-and-confers** [2] - 14:12, 15:3
**member** [3] - 21:15, 43:11, 43:13
**members** [1] - 55:18
**memory** [1] - 71:16
**mentioned** [3] - 7:14, 75:13, 75:19
**merits** [6] - 9:4, 20:25, 36:21, 55:13, 63:20, 76:13
**messages** [1] - 70:6
**met** [2] - 23:17, 69:19
**metabolism** [1] - 46:4
**methods** [1] - 70:1
**Miami** [2] - 1:25, 8:16
**Middle** [1] - 75:2
**might** [7] - 3:13, 12:15, 13:22, 16:23, 19:1, 26:21, 78:5
**Mills** [2] - 16:15, 21:24
**mind** [2] - 35:17, 35:21
**minute** [11] - 11:5, 22:19, 34:9, 34:12, 38:11, 45:5, 50:3, 57:25, 62:23, 64:22, 65:1
**minutes** [20] - 8:6, 8:8, 9:9, 9:15, 9:17, 31:5, 31:14, 55:4, 55:6, 55:7, 58:2, 58:3, 62:6, 62:7, 65:14, 65:16, 65:18, 65:22
**misconstrues** [1] - 10:21
**mislead** [1] - 36:9
**misrepresentations** [1] - 49:25
**misspoke** [1] - 7:3
**misstated** [1] - 47:24
**misunderstanding** [2] - 16:3, 19:1
**misunderstands** [1] - 10:21
**MO** [1] - 56:13
**models** [2] - 21:3, 21:4
**modify** [1] - 72:25
**monitor** [1] - 4:18
**month** [2] - 6:24, 7:18
**months** [1] - 14:11
**moreover** [1] - 67:2
**morning** [1] - 5:8
**most** [7] - 15:21, 16:5, 37:6, 39:3, 61:14, 69:8, 69:23
**mostly** [1] - 58:13
**motion** [71] - 5:15, 5:17, 5:19, 5:21, 5:23, 5:25, 6:8, 6:9, 6:14, 6:25, 7:4, 7:5, 7:7, 7:11, 7:20, 8:1, 8:3, 8:7, 8:18, 8:19, 8:20, 8:23, 9:4, 12:5, 12:17, 12:23, 13:21, 15:6, 30:9, 31:18, 32:13, 35:9, 37:3, 37:8, 40:11, 40:13, 47:11, 47:15, 47:17, 47:18, 47:19, 58:1, 58:2, 58:4, 58:5, 62:10, 62:19, 63:2, 66:22, 68:11, 70:22, 71:5, 73:2, 73:3, 73:14, 73:19, 73:22, 74:3, 74:4, 74:13, 75:20, 76:13, 76:14, 76:23, 77:4
**MOTIONS** [1] - 1:10
**motions** [16] - 3:5, 3:9, 5:13, 6:4, 6:12, 6:13, 8:1, 8:5, 8:7, 9:8, 9:17, 63:9, 64:3, 70:17, 76:2, 77:6
**move** [2] - 45:5, 46:14
**MR** [90] - 5:2, 5:8, 9:11, 9:14, 10:6, 10:8, 11:13, 12:4, 12:18, 12:22, 12:24, 13:3, 13:23, 14:7, 14:24, 15:2, 15:13, 17:9, 18:15, 18:20, 19:1, 19:4, 19:8, 20:11, 20:20, 23:1, 24:12, 25:11, 25:21, 25:23, 26:9, 27:23, 28:16, 28:22, 30:5, 31:9, 31:16, 33:11, 33:25, 34:15, 34:17, 35:5, 35:20, 38:17, 38:22, 39:18, 40:8, 40:12, 42:17, 43:1, 43:5, 43:7, 43:21, 44:20, 45:2, 45:19, 48:1, 48:11, 50:13, 51:9, 51:16, 52:3, 52:13, 52:17, 52:21, 54:23, 55:5, 55:9, 58:7, 59:6, 59:10, 59:17, 62:8, 62:21, 63:16, 63:18, 64:21, 64:24, 65:2, 77:13, 77:15, 77:24, 78:8, 78:14, 78:19, 79:5, 79:6, 79:10, 79:12, 79:15
**multiple** [3] - 12:12, 45:19, 71:17

**MUSCAT** [1] - 71:3
**Muscat** [4] - 11:9, 11:15, 11:18, 71:2
**must** [10] - 13:1, 13:9, 22:7, 56:19, 69:3, 70:12, 72:24, 74:16, 74:18, 74:24
**mute** [1] - 4:1
**mutually** [2] - 70:12, 72:8

## N

**name** [2] - 3:12, 4:19
**named** [5] - 11:10, 11:19, 21:2, 39:24, 42:11
**names** [1] - 4:18
**narrow** [14] - 22:3, 22:22, 23:10, 26:3, 26:16, 27:7, 36:18, 42:7, 46:13, 57:22, 58:8, 58:11, 58:12, 63:25
**narrowed** [4] - 23:3, 59:12, 76:16, 76:21
**narrower** [4] - 23:5, 33:4, 59:15, 63:25
**narrowly** [2] - 19:13, 27:1
**nature** [1] - 18:10
**NCL** [2] - 63:11, 76:6
**Nebraska** [1] - 1:16
**necessary** [5] - 17:23, 30:7, 57:6, 69:25, 73:1
**necessity** [1] - 74:10
**need** [15] - 3:23, 8:14, 9:20, 22:5, 26:4, 27:7, 27:8, 32:24, 33:1, 33:19, 46:2, 58:3, 58:7, 65:11, 72:17
**needed** [1] - 77:24
**needs** [5] - 30:11, 66:10, 68:5, 68:25, 70:3
**nervous** [1] - 46:4
**net** [2] - 22:25, 25:6
**network** [1] - 69:15
**never** [9] - 15:17, 31:21, 37:3, 40:8, 40:16, 48:22, 50:25, 51:1, 56:18
**New** [1] - 79:4
**new** [4] - 23:19, 34:1, 56:8, 60:3
**next** [4] - 7:7, 55:17, 59:21, 73:3
**night** [2] - 28:25, 34:25
**NO** [1] - 1:2
**nobody's** [1] - 51:20
**noise** [1] - 4:2
**non** [4] - 44:24, 66:9, 73:20, 74:2
**non-Bragg** [2] - 44:24, 73:20
**non-ESI** [1] - 74:2
**non-privileged** [1] - 66:9
**none** [5] - 35:23, 35:25, 40:18, 41:20
**nonetheless** [2] - 32:8, 62:2
**nonpublic** [1] - 13:24
**normal** [1] - 12:8
**normally** [2] - 3:13, 69:20
**Nos** [3] - 29:3, 53:21, 72:12
**note** [2] - 75:6, 76:25
**noted** [1] - 34:21
**notes** [2] - 30:25, 54:25
**nothing** [5] - 25:19, 37:18, 43:11, 49:9, 49:12
**notice** [2] - 58:10, 74:15
**noticed** [2] - 32:20, 62:12
**notices** [2] - 59:22, 74:14
**number** [10] - 4:14, 26:12, 26:22, 26:24, 26:25, 45:4, 50:12, 54:14, 70:24, 77:18
**numbers** [3] - 27:5, 29:15, 39:11
**Nuwer** [2] - 20:23, 55:22

