**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JULIE DURAN,

Plaintiff,

v.

BRAGG LIVE FOOD PRODUCTS, LLC, a foreign corporation,

Defendant.

**Case No.: 23-cv-60812-AHS**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO BRAGG'S MOTION TO COMPEL**

Plaintiff Julie Duran ("Plaintiff") hereby responds in opposition to Defendant Bragg Live Food Products, LLC's ("Bragg") motion to compel (ECF No. 41) ("Motion"), pursuant to S.D. Fla. L.R. 26.1(g).

**INTRODUCTION**

Bragg's Motion seeks wholly irrelevant information and attempts to hold Plaintiff's ESI collection to a double standard. Documents regarding Plaintiff's physical health, her settlement agreement from an unrelated action, and her subjective reliance on Bragg's marketing cannot make her claims or Bragg's defenses any more or less likely to be true.

Plaintiff hoped to avoid this Motion at the parties' January 10th meet-and-confer by explaining the flaws in Bragg's requests and citing relevant Florida authority for Defendant's consideration; Plaintiff further offered to review any case law Bragg could send to the contrary that might persuade Plaintiff that Bragg was in fact entitled to the material it now seeks. Bragg declined to discuss the issues further or share case law in support of its position, as indeed, no such case law exists. Rather, knowing it was unable to defend its untenable position on the merits, on Friday afternoon, January 12th, Bragg notified Plaintiff that it intended to file its Motion without any further discussion on the matter. Exhibit 1, Email from M. Bideau to C. Kligler (Jan. 12, 2024). Upon review, Bragg's Motion is indeed meritless. Bragg fails to articulate any relevance or cite any authority in support of its requests, instead continuing its attempt to bully and harass Plaintiff,[1] and the Court should deny Bragg's Motion in its entirety and award Plaintiff her attorney's fees. The fee request is particularly appropriate given that Bragg's current discovery

[1] Bragg's Motion follows a series of irrelevant comments and questions counsel for Bragg raised at Plaintiff's deposition. *See, e.g.*, ECF No. 41-1 at 41:23–24 ("What do you take for urinary tract infections?"), *id.*at 152:8 ("I don't think you have any fat"), *id.* at 153:12–14 ("And during some of the period when you were taking Bragg, you were consuming more food because you wanted to get more size to your gluteus maximus. Okay? How's that?"), and *id.* at 154:7 ("In 2016, what was your weight?").

efforts contradict this Court's Order from the January 3, 2024, hearing. Essentially, Bragg is seeking to re-litigate issues this Court has decided.

## ARGUMENT

### I. Plaintiff's medical records are irrelevant.

Bragg's request for Plaintiff's medical records is misguided for two reasons. First, under consistent and well-established Florida precedent, Plaintiff's subjective experience can neither demonstrate nor disprove that Bragg's ACV products "work" as is relevant to the claims at issue in this case. Second, Plaintiff's injury is economic, not physical—under the relevant precedent, Plaintiff suffered a legally cognizable injury upon her very purchase of Bragg's objectively defective products, not upon any weight loss (or gain) upon taking the products. As this Court has remarked under similar circumstances, "Defendant misunderstands the FDUTPA standard, which requires only an objective inquiry." *Vazquez v. GM, LLC*, 2018 U.S. Dist. LEXIS 6875, at *15 (S.D. Fla. Jan. 16, 2018).