## O

**object** [2] - 58:25, 61:19
**objected** [5] - 16:1, 22:21, 60:15, 65:7, 67:22
**objected-to** [1] - 67:22
**objecting** [1] - 67:21
**objection** [3] - 4:6, 73:9, 76:14
**objections** [3] - 9:5, 73:6, 73:11
**objective** [5] - 16:13, 18:9, 22:8, 22:12, 34:11
**objectively** [1] - 17:24
**objects** [2] - 66:21, 67:20
**obligation** [1] - 68:20
**observes** [1] - 28:7
**obtain** [2] - 22:2, 66:8
**obtained** [1] - 68:2
**obviously** [1] - 78:2
**occasions** [1] - 22:20
**occur** [1] - 50:22
**occurred** [1] - 15:20
**October** [5] - 5:17, 7:1, 7:6, 7:22, 7:23
**OF** [1] - 1:1
**offer** [1] - 56:12
**offered** [1] - 23:5
**offerings** [1] - 23:2
**office** [1] - 8:16
**officer** [5] - 32:1, 52:7, 60:9, 60:22
**officers** [1] - 68:18
**often** [1] - 62:11
**ON** [1] - 1:10
**once** [3] - 36:12, 38:18, 39:19
**one** [57] - 3:16, 4:5, 4:8, 4:9, 4:17, 4:22, 8:15, 8:18, 12:16, 14:7, 20:5, 20:7, 20:12, 22:17, 25:3, 26:22, 28:9, 28:11, 31:17, 32:5, 35:22, 36:1, 36:2, 36:3, 42:3, 42:4, 42:6, 42:22, 43:16, 43:25, 44:8, 45:22, 45:23, 46:20, 46:21, 48:19, 48:23, 48:25, 49:2, 49:8, 49:23, 52:4, 58:16, 58:17, 58:18, 60:10, 61:16, 62:16, 62:24, 64:21, 64:22, 65:1, 75:9, 77:16
**ones** [3] - 18:23, 47:5, 52:23
**onus** [1] - 67:21
**opening** [1] - 30:9
**opinion** [5] - 10:13, 20:23, 21:24, 76:5, 76:7
**opinions** [1] - 21:2
**Opponents** [1] - 27:14
**opposed** [4] - 21:9, 37:4, 40:10, 45:16
**opposing** [3] - 40:10, 66:21, 66:24
**opposite** [1] - 31:14
**orally** [1] - 66:2
**order** [26] - 5:25, 6:7, 6:15, 7:5, 7:11, 7:16, 7:24, 8:4, 8:7, 8:10, 8:12, 15:22, 58:6, 62:12, 63:3, 73:16, 74:4, 74:6, 74:9, 74:13, 75:5, 75:20, 76:2, 76:13, 76:23, 77:1
**ordered** [2] - 57:14, 72:6
**ordering** [1] - 8:15
**orders** [2] - 62:15, 63:9
**ordinary** [1] - 69:7
**organization** [2] - 74:18, 74:20
**organizations** [2] - 49:20, 74:15
**original** [2] - 31:24, 64:1
**otherwise** [3] - 23:7, 67:22, 72:22
**Outlook** [1] - 26:11
**outset** [1] - 62:9
**outstanding** [1] - 33:20
**outweighs** [2] - 66:15, 68:5
**overall** [1] - 67:13
**overbroad** [6] - 57:3, 63:1, 63:4, 72:2, 75:16, 75:22
**overextend** [1] - 29:21
**overlooking** [1] - 63:18
**overly** [3] - 19:20, 75:10
**overrule** [2] - 9:4, 76:14
**own** [7] - 10:17, 12:1, 27:19, 28:2, 28:3, 44:24, 77:9
**ownership** [1] - 58:21

## P

**P.A** [2] - 1:21, 1:24
**page** [3] - 6:19, 14:1, 55:17
**Page** [15] - 12:19, 12:20, 24:6, 27:13, 55:14, 62:19, 67:8, 67:12, 67:19, 67:24, 68:10, 75:18, 75:24, 76:1
**Pages** [5] - 1:8, 12:17, 67:5, 75:3, 75:12
**pages** [1] - 27:16
**Palacio** [1] - 5:9
**PALACIO** [1] - 1:23
**Palm** [2] - 1:19, 1:22
**paperless** [1] - 8:12
**Paradise** [2] - 63:5, 75:23
**paragraph** [3] - 11:2, 39:11, 39:12
**parent** [3] - 58:23, 59:13, 76:18
**part** [6] - 6:18, 8:13, 70:22, 70:23, 73:19
**particular** [4] - 16:8, 29:17, 31:18, 74:11
**particularity** [1] - 74:16
**particularly** [3] - 37:1, 48:22, 64:11
**parties** [17] - 6:6, 8:20, 9:1, 10:9, 10:19, 23:17, 34:21, 66:8, 68:23, 69:20, 70:1, 72:6, 72:22, 77:11, 77:21, 78:24
**parties'** [5] - 66:1, 66:12, 66:13, 68:6, 69:20
**partnerships** [1] - 60:20
**party** [15] - 12:6, 12:13, 13:6, 13:25, 28:3, 33:14, 66:21, 66:22, 67:20, 67:21, 69:7, 74:6, 74:9, 74:15, 77:9
**party's** [3] - 49:15, 66:9, 69:8
**passing** [1] - 54:6
**passwords** [1] - 69:16
**past** [3] - 49:21, 74:25, 75:19
**patient** [1] - 79:2
**pause** [1] - 65:24
**payment** [1] - 77:3
**people** [21] - 11:11, 15:14, 21:8, 32:2, 43:16, 45:4, 47:5, 47:6, 48:3, 48:7, 49:9, 51:17, 52:4, 52:7, 59:8, 60:7, 61:12, 61:14, 69:15, 78:3
**per** [1] - 15:22