Established precedent holds that, "[t]here are no individualized issues of reliance or causation under FDUTPA." *Collins v. Quincy Bioscience, LLC*, 2020 U.S. Dist. LEXIS 48236, at *79 (S.D. Fla. Mar. 19, 2020). Therefore, Plaintiff's medical records cannot make it any more or less likely that Bragg's ACV products "work" as advertised. Bragg blatantly ignored the *Collins* precedent and its progeny when Plaintiff offered it at the meet-and-confer, and now, turning a blind eye to this binding precedent, Bragg maintains that any changes to Plaintiff's own "weight, cholesterol, blood sugar, and immunity" reflected in her medical records could show that its ACV products "in fact work." ECF No. 41 at 4.[2] Bragg's suggestion simply has no basis in the relevant law. Rather, Bragg's confusion appears to follow from its conflation of the causation and injury

[2] For references to Bragg's Motion, Plaintiff's pin citations refer to the ECF page numbering.

analysis required under Florida's personal injury law with the analysis required under Florida's consumer protection law. Bragg's two leading cases, *Tyer v. Sw. Airlines, Co.*, 2015 U.S. Dist. LEXIS 97508 (S.D. Fla. July 27, 2015) and *Vanderwall v. United Airlines, Inc.*, 2014 U.S. Dist. LEXIS 184449, at *1 (S.D. Fla. Oct. 17, 2014), demonstrate this point as both are personal injury cases Bragg cites to double down on its misguided contention that Plaintiff's personal health is at issue. But Florida's well-established precedent makes clear that in this case a jury will determine whether, as a matter of ***objective scientific principle***, Bragg's products are capable of delivering what Bragg promises. *See Collins*, 2020 U.S. Dist. LEXIS 48236, at *78 ("If each class member were to pursue his or her claim individually, then the evidence, including the science, necessary to support the individual claims would be identical in each case."). Plaintiff's own health has no bearing on the cause or measure of her injury here.

To drive home this point, it is worth noting that even a ***corporate entity*** that had purchased Bragg's defective ACV products—which entity, by its nature, has no personal health records whatsoever—could have served as a plaintiff in this lawsuit. *See* § 501.203, Fla. Stat. ("'[A FDUTPA] Consumer' means a[] . . . business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation . . ."); *see also Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team, LLC*, 2021 U.S. Dist. LEXIS 113380, at *18 (S.D. Fla. June 17, 2021) ("Florida state courts have ruled uniformly that non-consumers can bring FDUTPA actions."); *Parker v. Am. Traffic Sols., Inc.*, 2015 U.S. Dist. LEXIS 105522, at *20 (S.D. Fla. Aug. 10, 2015) ("In keeping with the terms of the statute, 'the Florida legislature no longer intended FDUTPA to apply to only consumers, but to other entities able to prove the remaining elements of the claim as well.'") (alteration adopted) (quoting *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015)). Bragg

asks the Court to read FDUTPA narrowly as a personal injury statute, but FDUTPA's broad sweep intentionally omits any subjective analysis.

Second, and relatedly, Plaintiff's injury is ***economic***, not physical. Bragg erroneously supposes that "[o]ne way" to determine whether Plaintiff can establish causation and damages here is "to review her medical records." ECF No. 41 at 5. Perhaps, in a different jurisdiction and under a different theory of liability, Bragg's proposal might serve as "one way" to calculate causation and damages. But Bragg's conjecture is not the way this Court evaluates Florida consumer protection claims. Rather, Plaintiff suffered an injury upon her ***purchase*** of Bragg's defective products, not upon her consumption. *See Carriuolo v. GM Co.*, 823 F.3d 977, 990 (11th Cir. 2016) ("[T]he injury occurred when class members paid a price premium at the time of lease or purchase."). Plaintiff's damages thus cannot rise or fall on her own health. Indeed, even if Plaintiff had never consumed Bragg's products, Plaintiff's injury still attached at her purchase. *See Cardenas v. Toyota Motor Corp.*, 2021 U.S. Dist. LEXIS 233135, at *46 (S.D. Fla. Dec. 6, 2021) (noting that whether plaintiff experienced negative consequences from his purchase of a defective vehicle was "irrelevant, since the alleged injury is overpaying for the vehicle"). Consistent with this precedent, both parties here have hired experts to analyze the science behind Bragg's ACV products, not physicians to examine Plaintiff's personal condition. That latter point is telling, as Bragg seeks Plaintiff's medical records, yet it has disclosed no expert who could analyze those records. There simply is no case that supports a FDUTPA plaintiff turning over personal medical records.