**perhaps** [2] - 43:18, 52:1
**period** [16] - 7:23, 8:21, 27:21, 32:16, 38:5, 38:6, 39:2, 41:1, 41:20, 49:3, 49:17, 50:19, 51:2, 52:9, 52:11, 53:5
**persisted** [2] - 17:17, 17:19
**person** [6] - 22:8, 22:12, 39:1, 39:2, 74:6, 74:19
**personal** [3] - 22:10, 65:11, 65:17
**personally** [2] - 74:22, 74:23
**personnel** [1] - 44:25
**Petterson** [16] - 5:2, 9:11, 9:12, 9:22, 11:6, 13:18, 17:1, 26:8, 31:5, 35:9, 45:9, 45:16, 55:2, 62:6, 62:22, 64:23
**PETTERSON** [45] - 1:14, 5:2, 9:11, 9:14, 10:6, 10:8, 11:13, 12:4, 12:18, 12:22, 12:24, 13:3, 13:23, 14:7, 14:24, 15:2, 15:13, 17:9, 18:15, 18:20, 19:1, 19:4, 19:8, 20:11, 20:20, 23:1, 24:12, 25:11, 25:21, 25:23, 26:9, 27:23, 28:16, 28:22, 30:5, 55:5, 55:9, 62:8, 62:21, 63:16, 63:18, 64:24, 77:13, 79:6, 79:10
**phone** [2] - 9:16, 45:22
**phones** [1] - 4:1
**phrases** [1] - 49:9
**picking** [1] - 33:7
**ping** [1] - 4:10
**ping-pong** [1] - 4:10
**place** [4] - 4:25, 19:17, 73:16, 77:1
**Plaintiff** [57] - 5:3, 8:4, 9:9, 10:23, 11:21, 14:11, 16:7, 16:8, 16:20, 17:23, 20:7, 21:15, 22:5, 22:7, 22:14, 23:9, 23:12, 23:23, 25:13, 26:3, 26:15, 27:17, 31:19, 31:24, 33:6, 33:8, 35:8, 39:24, 40:14, 41:4, 42:11, 42:21, 42:24, 48:4, 48:6, 48:8, 53:25, 54:7, 54:16, 55:21, 56:6, 56:16, 58:9, 58:11, 62:9, 63:21, 64:5, 66:5, 70:5, 71:5, 72:24, 76:4, 76:16, 76:21, 77:12, 79:9
**plaintiff's** [2] - 16:16, 36:23
**Plaintiff's** [33] - 5:1, 5:15, 5:21, 6:25, 7:7, 8:1, 9:8, 9:10, 10:22, 16:19, 20:8, 21:12, 23:25, 27:18, 33:4, 35:16, 38:18, 39:17, 39:19, 43:6, 55:2, 56:1, 57:17, 61:15, 62:18, 64:1, 71:7, 71:9, 71:11, 71:23, 72:2, 72:10, 76:14
**Plaintiffs** [5] - 1:5, 21:2, 31:13, 37:2, 76:1
**PLAINTIFFS** [1] - 1:14
**plan** [2] - 7:25, 8:9
**platform** [1] - 3:20
**players** [1] - 69:23
**pleading** [1] - 39:15
**pleadings** [2] - 50:1, 69:5
**PLLC** [2] - 1:15, 1:18
**Plus** [1] - 22:1
**plus** [1] - 71:2
**point** [16] - 4:24, 9:20, 13:3, 14:8, 16:23, 19:23, 20:17, 20:18, 20:19, 20:21, 21:13, 25:22, 38:18, 44:17, 45:3, 62:17
**pointed** [3] - 11:16, 55:9, 56:23
**points** [2] - 10:10, 10:12
**Poliakoff** [1] - 67:11
**policies** [1] - 59:22
**pong** [1] - 4:10
**position** [19] - 10:10, 11:1, 15:12, 15:17, 19:8, 19:9, 19:15, 23:25, 24:21, 25:9, 25:10, 27:11, 31:21, 33:1, 33:16, 47:24, 60:16, 62:14, 62:18
**positions** [1] - 24:5
**possession** [1] - 12:8
**possible** [4] - 44:23, 57:13, 60:10, 67:7
**possibly** [1] - 53:8
**posts** [1] - 41:17
**Powers** [1] - 67:23
**practical** [1] - 77:17
**practice** [2] - 6:17, 45:12
**practices** [1] - 59:23
**precedent** [6] - 17:12, 55:24, 62:10, 75:8, 76:9, 76:10
**preclude** [1] - 76:3
**preferences** [2] - 28:6, 29:10
**prejudicial** [1] - 8:25
**premature** [2] - 63:8, 76:15
**prepare** [3] - 61:20, 74:21, 74:24
**prepared** [2] - 58:14, 79:1
**preparing** [1] - 64:18
**present** [1] - 74:21
**presentation** [1] - 13:2
**presentations** [3] - 12:13, 12:14
**presently** [1] - 76:16
**pressure** [1] - 74:7
**presumably** [2] - 26:18, 50:2
**presume** [1] - 64:10
**pretrial** [1] - 7:20
**pretty** [5] - 22:25, 31:13, 41:23, 52:21, 63:25
**previous** [1] - 64:3
**previously** [1] - 75:12
**primary** [2] - 31:17, 31:18
**principle** [1] - 13:4
**principles** [2] - 10:16, 66:7
**private** [2] - 60:20, 65:2
**privileged** [3] - 66:9, 69:5, 70:13
**problem** [1] - 26:17
**procedurally** [1] - 76:15
**Procedure** [4] - 66:7, 66:23, 68:14, 72:1
**procedures** [2] - 59:22, 68:12
**proceed** [3] - 10:2, 10:7, 56:21
**proceeding** [2] - 38:8, 68:17
**proceedings** [4] - 3:19, 3:23, 79:16, 79:20
**proceeds** [1] - 73:7
**process** [6] - 33:17, 39:4, 41:25, 48:5, 70:9, 70:15
**processed** [1] - 69:10
**Proctor** [1] - 67:7
**produce** [13] - 5:16, 5:22, 27:3, 32:3, 37:9, 44:10, 48:2, 50:1, 58:20, 69:17, 72:8, 73:14, 77:19
**produced** [24] - 12:7, 13:14, 13:19, 24:20, 27:15, 27:16, 27:20, 28:2, 32:4, 32:8, 32:9, 32:12, 34:22, 38:13, 41:16, 41:24, 44:16, 47:21, 47:22, 53:1, 56:22, 72:24, 73:12, 79:21
**product** [17] - 16:9, 18:7, 20:14, 20:16, 21:10, 22:5, 27:17, 35:13, 35:16, 39:22, 53:23, 54:8, 54:16, 54:18, 54:19, 59:23, 60:23
**Product** [1] - 66:18
**production** [18] - 13:22, 14:4, 19:25, 24:10, 32:19, 32:22, 35:2, 37:16, 44:9, 57:2, 66:22, 69:6, 70:19, 71:24, 72:10, 72:16, 73:25, 74:1
**Production** [6] - 18:13, 50:4, 73:4, 73:13, 73:18, 73:21
**productions** [9] - 5:23, 6:10, 7:8, 11:20, 13:5, 14:1, 19:3, 69:20, 72:18
**Products** [1] - 3:2
**PRODUCTS** [1] - 1:7
**products** [17] - 14:1, 17:6, 18:10, 18:23, 21:6, 21:15, 21:20, 38:1, 51:3, 51:7, 53:23, 59:15, 59:16, 59:21, 60:3, 73:20, 76:19
**profit** [2] - 29:12
**promises** [1] - 26:1
**proper** [3] - 45:17, 47:18, 47:19
**properly** [1] - 47:12
**proportional** [5] - 66:10, 68:22, 68:25, 70:2, 71:21
**proportionality** [11] - 10:17, 10:22, 26:3, 40:13, 57:20, 57:22, 66:17, 69:1, 69:9, 69:18
**proposal** [2] - 56:10, 56:11
**propose** [3] - 12:1, 23:2, 29:18
**proposed** [21] - 10:11, 10:15, 11:1, 11:19, 15:23, 15:24, 15:25, 22:18, 24:7, 25:14, 27:13, 42:23, 45:7, 56:8, 57:14, 66:15, 68:4, 69:20, 72:2
**Proposed** [1] - 53:13
**proposes** [1] - 42:21
**proposition** [1] - 35:24
**protect** [1] - 74:6
**protected** [1] - 69:5
**protection** [4] - 49:19, 51:5, 51:15, 72:14
**protective** [18] - 5:25, 6:14, 7:11, 8:4, 8:7, 58:6, 62:11, 62:15, 63:2, 63:9, 74:4, 74:9, 74:13, 75:5, 75:20, 76:2, 76:13, 76:23
**protocol** [2] - 23:24, 27:7
**prove** [4] - 17:23, 19:19, 22:6, 22:8
**proves** [1] - 62:17
**provide** [1] - 73:8
**provided** [2] - 14:18, 57:15
**provides** [2] - 68:15, 77:3
**public** [5] - 13:20, 30:23, 32:5, 32:8, 65:3
**purchased** [3] - 22:1, 22:4, 54:16
**purchasers** [1] - 21:3
**purchases** [2] - 56:2, 57:17
**purchasing** [3] - 18:2, 18:7, 21:9
**purported** [2] - 59:25, 71:13
**purpose** [4] - 40:16, 41:6, 67:10, 67:13
**purposes** [4] - 20:9,