Bragg, admitting that no Florida case law exists to support its position to the contrary, *see* ECF No. 41 at 6, cites unrelated, out-of-state consumer protection statutes in the apparent hope that the Court will incorporate those statutes' subjective reliance components into FDUTPA. *Id.*

Those cases, *Stanley v. Bayer Healthcare LLC*, 2011 U.S. Dist. LEXIS 132363 (S.D. Cal. Nov. 16, 2011), and *Rikos v. Procter & Gamble Co*., 2013 U.S. Dist. LEXIS 124613 (S.D. Ohio Aug. 30, 2013), both concern California consumer protection laws that—directly at odds with Florida's consumer protection statute—require a plaintiff to show ***actual reliance***. *See Lum v. Merlin Ents. Grp. U.S. Holdings Inc*, 2023 U.S. Dist. LEXIS 47027, at *21 (S.D. Cal. Mar. 20, 2023) ("Claims brought under the UCL, FAL, and CLRA all require a showing of actual reliance on the allegedly deceptive or misleading statements."); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) ("California requires a plaintiff suing under the CLRA for misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation."). As *Collins*, *Carriuolo*, *Cardenas*, and other cases show, FDUTPA firmly rejects any subjective reliance or causation analysis; Bragg's cases are entirely inapposite. Given the Court's previous refusal to entertain Bragg's subjective reliance arguments at the January 3rd hearing, and Plaintiff's repeated efforts to explain the applicable standard to Bragg, it is difficult to see Bragg's attempt to compel Plaintiff's medical records as anything but harassment.

## II. Bragg's request for Plaintiff's prior, unrelated settlement agreement is unwarranted and irrelevant.

Bragg's request that Plaintiff produce her settlement agreement with Goli Nutrition, Inc., is inappropriate for four reasons. First, the Request for Production on which Bragg relies asks merely for "[d]ocuments sufficient to show" Plaintiff's involvement in other class actions, which Plaintiff has satisfied. Second, Bragg has not articulated the relevance of its inquiry. Third, even if Bragg's inquiry is relevant in principle, Bragg fails to cite any remotely analogous case law for its position that Plaintiff's prior, unrelated settlement agreement is relevant to that inquiry or any other. Finally, Bragg already has access to all the information from the settlement agreement that it might ever contest in good faith could be relevant.

First, Bragg seeks a copy of Plaintiff's prior settlement agreement pursuant to its Request for Production No. 6, which asks for "Documents sufficient to show your involvement in each class action lawsuit in which you served as, or sought to serve as, a class representative." ECF No. 41-2 at 5. Plaintiff has already produced documents in this case sufficient to show her involvement in all such class action lawsuits; namely, Plaintiff's discovery responses in that case. Request No. 6, Bragg's sole basis for its demand that plaintiff produce her prior settlement agreement, does not ask for anything more. For that reason alone, as other courts have done, the Court should deny Bragg's request. *See, e.g.*, *Domingo v. Donahoe*, 2013 U.S. Dist. LEXIS 111488, at *11 (N.D. Cal. Aug. 7, 2013) ("The Court denies Plaintiff's motion to compel with respect to RFP 16. Defendant has already responded with documents sufficient to show [the requested information]."); *Nagelberg v. Meli*, 2021 U.S. Dist. LEXIS 53498, at *5 (S.D.N.Y. Mar. 22, 2021) ("[P]laintiffs need not produce 'All' documents if those already produced are sufficient to show the requested information.").