20:15, 33:23, 33:24
**pursuant** [3] - 6:7, 66:23, 71:25
**put** [5] - 32:11, 38:18, 43:13, 46:17, 77:18
**putting** [2] - 11:10, 35:7

**Q**

**quality** [4] - 25:15, 25:17, 25:19, 25:23
**questioning** [1] - 31:15
**questions** [19] - 9:20, 11:6, 20:4, 20:6, 22:17, 24:22, 30:18, 31:1, 31:2, 31:6, 31:12, 42:18, 42:20, 45:6, 55:1, 64:13, 64:19, 77:16, 79:2
**quickly** [1] - 3:15
**Quincy** [2] - 16:14, 21:23
**quite** [2] - 25:22, 58:2
**quote** [17] - 17:16, 17:17, 17:18, 17:21, 21:2, 21:5, 22:1, 22:2, 22:5, 22:9, 54:20, 55:14, 55:15, 55:18, 68:15, 76:17
**quotes** [1] - 10:17
**quoting** [1] - 66:19

**R**

**Raag** [1] - 3:3
**ran** [4] - 39:5, 47:3, 47:4
**Ranches** [2] - 63:1, 75:17
**range** [1] - 33:2
**rather** [5] - 8:10, 22:7, 63:8, 71:13, 72:4
**RDR** [2] - 2:1, 79:24
**Re** [1] - 66:17
**reaction** [3] - 24:24, 24:25, 32:18
**read** [7] - 8:19, 9:23, 9:24, 15:6, 59:11
**reading** [1] - 39:24
**ready** [1] - 10:5
**really** [14] - 10:14, 16:9, 19:21, 20:1, 23:4, 25:15, 28:22, 29:13, 30:15, 36:15, 42:8, 45:6, 47:2, 72:5
**reason** [5] - 12:11, 40:5, 49:2, 53:5, 54:3
**reasonable** [4] - 22:8, 22:12, 70:3, 74:16
**reasonably** [5] - 24:19, 36:8, 69:22, 74:20, 74:25
**reasons** [6] - 8:13, 16:8, 18:6, 18:7, 64:2, 64:16
**rebut** [1] - 56:3
**rebuttal** [7] - 9:13, 9:15, 31:5, 34:23, 34:24, 55:4, 64:21
**received** [5] - 11:14, 14:3, 31:24, 69:10, 78:12
**receiving** [2] - 12:12, 17:19
**recent** [2] - 15:22, 37:6
**recently** [2] - 23:7, 46:24
**recognize** [1] - 73:10
**recollection** [2] - 34:17
**recommends** [1] - 13:6
**record** [9] - 4:10, 4:25, 6:18, 8:13, 23:5, 59:11, 65:21, 66:3, 77:18
**recorded** [1] - 3:19
**RECORDING** [1] - 1:11
**recording** [4] - 3:22, 65:20, 65:23, 65:24
**records** [2] - 56:19, 69:9
**recover** [1] - 22:7
**Recovery** [1] - 67:18
**refer** [1] - 5:19
**reference** [4] - 25:1, 50:10, 50:11, 63:14
**references** [1] - 54:6
**referred** [2] - 3:4, 5:13
**referring** [1] - 12:16
**refine** [1] - 69:25
**reflecting** [2] - 18:6, 18:8
**reflections** [1] - 28:1
**refused** [1] - 26:17
**regarding** [17] - 6:8, 6:9, 6:15, 6:20, 7:1, 7:8, 7:11, 8:19, 12:5, 12:6, 13:2, 29:6, 29:9, 59:23, 66:8, 68:12, 71:6
**regional** [1] - 53:16
**regular** [1] - 19:18
**regulated** [1] - 54:9
**rejoin** [2] - 4:23, 65:22
**relate** [7] - 25:24, 36:19, 37:12, 41:12, 42:9, 46:16, 48:4
**related** [15] - 3:5, 5:13, 5:20, 8:2, 8:6, 23:10, 24:14, 29:7, 29:13, 29:17, 30:23, 54:20, 56:8, 57:2, 71:21
**relates** [3] - 34:20, 60:18, 64:13
**relating** [7] - 6:1, 12:10, 15:15, 37:24, 49:19, 51:4, 59:25
**relationship** [1] - 58:23
**relative** [1] - 66:12
**relatively** [2] - 58:4, 70:7
**relevance** [8] - 10:17, 10:21, 14:13, 16:1, 33:23, 33:24, 57:16, 62:17
**relevancy** [2] - 29:21, 71:10
**relevant** [58] - 6:18, 6:21, 10:25, 12:3, 14:10, 14:17, 16:3, 17:21, 19:10, 23:14, 25:16, 28:9, 29:3, 29:20, 30:20, 33:17, 35:11, 35:15, 35:16, 35:24, 36:11, 37:1, 38:15, 40:12, 43:4, 43:20, 44:2, 44:5, 44:15, 46:3, 46:23, 47:2, 48:15, 48:21, 50:20, 53:9, 54:4, 54:10, 55:11, 56:22, 56:25, 61:21, 64:1, 64:4, 64:16, 64:17, 65:5, 66:9, 66:12, 67:14, 68:11, 69:4, 70:8, 71:9, 71:13, 71:20, 74:13, 76:22
**reliance** [8] - 16:16, 16:20, 16:22, 22:6, 39:23, 56:1, 57:17, 66:17
**relied** [2] - 22:15, 59:25
**rely** [1] - 49:14
**remained** [1] - 6:10
**remaining** [1] - 57:15
**remains** [1] - 33:1
**remember** [2] - 51:25, 52:1
**remind** [1] - 3:9
**reminded** [1] - 50:4
**remote** [1] - 69:17
**removed** [1] - 6:22
**rep** [4] - 52:5, 58:9, 58:10, 60:22
**Repairs** [1] - 67:4
**repeated** [3] - 17:16, 17:20, 23:2
**repeatedly** [1] - 26:15
**repeating** [2] - 18:19, 47:15
**report** [13] - 6:7, 6:12, 7:14, 10:3, 10:9, 10:12, 23:22, 27:19, 34:24, 43:17, 45:21, 66:20
**reporter** [1] - 3:20
**Reporterlisaedwards@gmail.com** [1] - 79:25
**reporterlisaedwards@gmail.com** [1] - 2:1
**reporters'** [1] - 8:16
**reporting** [1] - 61:17
**reports** [8] - 33:13, 33:14, 34:22, 34:23, 53:1, 53:16, 53:18, 53:20
**represent** [1] - 21:3
**representation** [1] - 30:11
**representations** [1] - 31:23
**representative** [6] - 6:1, 6:16, 21:16, 21:21, 65:7, 76:3
**representatives** [1] - 61:13
**represented** [1] - 30:2
**reps** [1] - 60:8
**request** [19] - 10:16, 24:10, 25:16, 32:22, 32:23, 32:24, 37:23, 44:8, 44:11, 46:10, 47:9, 47:12, 50:20, 53:4, 58:18, 58:19, 66:21, 67:22, 72:11
**Request** [9] - 37:10, 37:11, 49:18, 50:4, 73:13, 73:18, 73:21
**requesting** [2] - 58:18, 66:22
**Requests** [3] - 18:13, 65:6, 73:4
**requests** [40] - 5:23, 6:9, 7:8, 19:3, 19:19, 19:25, 20:2, 31:19, 31:25, 32:2, 32:5, 32:15, 32:17, 32:19, 32:20, 32:21, 36:13, 36:15, 36:20, 37:16, 43:6, 44:6, 46:2, 46:13, 46:14, 46:18, 47:18, 50:15, 53:11, 57:1, 57:2, 58:13, 69:11, 69:12, 69:20, 70:18, 71:24, 72:10, 72:15, 72:18
**require** [2] - 37:5, 67:14
**required** [1] - 31:22
**requirement** [4] - 69:1, 69:9, 69:19, 74:8
**requires** [1] - 68:24
**research** [21] - 12:7, 18:1, 18:5, 27:17, 27:20, 27:24, 28:1, 28:12, 28:13, 29:9, 32:6, 32:10, 59:14, 59:24, 60:2, 60:25, 63:14, 63:24, 64:6, 76:19
**research/studies** [1] - 29:6
**reserve** [2] - 9:12, 9:15
**Residence** [1] - 67:4
**resolution** [1] - 67:15
**resolve** [5] - 8:18, 9:1, 45:13, 57:22, 66:25
**resolving** [3] - 57:19, 66:14, 68:8
**resort** [1] - 11:21
**Resorts** [1] - 75:23
**resources** [2] - 66:13, 68:6
**respect** [8] - 33:16, 33:20, 44:7, 47:11, 48:7, 48:20, 53:21, 77:25
**respond** [3] - 8:2, 8:4, 46:25
**responded** [2] - 44:7, 47:12
**responding** [4] - 32:15, 32:23, 50:14, 69:7
**response** [20] - 5:18, 7:2, 7:10, 7:13, 13:13, 20:10, 24:10, 27:14, 32:24, 35:19, 37:7,