But even beyond this hurdle, Bragg has not articulated why its inquiry as to "[w]hether she just looked out for herself," in an unrelated, previous lawsuit is relevant to Plaintiff's adequacy as a class representative here. ECF No. 41 at 9–10. Bragg does not explain or offer support for what, legally, 'only looking out for oneself' might mean for adequacy. Bragg cites two cases that purportedly speak to the relevance of a plaintiff's experience in prior class actions generally, but neither holding implicates a class representative's conduct in prior class actions. *London v. Walmart*, 340 F.3d 1246 (11th Cir. 2003) simply analyzed whether the proposed class representative had too close of a personal relationship with class counsel. That is not Bragg's concern here, and there is no reason to think a settlement agreement could speak to Plaintiff's personal relationships. Bragg's next case, *Kirkpatrick v. J.C. Bradford*, 827 F.2d 718 (11th Cir.

1987), held that the lower court had applied too strict of a standard in ruling that the proposed class representatives were inadequate. The Court stated that a mere "perceived lack of subjective interest" cannot render a class representative inadequate. *Id.* at 728. Perceived subjective disinterest is not at issue here, could not render Plaintiff inadequate, and in any event, a settlement agreement from a prior, unrelated action could not speak to those concerns.

Third, even if Bragg's stated inquiry was relevant in principle, it is unclear how a settlement agreement might contain information relevant to that concern. Bragg fails to cite any analogous authority to support this doubtful suggestion. In fact, Bragg cannot cite a single case in which a court found that a settlement agreement from a prior, unrelated action was relevant to ***any issue***, let alone any authority holding that a prior settlement agreement could speak to the proposed class representative's adequacy. Bragg puts forward four cases, but each is plainly distinguishable. In each of the first three cases, the movant sought a settlement agreement that non-moving parties in the same action had formed among themselves, which was evidently likely to affect the movant's interests. *See Northstar Moving Holding Co., Inc. v. King David Van Lines*, 2021 U.S. Dist. LEXIS 263247 at *5 (S.D. Fla. Sept. 27, 2021) (plaintiff and co-defendants signed settlement agreements that potentially introduced bias and offset the damages plaintiff could recover against the non-settling, moving defendant); *Kadiyala v. Pupke*, 2019 U.S. Dist. LEXIS 133449 (S.D. Fla. Aug. 8, 2019) (settling defendants' agreement was relevant to non-settling defendant's concerns for offset damages, impeachment, and bias); *Jeld-Wen, Inc. v. Nebula Glass Intern., Inc.*, 2007 U.S. Dist. LEXIS 37134 (S.D. Fla. May 22, 2007) (settlement between third-party plaintiff and third-party defendant was relevant to defendant's ability to impeach the parties to the case and calculate damages). Bragg's final case, *Onita-Olojo v. Sellers*, 2013 U.S. Dist. LEXIS 204544 (S.D. Fla. Nov. 14, 2013) (Valle, M.J.), fares no better. *Onita-Olojo* was a wrongful death action

relating to a plane crash in Nigeria. There, the defendant (the personal representative of the airline pilot's estate) had signed a settlement agreement with the airline. Though the airline was not a party to the wrongful death action, it was inextricably linked to the same nucleus of facts that gave rise to a number of cases, including the wrongful death claim. This Court held that the settlement agreement was relevant because it could indicate that the airline had purchased defendant's consent to jurisdiction in Nigeria—a fact directly relevant to the defendant's motion to dismiss based on forum non conveniens. Plainly, none of Bragg's cases support its dubious suggestion that a settlement agreement between Plaintiff and a party wholly unconnected to the facts in dispute could be relevant. Nor does any of Bragg's authority lend credence to its notion that such a prior, unrelated settlement agreement could bear on Plaintiff's adequacy.

As a final point, Bragg already has access to whatever information contained in the settlement agreement Bragg might in good faith contest is relevant. Plaintiff has already confirmed under oath that she was a named plaintiff in a lawsuit suing Bragg's rival, Goli Nutrition, Inc., ECF No. 41-1 at 9:25–10:3, that the case settled on an individualized basis before class certification, *id.* at 129:6–9, and that Plaintiff received financial compensation as part of that settlement.[3] *Id.* at 87:9–10. Whatever undisclosed information Bragg now seeks could not possibly bear on whether Plaintiff is an adequate class representative in this action. Again, Bragg's request seeks only to harass Plaintiff by means of the discovery process.