37:8, 37:9, 38:2, 44:8, 46:11, 71:24, 73:6, 73:8, 74:18
**responses** [3] - 28:17, 72:15, 77:7
**responsibility** [3] - 45:10, 68:19, 72:5
**responsive** [18] - 5:16, 5:22, 15:9, 15:15, 18:14, 20:2, 24:21, 27:15, 29:3, 30:10, 31:22, 37:10, 39:3, 53:12, 53:14, 72:9, 72:23
**result** [3] - 22:25, 24:20, 67:17
**resulted** [1] - 57:10
**resulting** [1] - 72:23
**results** [2] - 69:24
**review** [7] - 5:16, 11:20, 48:6, 56:19, 59:24, 69:19, 75:4
**reviewed** [1] - 70:13
**reviewing** [3] - 39:5, 48:5, 49:7
**RFP** [4] - 15:15, 28:9, 28:12, 28:14
**RFPs** [6] - 12:5, 24:13, 24:17, 24:21, 28:9, 29:1
**rightly** [1] - 56:24
**ripe** [6] - 5:17, 5:24, 6:3, 7:2, 7:9, 7:12
**Roberts's** [1] - 66:19
**roll** [1] - 45:13
**Rollins** [2] - 63:1, 75:17
**room** [2] - 4:15, 65:13
**root** [2] - 23:13, 23:15
**Rosenbaum** [1] - 67:11
**rule** [9] - 6:13, 8:10, 21:19, 23:15, 24:5, 45:12, 65:15, 66:2, 70:17
**Rule** [20] - 63:3, 66:7, 66:16, 66:23, 67:1, 67:25, 68:14, 68:20, 68:24, 69:1, 71:25, 74:5, 74:8, 74:14, 74:21, 75:5, 75:9, 75:20, 77:3
**ruled** [2] - 62:24, 75:15
**Rules** [2] - 67:2, 67:14
**rules** [8] - 8:22, 34:1, 37:5, 59:22, 67:6, 67:11, 68:12, 68:15
**ruling** [5] - 24:25, 66:6, 67:25, 73:4, 77:10
**rulings** [1] - 8:11
**run** [21] - 15:25, 19:5, 19:16, 26:10, 26:17, 27:3, 41:9, 41:12, 41:13, 41:14, 43:21, 48:25, 49:4, 53:3, 56:8, 57:5, 57:10, 57:14, 70:25, 72:17
**running** [8] - 15:23, 17:17, 19:16, 49:5, 49:6, 53:8, 56:7, 56:10