**III. Bragg's ESI demands are unwarranted and seek only irrelevant information.**

Bragg's request that Plaintiff conduct ESI searches of her electronic devices and social media accounts is inappropriate for two reasons. First, the documents Bragg expressly seeks

[3] The relevant agreement contains a confidentiality agreement that provides the defendant in that case the right to contest the production of the agreement.

concern only Plaintiff's subjective reliance—an irrelevant issue. Second, Plaintiff has already testified that there are no responsive documents on her computer.

First, Bragg admits that it seeks ESI from Plaintiff's electronic devices because it wants documents reflecting "what representations Plaintiff saw and when she saw them." ECF No. 41 at 10. But just as with Plaintiff's subjective health condition, Plaintiff's subjective reliance on Bragg's marketing is irrelevant. *See Collins*, 2020 U.S. Dist. LEXIS 48236, at *79 ("There are no individualized issues of reliance or causation under FDUTPA."). Whether Bragg deceptively marketed its ACV products such that a reasonable consumer was likely to be misled is a question that, under Florida law, simply cannot concern the specific advertisements Plaintiff herself viewed because "the mental state of each class member is irrelevant." *Carriuolo*, 823 F.3d at 985. *See also Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282–83 (11th Cir. 2011) ("[R]ecovery under the FDUTPA does not hinge on whether a particular plaintiff actually relied on General Mills' claims about Yo-Plus' alleged digestive health benefits.").

If a jury finds that, objectively, Bragg's ACV products can deliver what they promise, Plaintiff's claims will fail—no matter what her social media 'likes' might reflect. But if Bragg's ACV marketing deceives the reasonable consumer, then Plaintiff suffered a legally cognizable injury at the moment she purchased Bragg's ACV products—without regard to the subjective intentions that motivated her purchase. *See Carriuolo*, 823 F.3d at 990 ("[T]he injury occurred when class members paid a price premium at the time of lease or purchase."). Therefore, the Court should deny Bragg's request that Plaintiff conduct ESI searches because Bragg's express purpose is the collection of subjective, irrelevant documents.

Second, just as for Defendant, where Plaintiff has testified under oath that no documents exist, there is no need to conduct ESI searches. *See* Exhibit 2, 72:17–19 (M.J., Valle) ("To clarify,

the Defendant need not run an ESI search as to those requests for productions on which Defendant states that no documents exist.”). Plaintiff has testified that “there are no documents” relating to Bragg on her computer. ECF No. 41-1 at 123:17–20.[4] Thus, just as Bragg need not run ESI searches relating to any Attorney General investigations if it can state (not even under oath) that no such documents exist, Plaintiff need not run ESI searches over her computer where she has testified that it does not contain any documents relating to Bragg. Bragg would impose a double standard on Plaintiff regarding her ESI collection, but the Court should deny this Request.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Bragg’s motion to compel in its entirety, grant Plaintiff entitlement to attorney’s fees, and order such other and further relief as it deems just and proper.

[4] Plaintiff also testified that she purchased a new computer about two years ago, ECF No. 41-1 at 75:1–3, and that she did not recall visiting Bragg’s website since that time. *Id.* at 75:18–20.

Dated: January 19, 2024

Respectfully submitted,

***s/ Alec H. Schultz***
Alec H. Schultz
Carly A. Kligler
HILGERS GRABEN PLLC
1221 Brickell Avenue, Suite 900
Miami, Florida 33131
Telephone: 305.630.8304
Email: aschultz@hilgersgraben.com
Email: ckligler@hilgersgraben.com

Hadyn C. Pettersen (pro hac vice)
HILGERS GRABEN PLLC
1320 Lincoln Mall, Suite 200
Lincoln, Nebraska 68508
Telephone: 402.356.5574
Email: hpettersen@hilgersgraben.com

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of said filing to all CM/ECF participants.

***s/ Alec H. Schultz***
Alec H. Schultz