## S

**sale** [1] - 61:25
**sales** [9] - 52:25, 53:1, 53:4, 53:6, 53:9, 53:16, 53:18, 53:20
**sat** [1] - 45:16
**satisfied** [3] - 30:6, 47:20, 69:1
**satisfy** [1] - 69:8
**saw** [4] - 22:14, 40:8, 40:16, 42:12
**scheduling** [3] - 7:16, 7:23, 23:22
**scholarly** [1] - 28:18
**science** [10] - 32:1, 34:22, 34:23, 34:25, 35:3, 35:7, 44:9, 52:7, 60:9, 60:22
**scientific** [2] - 43:11, 43:14
**scope** [8] - 16:16, 22:22, 39:8, 46:16, 67:3, 67:10, 68:14, 71:15
**seal** [1] - 12:6
**search** [63] - 5:19, 6:8, 7:1, 10:15, 12:1, 15:7, 15:23, 15:25, 19:19, 23:9, 23:19, 23:25, 24:16, 24:19, 25:2, 26:4, 26:10, 26:13, 26:18, 26:23, 27:24, 28:5, 29:14, 29:22, 30:17, 32:16, 32:24, 36:16, 36:19, 37:4, 37:12, 37:14, 37:15, 41:11, 43:22, 45:11, 46:12, 46:14, 46:16, 46:20, 47:4, 48:1, 48:6, 49:8, 56:7, 56:8, 56:21, 56:25, 57:10, 57:14, 69:24, 70:1, 70:18, 70:21, 71:5, 71:23, 72:5, 72:17, 72:24, 78:2, 78:3, 78:11
**Search** [1] - 53:13
**searched** [6] - 15:5, 15:9, 30:16, 30:17, 33:9, 33:11
**searches** [14] - 11:22, 15:18, 16:10, 19:6, 43:22, 51:23, 53:3, 53:8, 69:25, 70:6, 70:9, 70:25, 72:8
**searching** [1] - 69:22
**Second** [1] - 1:24
**second** [10] - 3:19, 5:21, 20:14, 20:19, 22:17, 22:20, 58:18, 70:11, 71:5, 71:10
**secondly** [1] - 28:11
**secure** [1] - 68:16
**see** [9] - 12:18, 17:14, 24:22, 26:19, 30:25, 31:15, 47:3, 47:21, 77:19
**seeking** [2] - 70:5, 74:9
**seeks** [1] - 71:6
**seem** [4] - 19:24, 25:15, 60:6, 64:12
**self** [3] - 30:9, 30:11, 56:3
**self-collection** [1] - 30:9
**self-representation** [1] - 30:11
**self-serving** [1] - 56:3
**sell** [1] - 18:3
**send** [6] - 23:8, 23:12, 23:19, 32:2, 41:10, 41:13
**sending** [1] - 23:25
**senior** [4] - 15:7, 32:2, 48:3, 61:12
**sent** [6] - 32:16, 46:15, 56:10, 56:11, 57:12, 58:17
**separate** [2] - 8:10, 65:13
**separately** [1] - 6:14
**September** [5] - 26:6, 26:10, 63:6, 75:17, 75:24
**series** [1] - 73:6
**served** [5] - 31:19, 32:14, 37:23, 44:6, 58:9
**serves** [1] - 71:16
**serving** [1] - 56:3
**set** [4] - 8:21, 9:9, 9:16, 23:3
**seven** [4] - 37:15, 46:17, 72:7, 74:2
**several** [5] - 14:12, 15:4, 17:14, 23:17, 55:21
**Shapiro** [1] - 67:17
**share** [1] - 68:18
**short** [2] - 8:11, 10:23
**show** [8] - 13:7, 14:13, 17:5, 29:20, 52:24, 53:4, 53:15, 74:9
**showing** [4] - 18:9, 35:11, 35:16, 53:6
**shown** [2] - 16:21, 20:1
**shows** [5] - 16:19, 18:1, 18:6, 35:10, 62:10
**sic]** [1] - 41:15
**side** [6] - 4:5, 8:6, 8:8, 31:7, 55:3
**sign** [1] - 23:22
**signed** [1] - 73:17
**significantly** [2] - 17:6, 17:16
**silent** [1] - 63:15
**similar** [2] - 19:9, 76:2
**similarly** [2] - 5:4, 75:13
**simple** [1] - 26:18
**simply** [11] - 4:14, 16:24, 18:5, 19:16, 22:7, 22:13, 26:10, 27:5, 30:9, 36:8
**sincere** [1] - 56:7
**Singhal** [4] - 3:4, 5:14, 20:22, 73:2
**single** [7] - 14:1, 14:3, 14:18, 27:4, 27:9, 56:16, 62:13
**single-page** [1] - 14:1
**sit** [3] - 22:21, 25:7, 72:4
**situated** [1] - 5:4
**six** [8] - 8:23, 11:17, 37:15, 42:23, 43:1, 45:7, 59:21, 71:1
**sleeves** [1] - 45:13
**slow** [1] - 3:17
**slower** [1] - 3:13
**slowly** [1] - 3:13
**snag** [1] - 58:16
**social** [4] - 11:25, 39:1, 41:17, 42:12
**Software** [1] - 68:9
**solid** [1] - 57:5
**Solutions** [1] - 67:18
**someone** [2] - 3:25, 4:21
**sometime** [1] - 42:12
**sometimes** [2] - 3:14, 4:3
**somewhat** [5] - 8:2, 8:5, 25:6, 52:15, 72:2
**somewhere** [2] - 42:12, 50:24
**soon** [2] - 4:22, 45:14
**sorry** [7] - 14:25, 15:2, 18:24, 19:1, 28:14, 64:23, 69:12
**sort** [13] - 13:6, 19:18, 20:12, 20:14, 22:10, 24:16, 30:7, 30:17, 32:20, 33:14, 46:23, 47:1, 60:21
**sorts** [2] - 41:24, 64:18
**sought** [3] - 68:1, 69:2, 69:3
**sounds** [1] - 57:12
**source** [1] - 68:3
**sources** [2] - 11:16, 75:1
**South** [2] - 1:18, 1:21
**Southeast** [1] - 1:24
**Southern** [11] - 54:15, 63:5, 66:18, 67:11, 67:18, 67:23, 68:9, 75:17, 75:23, 76:5, 76:6
**SOUTHERN** [1] - 1:1
**spare** [1] - 57:25
**speaking** [6] - 3:16, 3:25, 4:1, 4:9, 54:25
**speaks** [3] - 14:8, 21:13, 43:14
**specific** [14] - 15:15, 16:6, 16:7, 20:13, 22:14, 36:14, 36:20, 37:4, 41:12, 46:12, 47:9, 47:17, 72:11, 74:11
**specifically** [7] - 15:5, 24:9, 39:20, 40:1, 51:22, 59:15, 76:4
**specificity** [1] - 67:21
**speedy** [1] - 68:16
**spending** [1] - 36:21

**spent** [1] - 36:24
**spin** [1] - 21:18
**spirit** [2] - 24:2, 67:10
**split** [2] - 75:6, 76:8
**stage** [4] - 21:1, 21:12, 21:19, 69:21
**stake** [3] - 66:11, 68:7, 71:21
**stakes** [1] - 68:22
**standard** [3] - 16:13, 16:24, 36:10
**standing** [3] - 21:1, 21:3, 54:13
**standpoint** [2] - 48:14, 77:17
**stands** [1] - 52:15
**start** [2] - 37:18, 47:3
**started** [4] - 3:8, 32:10, 33:8, 45:22
**starting** [1] - 41:1
**starts** [1] - 73:6
**state** [8] - 3:12, 6:22, 14:16, 35:17, 35:20, 55:25, 56:8, 72:16
**State** [1] - 75:2
**statement** [4] - 4:7, 15:11, 22:6, 77:16
**statements** [2] - 56:3, 74:12
**States** [1] - 20:24
**states** [2] - 11:2, 72:18
**STATES** [2] - 1:1, 1:12
**status** [7] - 6:6, 6:12, 6:20, 7:14, 10:3, 10:9, 10:12
**stay** [2] - 34:10, 65:19
**staying** [1] - 79:2
**steps** [4] - 13:7, 13:8, 68:21, 70:10
**stereotypical** [1] - 74:12
**stick** [1] - 39:16
**still** [6] - 6:10, 13:23, 14:3, 34:4, 57:1, 57:4
**stop** [7] - 4:23, 11:5, 35:6, 38:10, 47:14, 65:20, 65:23
**stored** [5] - 25:2, 33:9, 33:12, 69:21, 70:5
**stories** [1] - 29:13
**straight** [1] - 10:1
**strike** [1] - 73:10
**string** [11] - 10:15, 24:7, 25:14, 26:13, 26:23, 27:13, 28:5, 28:15, 28:16, 29:13, 29:17
**strings** [7] - 24:8, 25:4, 25:5, 27:2, 28:25, 56:21, 56:25
**strongly** [1] - 67:6
**structure** [18] - 58:21, 59:8, 59:13, 59:19, 59:20, 60:13, 60:17, 60:19, 61:8, 61:9, 61:22, 62:3, 64:10, 64:13, 65:4, 76:17
**structures** [1] - 64:5
**studies** [17] - 17:3, 17:5, 27:16, 27:18, 28:2, 28:3, 28:4, 28:18, 29:9, 34:14, 34:19, 34:20, 44:10, 46:2, 46:21
**study** [2] - 34:19, 46:20
**stuff** [9] - 25:22, 29:20, 32:7, 33:18, 39:13, 46:3, 46:6, 49:5
**subject** [6] - 17:19, 30:3, 49:22, 52:18, 61:17, 73:7
**subjective** [14] - 16:8, 16:16, 16:20, 16:22, 21:22, 36:5, 36:10, 38:15, 55:18, 56:1, 56:2, 57:17
**subjects** [1] - 48:4
**submitted** [1] - 43:16
**subsequent** [1] - 69:25
**subsequently** [1] - 11:8
**subsidiaries** [1] - 58:24
**subsidiary** [2] - 59:13, 76:18
**substance** [1] - 3:8
**substantial** [1] - 58:10
**substantially** [1] - 77:7
**substantiate** [1] - 27:17
**sued** [2] - 49:23, 49:24
**sufficient** [5] - 32:11, 52:24, 53:2, 53:4, 53:15
**sugar** [5] - 39:14, 40:2, 40:19, 41:22, 71:18
**suggest** [1] - 24:16
**suggested** [2] - 23:7, 24:13
**suggesting** [1] - 21:21
**Suite** [4] - 1:16, 1:19, 1:22, 1:25
**summarize** [1] - 68:12
**summary** [2] - 40:10, 55:10
**Supplement** [1] - 54:9
**supplements** [16] - 17:4, 21:9, 29:6, 37:25, 40:21, 40:23, 40:24, 41:2, 41:3, 41:5, 51:6, 54:1, 54:4, 54:6, 54:10, 54:17
**supports** [1] - 14:19
**supposed** [1] - 47:10
**suppression** [1] - 71:19
**surprised** [1] - 9:19
**surprises** [1] - 58:15
**surprising** [1] - 41:16
**survey** [1] - 32:6
**surveys** [1] - 17:3
**system** [5] - 3:15, 39:13, 46:4, 53:18, 69:14

**T**

**T-A-O** [1] - 71:3
**tailor** [2] - 27:1, 56:21
**tailored** [3] - 24:20, 28:5, 59:15
**tailoring** [1] - 57:6
**Takata** [1] - 66:17
**talks** [1] - 39:12
**Tao** [4] - 11:10, 11:15, 42:22, 71:3
**Target** [1] - 67:23
**team** [1] - 28:6
**technology** [1] - 3:10
**telephone** [1] - 3:14
**TELEPHONIC** [1] - 1:10
**telephonic** [2] - 3:7, 4:3
**ten** [3] - 26:13, 26:23, 31:5
**Term** [1] - 53:13
**term** [7] - 15:7, 15:25, 27:24, 35:17, 41:18, 46:21, 49:8
**terms** [52] - 5:20, 6:8, 7:1, 7:16, 15:23, 22:18, 22:22, 22:24, 23:3, 23:9, 23:20, 23:25, 24:16, 24:19, 26:4, 26:10, 29:22, 30:17, 32:24, 36:16, 36:19, 37:4, 37:12, 37:14, 37:15, 39:5, 39:8, 41:10, 41:11, 44:1, 45:11, 45:13, 45:18, 46:12, 46:14, 46:16, 46:20, 47:4, 48:6, 55:4, 56:7, 56:8, 57:10, 57:15, 70:18, 70:21, 71:5, 71:10, 71:23, 72:2, 72:5
**testified** [1] - 38:19
**testify** [4] - 40:17, 52:4, 65:8, 74:19
**testifying** [3] - 41:4, 61:7, 61:12
**testimony** [3] - 21:17, 42:12, 71:12
**testing** [3] - 40:3, 59:24, 60:2
**tether** [1] - 34:4
**THE** [94] - 1:11, 1:11, 1:14, 1:20, 3:1, 5:6, 5:11, 9:12, 9:16, 10:7, 11:5, 12:2, 12:16, 12:20, 12:23, 12:25, 13:12, 14:5, 14:23, 14:25, 15:3, 17:1, 18:11, 18:17, 18:25, 19:3, 19:5, 20:3, 20:18, 22:16, 24:3, 24:22, 25:12, 25:22, 26:7, 27:12, 28:14, 28:21, 28:24, 30:25, 31:11, 33:7, 33:22, 34:9, 34:16, 35:4, 35:6, 38:10, 38:21, 39:7, 40:7, 40:9, 42:16, 42:18, 43:3, 43:6, 43:18, 44:19, 44:21, 45:5, 47:14, 48:9, 50:3, 51:8, 51:10, 51:25, 52:12, 52:14, 52:20, 54:22, 54:24, 55:7, 57:24, 59:4, 59:9, 59:11, 62:5, 62:20, 62:22, 63:17, 64:20, 64:22, 64:25, 65:9, 65:25, 77:14, 77:23, 78:7, 78:10, 78:16, 78:20, 79:7, 79:11, 79:13
**themselves** [2] - 22:24, 73:24
**theoretically** [1] - 42:2
**there'd** [1] - 32:22
**therefore** [4] - 27:6, 67:17, 72:22, 77:8
**they've** [7] - 15:18, 19:6, 30:7, 35:2, 36:15, 57:13, 63:9
**think's** [1] - 47:12
**thinking** [1] - 13:1
**thinks** [2] - 23:19, 27:9
**third** [9] - 11:2, 12:6, 12:13, 13:6, 13:25, 28:3, 33:14, 60:10, 65:13
**third-party** [1] - 33:14
**third-party-authored** [5] - 12:6, 12:13, 13:6, 13:25, 28:3
**thoughts** [3] - 11:3, 36:10, 55:14
**thousands** [1] - 36:24
**three** [9] - 5:12, 5:23, 6:4, 6:9, 7:8, 16:4, 47:4, 73:5, 77:7
**ticking** [1] - 38:11
**tie** [6] - 24:16, 32:19, 36:14, 36:19, 41:7, 42:15
**tied** [4] - 24:9, 31:19, 47:9, 57:1
**timeliness** [2] - 8:19, 9:5
**timely** [1] - 8:21
**timer** [2] - 9:9, 65:12
**today** [8] - 3:10, 6:5, 8:11, 8:14, 20:23, 66:6, 69:19, 72:7
**together** [4] - 23:23, 24:2, 58:11, 70:10
**ton** [1] - 47:8
**took** [9] - 28:24, 31:6, 38:18, 39:19, 47:4, 53:25, 59:4, 62:6, 78:23
**top** [2] - 12:20, 32:12
**Topic** [5] - 6:1, 6:15, 7:11, 76:16, 76:21
**topic** [12] - 43:14, 60:10, 60:23, 61:21, 62:12, 62:16, 62:25, 63:4, 64:1, 64:15, 65:5, 75:21
**topics** [7] - 41:13, 59:21, 60:13, 60:14, 60:25, 75:10, 75:15
**Torres** [2] - 63:11,

76:6
**totally** [3] - 23:1, 27:10, 62:15
**towards** [2] - 18:9, 57:19
**Tower** [1] - 1:19
**TRANSCRIBED** [2] - 1:11, 2:1
**transcript** [2] - 3:23, 8:15
**transcription** [1] - 79:20
**TRAURIG** [2] - 1:21, 1:24
**tremendous** [1] - 35:13
**trends** [2] - 28:7, 29:10
**trial** [3] - 6:19, 7:22, 77:22
**trials** [1] - 28:19
**trimmed** [1] - 57:4
**Tropical** [2] - 63:5, 75:22
**true** [3] - 29:13, 34:3, 67:17
**trust** [1] - 30:22
**try** [2] - 22:21, 24:4
**trying** [3] - 14:13, 29:20, 72:4
**turn** [8] - 4:8, 4:12, 9:7, 24:3, 24:6, 31:7, 58:1, 70:16
**turned** [5] - 34:13, 34:18, 34:19, 35:8, 70:14
**turning** [3] - 10:9, 73:3, 73:13
**two** [30] - 4:17, 4:22, 6:12, 6:13, 8:1, 8:5, 9:8, 10:12, 20:12, 25:9, 36:1, 36:14, 38:23, 39:8, 40:21, 41:12, 42:3, 44:14, 44:23, 48:3, 48:7, 48:11, 57:13, 60:7, 60:8, 62:24, 63:10, 70:10, 77:16
**type** [5] - 20:14, 55:10, 56:13, 69:2, 76:25
**types** [1] - 70:4
**typical** [1] - 32:21
**typically** [1] - 51:23

## U

**U.S** [1] - 3:3
**ultimate** [2] - 61:16, 67:15
**unclear** [3] - 20:1, 30:6, 73:11
**under** [13] - 10:10, 10:22, 11:1, 12:6, 22:7, 22:14, 34:1, 35:20, 55:6, 66:7, 67:13, 69:13, 74:5
**understood** [1] - 10:14
**undertaken** [1] - 68:23
**undue** [2] - 64:12, 74:7
**unduly** [2] - 19:20, 67:22
**unfortunately** [1] - 28:24
**UNITED** [2] - 1:1, 1:12
**United** [1] - 20:24
**unless** [1] - 72:22
**unlike** [1] - 31:23
**unquote** [2] - 68:17, 76:20
**unreasonable** [1] - 67:22
**unreasonably** [1] - 68:2
**unrelated** [2] - 60:11, 62:15
**untethered** [1] - 32:21
**up** [16] - 3:16, 4:9, 23:3, 23:24, 25:8, 29:24, 31:6, 32:7, 33:7, 45:10, 45:13, 49:11, 57:20, 60:20, 65:19
**upcoming** [1] - 7:16
**uses** [1] - 21:22

## V

**vacated** [1] - 21:25
**vague** [1] - 75:11
**VALLE** [1] - 1:11
**value** [1] - 21:8
**VANESSA** [1] - 1:23
**Vanessa** [1] - 5:9
**various** [2] - 24:13, 32:1
**vast** [2] - 13:25
**vehicles** [1] - 21:4
**venture** [1] - 19:18
**version** [1] - 23:5
**versus** [16] - 3:1, 21:23, 63:1, 63:10, 63:11, 67:3, 67:7, 67:11, 67:18, 67:23, 68:9, 75:1, 75:16, 75:23, 76:4, 76:6
**videos** [2] - 14:1, 41:17
**view** [2] - 10:11, 61:25
**vinegar** [10] - 17:4, 25:15, 38:1, 39:9, 42:13, 49:25, 51:7, 60:1, 61:25
**violations** [1] - 17:12
**virtually** [1] - 41:19
**vis-à-vis** [1] - 46:23
**visited** [1] - 69:16
**Vitamin** [4] - 17:7, 21:9, 53:24, 53:25
**vitamins** [1] - 18:22
**voices** [1] - 3:15
**volume** [1] - 52:24
**vs** [1] - 1:6

## W

**wait** [3] - 4:8, 4:10, 4:23
**waiting** [3] - 4:15, 24:1, 45:17
**waiver** [1] - 73:7
**Wall** [2] - 67:4
**wants** [2] - 16:9, 48:7
**warnings** [2] - 17:16, 17:20
**warranted** [1] - 77:8
**wary** [1] - 25:4
**waste** [1] - 9:25
**wasting** [3] - 45:25, 46:8
**watchdog** [3] - 49:20, 51:5, 52:10
**ways** [2] - 4:18, 57:19
**webpage** [1] - 39:14
**websites** [1] - 69:16
**weeds** [1] - 16:6
**weekend** [1] - 47:5
**weighed** [2] - 35:1, 35:2
**weight** [21] - 20:9, 20:19, 23:10, 38:21, 38:24, 39:5, 40:19, 41:6, 41:14, 41:21, 42:6, 42:14, 46:6, 46:24, 48:10, 48:12, 48:17, 56:9, 71:12, 71:19
**West** [3] - 1:19, 1:19, 1:22
**whatsoever** [1] - 28:13
**whereas** [2] - 45:11, 51:25
**whole** [4] - 19:24, 27:4, 54:15, 54:20
**wholeheartedly** [1] - 63:21
**wide** [3] - 22:25, 25:6, 33:2
**wide-range** [1] - 33:2
**willing** [4] - 26:3, 26:16, 27:1, 46:11
**wish** [1] - 21:18
**withheld** [1] - 73:12
**witness** [5] - 58:14, 58:20, 61:21, 64:9, 64:18
**woman** [1] - 11:10
**wonder** [1] - 19:12
**word** [1] - 35:17
**words** [1] - 41:20
**works** [1] - 11:23
**written** [1] - 8:10

## Y

**year** [5] - 20:22, 21:13, 38:6, 50:19, 66:20
**Year** [1] - 79:4
**year-end** [1] - 66:20
**Yo** [1] - 22:1
**yourself** [1] - 3:12
**yourselves** [1] - 5:1

## Z

**zinc** [3] - 17:7, 53:24, 53:25
**Zoom** [1] - 3:20