**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JULIE DURAN,

Plaintiff,

v.

BRAGG LIVE FOOD PRODUCTS, LLC,

Defendant.

**Case No.: 23-cv-60812-SINGHAL/Valle**

**DEFENDANT BRAGG LIVE FOOD PRODUCTS, LLC'S FED.R.CIV.P. 12(b)(1) MOTION TO DISMISS CERTAIN CLAIMS FOR LACK OF STANDING**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
I. INTRODUCTION ........ 1
II. BACKGROUND ........ 2
III. LEGAL ARGUMENT ........ 6
A. Plaintiff fails to establish facts that plausibly demonstrate each element of Article III standing. ........ 6
B. Plaintiff lacks standing to bring claims related to the capsule Supplements because she did not take them and they are a different product from the Liquid ACV Plaintiff alleges she consumed. ........ 8
C. Bragg did not make uniform representations; and Plaintiff does not have standing to pursue FDUTPA claims resulting from advertising she never saw related to cholesterol, blood sugar, or immunity. ........ 13
D. Plaintiff does not have standing to pursue injunctive relief because she does not plan to purchase Bragg products in the future. ........ 18
CONCLUSION ........ 19
LOCAL RULE 7.1(c) CERTIFICATION ........ 20

# TABLE OF AUTHORITIES

## Cases

*Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2015 WL 11182066, at *10 (S.D. Fla. Mar. 20, 2015) .......... 7, 8, 18

*Blobner v. R.T.G Furniture Corp.*, No. 8:17-cv-1676-T-30SPF, 2019 WL 3808130, at *2-4 (M.D. Fla. July 24, 2019) .......... 9

*Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) .......... 14

*Bohlke v. Shearer's Foods, LLC*, No. 9:14-CV-80727, 2015 WL 249418, at *4 (S.D. Fla. Jan. 20, 2015) .......... 8

*City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) .......... 6

*Collins v. Quincy Bioscience LLC*, No. 19-CV-22864, 2020 WL 3268340, (S.D. Fla. Mar. 19, 2020) (Goodman, M.J.) .......... 12

*Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) .......... 8

*Dapeer v. Neutrogena Corp.*, No. 14-22113-Civ-Cooke/Torres, 2015 WL 10521637, at *10 (S.D. Fla. Dec. 1, 2015) .......... 6

*De Lara v. Edition Mgmt. LLC*, No. 18-22630-CIV, 2019 WL 11321026, at *3–4 (S.D. Fla. Feb. 5, 2019) .......... 14

*De Lara v. RB Miami Beach, LLC*, No. 1:18-cv-23229-UU, 2019 WL 11666602, at *2-3 (S.D. Fla. Apr. 22, 2019) .......... 7, 13, 14, 16

*Deere Constr., LLC v. CEMEX Constr. Materials Florida, LLC*, No. 15-24375-CIV, 2016 WL 8542540, at *3 (S.D. Fla. Dec. 1, 2016) .......... 14

*Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) .......... 17

*Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1281 (11th Cir. 2011) .......... 15

*Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. 4th DCA 1998) .......... 16

*Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) .......... 7, 14

*Heckman v. SBE ENT Holdings, LLC*, No. 18-22258-CIV, 2019 WL 1468555, at *4 (S.D. Fla. Feb. 25, 2019) .......... 7, 13, 14, 16

*Heuer v. Nissan*, No. 17-60018, 2017 WL 3475063, at *5 (S.D. Fla. Aug. 11, 2017) (Scola, J.) 12

*Hudson v Rexall Sundown Inc.*, 837 So. 2d 1090 (Fla 4th DCA 2003) .......... 16

*Kurimski v. Shell Oil Co.*, No. 21-80727-CV, 2022 WL 2913742, at *11 (S.D. Fla. June 30, 2022)....... 17

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)....... 1, 6, 7, 19

*Miami Auto. Retail, Inc. v. Baldwin*, 97 So. 3d 846, 857 (Fla. 3d DCA 2012)....... 17

*Molina v. Aurora Loan Svcs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015)....... 17

*Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)....... 1

*Nuwer v. FCA US LLC*, 343 F.R.D. 638 (Dec. 30, 2022) (Singhal, J.)....... 12

*Ohio State Troopers Ass'n v. Point Blank Enters.*, 347 F. Supp. 3d 1207, 1219-20 (S.D. Fla. 2018)....... 7, 8

*Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 481 F. Supp. 3d 1258, 1270–74 (S.D. Fla. 2020) (Ruiz, J.)....... 9

*PB Prop. Mgmt. v. Goodman Mfg. Co., L.P.*, No. 3:12-cv-1366-HES-JBT, 2016 WL 7666179, at *24-25 (M.D. Fla. May 12, 2016)....... 14

*Perisic v. Ashley Furniture Indus.*, No. 8:16-cv-3255-T-17MAP, 2018 WL 3391359, at *3-4 (M.D. Fla. June 27, 2018)....... 15

*Potter v. Potnetwork Holdings, Inc.*, No. 19-24017-CIV, 2020 WL 1516518, at *3 (S.D. Fla. Mar. 30, 2020)....... 9, 10, 12

*Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280-81 (11th Cir. 2000)....... 13

*Reilly v. Amy's Kitchen, Inc.*, No. 13-21525-CIV, 2014 WL 905441, at *2 (S.D. Fla. Mar. 7, 2014)....... 9

*Sabater v. Am. Journey (PET), LLC*, 570 F. Supp. 3d 1160, 1163 n. 1 (S.D. Fla. 2021) (Singhal, J.)....... 1, 18

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)....... 7

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)....... 6

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 n.5 (1998)....... 6

*Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 214 (Fla. 4th DCA 2019)....... 17

*Townhouse Rest. of Oviedo, Inc. v. NuCO2, LLC*, No. 219CV14085-Rosenberg, 2020 WL 5440581, at *13 (S.D. Fla. Sept. 9, 2020)....... 5

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)....... 1, 6

*Vision Power, LLC v. Midnight Express Power Boats, Inc.*, 18-CV-61700-SINGHAL/Valle, 2020 WL 808284, at *3 (S.D. Fla. Feb. 18, 2020) (Singhal, J.) ............................................ 6, 7

*Warth v. Seldin*, 422 U.S. 490, 508 (1975) ........................................................................ 6

*Weiss v. General Motors LLC*, 418 F. Supp. 3d 1173, 1179 (S.D. Fla. 2019) (Scola, J.) ............ 12

*Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1256 (11th Cir. 2023) .................. 8, 13, 18, 19

**<u>Statutes</u>**

Dietary Supplement Health Education Act, Pub. L. No. 103-417, 108 Stat. 4325 (1994) (codified as amended in scattered sections of 21 U.S.C.)........................................................................ 3

Section 501.222, Florida Statutes ........................................................................................ 16

**<u>Rules</u>**

Federal Rule of Civil Procedure 12(b)(1) .......................................................................... 1

**<u>Constitutional Provisions</u>**

U.S. Const., art. III ......................................................................................................... passim

Defendant Bragg Live Food Products, LLC ("Bragg"), pursuant to Federal Rule of Civil Procedure 12(b)(1), *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), and *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) and its progeny, moves for dismissal of multiple claims because Plaintiff fails to meet the constitutional minimum for standing for those claims in this Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and unjust enrichment putative class action.[1]

## I. **INTRODUCTION**

As this Court explained in granting a motion to dismiss for lack of Article III standing when a defendant mounts a factual attack on subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Sabater v. Am. Journey (PET), LLC*, 570 F. Supp. 3d 1160, 1163 n. 1 (S.D. Fla. 2021) (Singhal, J.) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). Thus, "the Court may resolve disputed jurisdictional facts." *Id.* (citing *Morrison*, 323 F.3d at 925). Here, the facts as testified to in Plaintiff's deposition give rise to the record necessary to support this motion and mandate that certain of the claims asserted be dismissed for lack of standing.

In *Sabater*, as here, the named plaintiff in a putative class action sued for a violation of FDUTPA and unjust enrichment.[2] *Sabater*, 570 F. Supp. 3d at 1162. And in *Sabater*, the defendant sought dismissal of the complaint on the grounds that plaintiff lacked Article III standing to bring an action for damages for products she did not purchase and to pursue injunctive relief. On similar

---

[1] Defendant Bragg files this motion promptly following Plaintiff's signing of her deposition transcript on January 8, 2024, in which she testified to facts significantly different than those she plead in her Complaint.

[2] Not relevant here, the plaintiff in *Sabater* also sued for breach of warranty, and defendant sought dismissal of the breach-of-warranty claims on the grounds of failure to state a cause of action. *Sabater* at 1162.

grounds, Bragg herein seeks dismissal for lack of Article III standing of specific claims asserted by Plaintiff for products she did not buy, advertisements she did not see, and for injunctive relief.

Here, Plaintiff is suing Bragg related to three products: (1) Bragg's liquid apple cider vinegar ("Liquid ACV") and (2) two capsule supplements, each supplement containing its own unique formulation and a number of ingredients not contained in Liquid ACV("Supplements"). *See* Complaint (ECF 1-2) ("Compl."). Plaintiff lacks Article III standing to bring claims related to Bragg's Supplements because she did not take them and they are different products from the Liquid ACV product that she claims she did consume and for which she seeks a different measure of damages. Plaintiff also does not have standing to pursue FDUTPA claims relating to advertising she never saw—to wit, related to cholesterol, blood sugar, or immunity, which in any event were irrelevant to her and did not cause her to purchase Bragg's Liquid ACV.[3] And finally, she does not have standing to pursue injunctive relief because she testified clearly that she does not intend to purchase Bragg products again.

## II. BACKGROUND

For decades, Bragg has sold Liquid ACV, which is a food product that has existed in one form or another for centuries and is made from crushing apples, squeezing out the juice, and fermenting the resulting mash and juice. Following fermentation, the Liquid ACV is bottled and sold to consumers who purchase the product for a variety of purposes in addition to wellness, including recipes, salad dressing, barbeque sauce, other sauces or marinades, coleslaw, poaching or boiling eggs, as an all-purpose cleaner, to eliminate odors, as a foot soak, and to trap fruit flies, among other things. There are numerous manufacturers who currently make, market, and sell

[3] While reliance is not an element of a FDUTPA claim, as discussed below, causation and injury in fact are required under the plain meaning of the FDUTPA statute and the standing component of justiciability.

liquid apple cider vinegar, which is not a supplement and is not regulated by the Dietary Supplement Health Education Act, Pub. L. No. 103-417, 108 Stat. 4325 (1994) (codified as amended in scattered sections of 21 U.S.C.) ("the Act").

Beginning in 2021, Bragg also began selling nutritional supplements in capsule form, which are regulated by the Act. Unlike the Liquid ACV, each of the Supplements contains a number of ingredients, including vitamins, minerals, and Bragg's proprietary Apple Cider Vinegar blend, which is comprised of a powdered form of Bragg apple cider vinegar and sodium diacetate, which is not found in Bragg's Liquid ACV. The Supplements each have their own unique formulation, which is different from each other and different from Bragg's Liquid ACV. The Supplements, unlike Liquid ACV, can only be consumed. In compliance with the Act, Bragg timely notified the FDA of the structure and function claims Bragg was making about the Supplements, something not required of food products such as Liquid ACV. The Supplements are also the subject of a pending patent application with the U.S. Patent and Trademark Office based on the unique formulations of the each of the Supplements.

Plaintiff alleges in her Complaint that beginning in January 2020 she began using Bragg's Supplements as part of her daily wellness routine and vaguely alleges that Bragg makes deceptive health claims about its Supplements related to weight, blood sugar/glucose, cholesterol, and immunity because its Supplements did not work. Compl. ¶¶ 1-2.

However, in her deposition, Plaintiff testified to a completely different set of facts, claiming that she began using Bragg's Liquid ACV in 2016 long before the class period – not in 2020 as alleged in her Complaint – and that she only recalls purchasing and consuming a limited quantity of Bragg's Liquid ACV and contrary to the allegations in her Complaint could not recall a single instance when she purchased or consumed either of Bragg's Supplements. Transcript of

Plaintiff's December 8, 2023 deposition, attached as Ex. A ("Duran Dep."), 57:20-60:4, 118:4-14, 118:22-119:10, 108:24-109:22, 110:8-113:17, 116:11-19, 116:21-117:8, 148:21-150:1.[4]

Contrary to the allegations in her Complaint, Plaintiff acknowledged in her deposition that she did not use any Bragg products on a daily basis and did not consume the Liquid ACV as directed on the label. Duran Dep., 62:2-24, 64:16-65:14, 140:6-141:13.

Further, under oath, Plaintiff admitted she only purchased Bragg's Liquid ACV for "weight management" or "fat burning," not any other of the purposes set forth in her Complaint. *Compare* Compl. ¶¶ 1-2, 13, 15-16, 20 *to* Duran Dep., 54:3-13, 76:14-77:5. She conceded she "wasn't taking it" for reasons related to blood sugar or cholesterol and had no idea whether it worked or did not work for such purposes. Duran Dep., 132:22-133:6.

Under oath, Plaintiff could identify no representations of Bragg that she actually saw, much less relied upon. Duran Dep., 50:16-52:22, 54:3-56:15, 62:2-24, 64:16-65:14, 140:6-141:13, 67:11-70:4, 70:7-23, 75:10-77:11, 78:23-80:2. All she could say was that she began taking Bragg's Liquid ACV in 2016 after seeing something "on social media." However, she could not remember if what she saw was on Facebook or Instagram, could not identify the "influencer" who posted it, and could not recall the names of any influencers she had ever seen on social media regarding Bragg's products. *Id.*, 67:11-70:4. Finally, she could not say if anything she saw in 2016 was made

[4] Strangely, while most of Plaintiff's Complaint focuses on Bragg's Supplements, Plaintiff could not testify that she ever used Bragg's Supplements. This is just one of the multitude of discrepancies between Plaintiff's Complaint and her sworn deposition testimony.

or sponsored by Bragg. *Id.*, 77:6-11.[5] .[6] Further, Plaintiff did not know if the only two statements she alleged in her Complaint (¶ 20) were "misrepresentations" that induced her to purchase Bragg's products were in fact misrepresentations or if they were in fact true statements. *Compare* sworn Answer to Interrogatory 11, attached hereto as Ex. B, to sworn testimony, Duran Dep. at 103:17-104:12.[7]

---

[5] She could not recall what social media she saw Bragg's Apple Cider Vinegar on in 2016 and was only able to recall that she saw something "[j]ust about being able to suppress your appetite using Bragg's" and she did not recall exactly what she saw but it could have been a post by a social media influencer, though she could not remember who the influencer was and did not remember the names of any influencers she had ever seen on social media regarding Bragg products. *Id.*, 67:11-70:4, 96:22-97:21. She could not tie the unnamed influencer to Bragg.

She could not recall if she visited Bragg's website in 2016 when she "looked up the product online" and "Googled it," could not recall how many times she had ever visited the Bragg website, could not recall when she visited it, and could not recall "specifically anything [she] ever saw on a Bragg website." *Id.*, 70:24-71:22, 75:10-76:8, 78:23-80:2, 104:15-106:4. She recalled that she saw positive third-party reviews of Bragg's Liquid ACV which did influence her decision to purchase the product. *Id.*, 77:12-25.

[6] At her deposition, Plaintiff repeatedly testified she also did not or could not recall other basic details crucial to her claims. For example:

- Plaintiff could not recall basic details about her weight, even though she claims she took Bragg's Liquid ACV for weight management and contends that it did not work—deferring to her medical records, even though she refuses to produce them. *Id.*, 154:2-155:21).
- Plaintiff could not recall how long she drank Bragg's Liquid ACV. *Id.*, 20-22.
- Plaintiff could not recall how many bottles she purchased of Bragg's Liquid ACV—only that she purchased from 6 to 12 bottles of the Liquid ACV in total over a 6-year period. Id., 57:14-19. Based on the instructions on the label and the size bottles she typically purchased, when used as directed, a bottle would last roughly 1 month. Thus, based on Plaintiff's testimony she purchased between a 6 and 12-month supply of product over a 72-month period.
- She could not recall if she had ever heard of Dr. Ryan, who is her expert in this case, and had not read his report. *Id.*, 34:4-10.

[7] Courts in this District have found these kinds of plaintiff recollection issues "quite troubling" in analyzing the appropriateness of class certification. *See Townhouse Rest. of Oviedo, Inc. v. NuCO2, LLC*, No. 219CV14085-Rosenberg, 2020 WL 5440581, at *13 (S.D. Fla. Sept. 9, 2020) (declining to certify FDUTPA class action where, among other things, at their depositions the named plaintiffs "could not say whether they ever reviewed the supposedly deceptive language on their invoices," and one plaintiff "was unable to recall virtually anything about the circumstances

Based on these facts, as demonstrated below, Plaintiff lacks Article III standing for many of the claims that she seeks to assert.

## III. <u>LEGAL ARGUMENT</u>

### A. Plaintiff fails to establish facts that plausibly demonstrate each element of Article III standing.

As the United States Supreme Court has recently and repeatedly recognized, "standing ***is not dispensed in gross***; rather, plaintiffs ***must*** demonstrate standing for ***each claim*** that they press and for ***each form of relief*** that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (emphasis added). Article III of the United States Constitution requires three elements that form the "irreducible constitutional minimum" for standing. *Vision Power, LLC v. Midnight Express Power Boats, Inc.*, 18-CV-61700-SINGHAL/Valle, 2020 WL 808284, at *3 (S.D. Fla. Feb. 18, 2020) (Singhal, J.) (quoting *Lujan*, 504 U.S. at 560. As this Court has explained:

> A plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, [578 U.S. 330, 339,] 136 S. Ct. 1540, 1548 (2016) An injury "must be ... distinct and palpable, and not abstract or conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Redressability tests "whether a plaintiff 'personally would benefit in a tangible way from the court's intervention.' " *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 n.5 (1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975)). "[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Lujan*,

---

regarding her negotiation and execution of" an agreement at issue); *see also Dapeer v. Neutrogena Corp.*, No. 14-22113-Civ-Cooke/Torres, 2015 WL 10521637, at *10 (S.D. Fla. Dec. 1, 2015) (declining to certify FDUTPA class where, among other things, "[e]ven with highly circumstance-specific questions, Plaintiff himself is unable to recall details crucial to his claim," explaining it was "obviously quite troubling because, if the representative plaintiff who was offended enough to bring suit cannot remember these important details, it is unlikely that many putative class members will remember either," which "undermines Plaintiff's burden").

> 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).

*Vision Power*, 2020 WL 808284, at *3.

Courts in the Southern District have concluded, when facing FDUTPA putative class actions, that plaintiffs simply do "not have standing to bring claims for products that they did not purchase." *Ohio State Troopers Ass'n v. Point Blank Enters.*, 347 F. Supp. 3d 1207, 1219-20 (S.D. Fla. 2018) (collecting cases).

Similarly, courts in this District have repeatedly held that plaintiffs do not have standing to bring FDUTPA class action claims based on representations they never saw where the alleged representations are not uniform, and class members are exposed to disparate or different representations in different forms or at different times. *See, e.g., Heckman v. SBE ENT Holdings, LLC*, No. 18-22258-CIV, 2019 WL 1468555, at *4 (S.D. Fla. Feb. 25, 2019) (dismissing Plaintiff's class action FDUTPA claims for lack of standing and explaining that "it is not enough that the conduct of which the plaintiff complains will injure ***someone***") (emphasis in original) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)); *see also De Lara v. RB Miami Beach, LLC*, No. 1:18-cv-23229-UU, 2019 WL 11666602, at *2-3 (S.D. Fla. Apr. 22, 2019) (dismissing plaintiff's class action FDUTPA claims for lack of standing, explaining "it is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of the many claims he wishes to assert").

Finally, a plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaging in allegedly false or misleading advertising unless "they intend to purchase the allegedly mislabeled product again." *Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2015 WL 11182066, at *10 (S.D. Fla. Mar. 20, 2015). Put differently, a "plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaging in

false or misleading advertising unless there is a likelihood that the plaintiff would suffer future harm from the defendant's conduct—i.e., the plaintiff is still interested in purchasing the product in question." *Id.* (collecting cases); *see also Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1256 (11th Cir. 2023) (named plaintiffs lacked standing and district court was without jurisdiction to grant their requested injunctive relief).

### B. Plaintiff lacks standing to bring claims related to the capsule Supplements because she did not take them and they are a different product from the Liquid ACV Plaintiff alleges she consumed.

Courts in this District and others in the Eleventh Circuit have concluded that plaintiffs do not have standing to bring claims for products that they did not purchase. *See*, *Ohio State Troopers Ass'n v. Point Blank Enters.*, 347 F. Supp. 3d 1207, 1219-20 (S.D. Fla. 2018). In *Ohio State Troopers*, the plaintiffs/putative class representatives, sued the defendant for, among other things, violation of FDUTPA related to a line of ballistic vests, when they had only purchased two models of the vests. *Id.* at 1218-19, 1222-23. The plaintiffs moved to certify a class and the court noted that, as a threshold matter, it needed to determine that at least one named class representative had standing under Article III to raise each class subclaim. *Id.* at 1218-1.

The court discussed, at length, the developing precedent in this Circuit that plaintiffs lack standing to pursue FDUTPA claims for products they did not purchase. *Id.* at 1219-21 (collecting and discussing cases). In addition to the extensive precedent discussed in *Ohio State Troopers*, many other courts in this District have held that a putative class plaintiff has no standing to "raise claims relating to products which she herself did not purchase." *Bohlke v. Shearer's Foods, LLC*, No. 9:14-CV-80727, 2015 WL 249418, at *4 (S.D. Fla. Jan. 20, 2015) (in putative class action for, among other things, FDUTPA and unjust enrichment, dismissing claims relating to consumer products plaintiff did not purchase); *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) (same); *Reilly v. Amy's Kitchen, Inc.*, No. 13-21525-CIV, 2014 WL 905441, at *2 (S.D.

Fla. Mar. 7, 2014) (same); *see also Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 481 F. Supp. 3d 1258, 1270–74 (S.D. Fla. 2020) (Ruiz, J.) (in "nearly identical action," to 347 F. Supp. 3d 1207 (S.D. Fla. 2018), the Court concluded plaintiff who "only purchased ***one*** model of Point Blank's concealable SSBS vests . . . does not have standing to represent his proposed classes" which included purchasers of all models of the vests, (emphasis in original), *aff'd,* 20-13588, 2021 WL 4427772 (11th Cir. Sept. 27, 2021).[8]

While a minority of courts in this District have allowed plaintiffs to proceed under a narrow exception when products are "materially identical," that exception could not apply here because the products at issue are not "materially identical" to each other. Indeed, Plaintiff actually pleads that the liquid ACV and the Supplements are different and she seeks different damages for the Liquid ACV from the Supplements. *See, e.g.,* Compl. ¶¶ 1-2, 13-19, 39-40, 44. And factually there can be no dispute that the Liquid ACV and the two capsule Supplements are materially different. They are different in form, contain different ingredients, are used for different purposes by consumers, have different labels with different representations, and are composed of different formulations. Indeed, the Supplements are each distinct from each other. *See* Boardman Declaration. Thus, Bragg's Liquid ACV and its Supplements are "clearly not 'essentially the same'" and thus the narrow "essentially the same" exception does not apply to provide Article III standing for Plaintiff who could only recall purchasing and consuming Bragg's Liquid ACV. *See Potter v. Potnetwork Holdings, Inc.*, No. 19-24017-CIV, 2020 WL 1516518, at *3 (S.D. Fla. Mar. 30, 2020).

---

[8] Courts in the Middle District have ruled similarly. *Blobner v. R.T.G Furniture Corp.*, No. 8:17-cv-1676-T-30SPF, 2019 WL 3808130, at *2-4 (M.D. Fla. July 24, 2019) (in FDUTPA putative class action, the court discussed similar precedent and concluded the plaintiff who sought to represent all persons who purchased ***any*** bonded leather furniture from Rooms to Go "lacks standing as to any product he did not purchase," and the "standing defect is fatal to [plaintiff's] proposed class").

The *Potter* case presents a very similar situation to that presented in this case. In *Potter*, 2020 WL 1516518, Judge Scola addressed standing in a FDUTPA putative class action regarding the defendants' CBD products, which came in different forms, including liquid and capsules. Plaintiff argued that he had standing to assert FUDPTA claims for a variety of CBD products he did not purchase because all were CBD products and thus the "essentially the same" argument applied to establish standing. The Court noted that "[m]any courts in this district have found that a plaintiff in a consumer class action lacks standing to challenge the marketing of a non-purchased product because the plaintiff has suffered no injury-in-fact," *Id.* at *2. The court examined precedent and looked at the potential exception and the uncertainty or disagreement about "a theory that products are essentially the same" and rejected that argument:

> this exception does not apply to Potter's claims. Potter has certainly not pled sufficient facts to demonstrate that the products are "materially identical" to each other; instead, she has pled facts that demonstrate the opposite. The Complaint states that the Defendants sell "a variety of CBD products" including CBD oil, CBD edibles, CBD capsules, CBD drinks, CBD vape oil and Bath & Body and Cosmetics products. (ECF No. 22 at ¶ 2.) These products are clearly not "essentially the same."

*Id.*

The same applies here.

Liquid ACV is not a supplement and is not regulated by the Dietary Supplement Health Education Act ("the Act"). Rather, Liquid ACV is a food product and has existed in one form or another for centuries. It is made from crushing apples, squeezing out the juice and fermenting the resulting mash and juice. Dec. of Linda Boardman, attached hereto as Ex. C, at ¶ 4. After completion of the fermentation process the ACV is bottled and sold in liquid form to consumers who purchase it for a wide variety of purposes in addition to wellness, including recipes, salad dressing, barbeque sauce, other sauces or marinades, coleslaw, poaching or boiling eggs, as an all-purpose cleaner, to eliminate odors, as a foot soak, and to trap fruit flies, among other things.

Boardman Dec. ¶5. During the class period, the labels for Bragg's Liquid ACV contained no structure and function claims relating to weight, glucose, cholesterol, or immunity. Boardman Dec. ¶7 and Ex. 1.

While as to the Supplements, Bragg began selling the first of them in 2021, in capsule form, its first supplement being the Apple Cider Vinegar Supplement. Then, in 2022 Bragg began to sell a second supplement called the True Energy Apple Cider Vinegar Supplement. Unlike the Liquid ACV, each of the Supplements contain a number of ingredients, including vitamins, minerals, and Bragg's proprietary Apple Cider Vinegar blend, which is comprised of a powdered form of Bragg apple cider vinegar and sodium diacetate, which is not found in Bragg's Liquid ACV. Boardman Dec. ¶ 9. These different ingredients and formulations, are listed on the labels of the Supplements, as are the structure and function claims Bragg makes about the Supplements. The Supplements themselves have unique formulations from each other and unlike Liquid ACV, the Supplements are regulated under the Act and can only be used for consumption. In compliance with the Act, Bragg timely notified the FDA of the structure and function claims Bragg was making about the Supplements, something not required of food products such as liquid apple cider vinegar. The Supplements are also the subject of a pending patent application with the US Patent and Trademark Office based on the unique formulations of the each of the Supplements. Boardman Dec. ¶ 10. Thus, like the CBD products in *Potter*, Bragg's Liquid ACV is an entirely different product from its two nutritional supplements (which are different from each other) and Plaintiff's concession that she can only remember purchasing and consuming Bragg's Liquid ACV is fatal to her standing to pursue claims as to the Supplements.

Unlike the narrow situation in which Courts have applied the "essentially the same argument to standing, this is ***not*** a case involving a single identical physical component within a

product made of the same material in the same physical form that does not get ingested in the human body like an active head restraint, drive shaft, or melting dashboard. *See Nuwer v. FCA US LLC*, 343 F.R.D. 638 (Dec. 30, 2022) (Singhal, J.) (The *Nuwer* plaintiffs submitted evidence to support their claim that the defendant manufacturer installed the same active head restraint (AHR) across all car models in question, and the AHR was made of the same plastic (PC/ABS) that progressively cracked and weakened under pressure, putting the AHR at risk of deploying without warning and causing injury while the vehicles were in normal operation. *Weiss v. General Motors LLC*, 418 F. Supp. 3d 1173, 1179 (S.D. Fla. 2019) (Scola, J.) (*Weiss* was a class action involving different SUVs and pickup trucks made by the same manufacturer which all had the same exact defective drive shaft (an aluminum tube rubbing the length of the interior from engine to wheels) which would cause the "Chevy Shake"—i.e., the cars would shake); *Heuer v. Nissan*, No. 17-60018, 2017 WL 3475063, at *5 (S.D. Fla. Aug. 11, 2017) (Scola, J.) (*Heuer* was a class action involving melting dashboards on Nissan GTRs from model years 2010 to the present. The plaintiff alleged all the dashboards on the same model car from different years were materially identical, and indeed "the same product."). Notably, while Judge Scola determined that the <u>automotive</u> products in *Weiss* and *Heuer* were "materially identical," in *Potter v. Potnetwork*, 2020 WL 1516518, he found that the varying CBD products – similar to the Liquid ACV as compared to the two capsule Supplements at issue here -- were ***not*** the same.

***This is also <u>not</u> a case involving different solid forms of a product with the same formulation and active ingredient*** as the Court was addressing in *Collins v. Quincy Bioscience LLC*, No. 19-CV-22864, 2020 WL 3268340, (S.D. Fla. Mar. 19, 2020) (Goodman, M.J.) The *Collins* court ultimately concluded the Prevagen plaintiffs could proceed where the plaintiffs had purchased different solid forms of the product, i.e., different strength capsules and chewables.

However, the *Collins* case did not involve products regulated under different laws (food verses supplements) with different ingredients, with different formulations and containing different representations on their labels which could be used for different purposes (as Liquid ACV can be, compared to the Supplements). *Compare* Boardman Dec. ¶¶ 5-9 *to* Compl. ¶¶ 1-2, 13, 15-16, 20 (relating to the Supplements).

Thus, Plaintiff does not have standing to pursue claims on behalf of individuals who purchased Bragg's capsule Supplements. Accordingly, this Court must dismiss the claims to the extent they are based on Bragg's capsule Supplements.

### C. Bragg did not make uniform representations; and Plaintiff does not have standing to pursue FDUTPA claims resulting from advertising she never saw related to cholesterol, blood sugar, or immunity.

In FDUTPA class actions, where a defendant does not make uniform representation plaintiffs do not have standing to pursue claims arising from alleged misrepresentations they never saw. *See, e.g., Heckman v. SBE ENT Holdings, LLC*, No. 18-22258-CIV, 2019 WL 1468555, at *4 (S.D. Fla. Feb. 25, 2019) (dismissing Plaintiff's class action FDUTPA claims for lack of standing and explaining that "it is not enough that the conduct of which the plaintiff complains will injure ***someone***") (emphasis in original) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)); *see also De Lara v. RB Miami Beach, LLC*, No. 1:18-CV-23229-UU, 2019 WL 11666602, at *2-3 (S.D. Fla. Apr. 22, 2019), *order clarified,* 2019 WL 11666603 (S.D. Fla. May 13, 2019) (clarification as to status as final order). *See also*, *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1261 (11th Cir. 2023) (citing *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280-81 (11th Cir. 2000) (noting that the "disparate" injuries suffered by different class members "may be better addressed through several subclasses rather than one large class which would require separate class representatives who purchased each specific product ")).

In *De Lara v. RB Miami Beach*, 2019 WL 11666602, at *2-3, for example, the court dismissed FDUTPA class action claims for lack of standing based on restaurant menus and bills the plaintiff never saw, where the plaintiff did not establish that the other restaurants all included similar service charges. Citing Eleventh Circuit precedent, the court explained:

> it is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.
>
> *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (emphasis added); *see also Blum v. Yaretsky*, 457 U.S. 991, 999, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1982) ("It is not enough that the conduct of which the plaintiff complains will injure someone. The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.") (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-67, 92 S.Ct. 1965, 1968-69, 32 L.Ed.2d 627 (1972)).

*Id. See also Heckman*, 2019 WL 1468555, at *3-4 (quoting *Griffin v. Dugger*, 823 F.2d at 1483) (dismissing Plaintiff's class action FDUTPA claims for lack of standing and explaining that it "is not enough that the conduct of which the plaintiff complains will injure ***someone***") (emphasis in original); *De Lara v. Edition Mgmt. LLC*, No. 18-22630-CIV, 2019 WL 11321026, at *3–4 (S.D. Fla. Feb. 5, 2019) (same); *cf. Deere Constr., LLC v. CEMEX Constr. Materials Florida, LLC*, No. 15-24375-CIV, 2016 WL 8542540, at *3 (S.D. Fla. Dec. 1, 2016) (in class action involving FDUTPA claim, recognizing that consumers who are exposed to different sets of information "may not have been reasonably deceived" and denying class certification); *PB Prop. Mgmt. v. Goodman Mfg. Co., L.P.*, No. 3:12-cv-1366-HES-JBT, 2016 WL 7666179, at *24-25 (M.D. Fla. May 12, 2016) (in putative FDUTPA class action where members of the proposed class would "have been exposed to different representations," the court explained "Different plaintiffs within the proposed class will have been exposed to different, varying statements alleged by Plaintiffs to constitute

misrepresentations," and thus "none of the named Plaintiffs can be said to be a typical representative of the class for purposes of the misrepresentation component of the FDUTPA claim"); *Perisic v. Ashley Furniture Indus.*, No. 8:16-cv-3255-T-17MAP, 2018 WL 3391359, at *3-4 (M.D. Fla. June 27, 2018) (In FDUTPA putative class action involving DuraBlend® synthetic leather, distinguishing cases and explaining that examining the merits of each potential class member's claim is needed to determine whether each is the victim of "a deceptive act or unfair trade practice.").

***This is <u>not</u> a case involving a single product with an identical marketing message on each container of the product***. *See, e.g., Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1281 (11th Cir. 2011) (FDUTPA class in case with just one representation and one product line at issue, where the representation appeared on every single yogurt cup's packaging and all marketing material and advertisements expressly communicated in one way or another to every purchaser of Yo-Plus yogurt in Florida the common message that Yo-Plus regulated or promoted "digestive health"). Here, the labels on Bragg's Liquid ACV during the class period did not contain structure and function claims relating to maintaining a healthy weight, glucose, cholesterol, or immunity. Conversely, the labels on Braggs nutritional capsule Supplements contain the permitted structure and function claims on their labels which were timely disclosed to the regulatory authorities. Boardman Dec. ¶ 9. Thus, unlike the purchasers of Danon's probiotic yogurt at issue in *Fitzgerald*, consumers who purchased Bragg's liquid ACV were not exposed to the same representations on the labels of the Liquid ACV as were on the labels of the Supplements.

Here, Plaintiff has also conceded that the only representation that she ever heard from any source was that Bragg's Liquid ACV suppressed appetite and thus contributed to weight loss and

burned fat.[9] Duran Dep. 67:11-70:4, 96:22-97:21. She further testified that that social media post along with positive product endorsements from members of the public is what caused her to purchase Bragg's Liquid ACV. Duran Dep. 77:12-25. Finally, Plaintiff was adamant that she did not see any advertisements relating to glucose, cholesterol, or immunity, did not purchase Bragg's Liquid ACV for those purposes and did not know if any representations relating to those subjects were true or false. Duran Dep. 54:3-13, 76:14-77:5, 132:22-133:6, 103:17-104:12. Thus, Plaintiff does not have Article III standing to pursue claims for advertisements she did not see and which did not cause her to purchase Bragg's Liquid ACV. While these facts support dismissal for lack of standing as to all of the claims other than weight, they also provide further support for dismissal as to Bragg's Supplements which did not come on the market until 2021 and whatever statements she heard that caused her to purchase Bragg's Liquid ACV occurred many years before Bragg's Supplements even existed. *See, e.g., De Lara v. RB Miami Beach*, 2019 WL 11666602, at *2-3; *Heckman*, 2019 WL 1468555, at *3-4; *see also Hudson v Rexall Sundown Inc.*, 837 So. 2d 1090 (Fla 4th DCA 2003) (denying class certification in a FDUPTA case because individualized fact inquiry was required to determine if he or she read the label).

Related to the required standing component of justiciability, the plain language of Section 501.222, Florida Statutes expressly requires causation and injury, providing in relevant part that "anyone *aggrieved by* a violation of this part may bring an action," and describing "any action brought by a person *who has suffered a loss as a result of a violation.*" *Id.* (emphasis added). *See also Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. 4th DCA 1998) ("[T]o be actionable an unfair or deceptive trade practice must be the cause of loss or damage to a consumer."). To that end, "Florida appellate courts and the Eleventh Circuit have rejected

---

[9] Plaintiff could not testify that she ever saw an ad from Bragg relating to weight management, and thus Bragg reserves its right to address that issue at summary judgment.

FDUTPA claims based on lack of proximate causation or an insufficient causal link between the deceptive act and damages." *Kurimski*, 2022 WL 2913742 at *11 (citing *Molina v. Aurora Loan Svcs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015) (affirming dismissal of FDUTPA claim on a motion to dismiss in part because the plaintiff did not allege causal link between the alleged deception and damages); *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 214 (Fla. 4th DCA 2019) (affirming summary judgment for defendant where plaintiff admitted to facts that showed that the deceptive act was not the proximate cause of damages); *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (affirming summary judgment for defendant in part due to failure to present or allege "evidence that the allegedly misleading statement caused [the plaintiff's] claimed damages")); *see also Miami Auto. Retail, Inc. v. Baldwin*, 97 So. 3d 846, 857 (Fla. 3d DCA 2012) ("FDUTPA requires proof of each individual plaintiff's actual (not consequential) damage and defendant's causation of damage, requiring evidence regarding how specific misrepresentations to individual Brickell Honda customers decreased the value of their deal for a car.").

Moreover, while a FDUTPA plaintiff "need not allege or prove actual reliance," it is well-established that causation and an injury in fact are still required for a named plaintiff in an action -- "*there still must be a causal connection between the alleged deceptive act and the alleged damages*." *Kurimski v. Shell Oil Co.*, No. 21-80727-CV, 2022 WL 2913742, at *11 (S.D. Fla. June 30, 2022) (emphasis added) (appeal dismissed, No. 22-12398-CC, 2022 WL 18283285 (11th Cir. Oct. 19, 2022).

If Plaintiff did not see any representations by Bragg related to cholesterol, glucose, or immunity and did not purchase Bragg's Liquid ACV for those purposes, she lacks standing and simply cannot bring claims based on those representations. Accordingly, Plaintiff does not have

standing and this Court must dismiss the claims to the extent they are based on representations about cholesterol, glucose, or immunity.

### D. Plaintiff does not have standing to pursue injunctive relief because she does not plan to purchase Bragg products in the future.

Finally, this Court must dismiss Plaintiff's claim for injunctive relief because a plaintiff "seeking to enjoin a manufacturer from deceptively labeling a product cannot establish Article III standing if she is not likely to purchase the 'noncompliant' product in the future." *See, e.g., Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2015 WL 11182066, at *11 (S.D. Fla. Mar. 20, 2015) (dismissing Amended Complaint in FDUTPA class action for lack of standing "insofar as it seeks injunctive relief").

In *Sabater*, 570 F. Supp. 3d at 1165, for example, a putative class action for, among other things, FDUTPA and unjust enrichment, the defendants similarly attacked the plaintiff's Article III standing. As to injunctive relief, this Court granted the motion to dismiss, explaining:

> Plaintiff specifically stopped feeding his dogs the Beef & Sweet Potato Recipe allegedly because of his dogs' adverse reactions to the wheat. Thus, Plaintiff cannot plausibly allege that he will purchase the products in the future if they are properly labeled as containing grain, when his whole theory of the case is that he does not want to feed his dogs grain. Plaintiff therefore fails to establish a substantial likelihood of future injury for injunctive relief.

*Id.*

Most recently, the Eleventh Circuit addressed this issue in *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1256 (11th Cir. 2023), another putative class action. The court found that the *Williams* complaint provided "no basis to conclude that they have 'actual or imminent' plans to purchase" the defendants' products again," and that, in fact, all indications were that the named plaintiffs would not purchase the products again, given the plaintiffs' allegations that the defendants made "a plethora of false statements" and the products were purportedly "worthless." *Id.* The court explained that the plaintiffs' allegations are "exactly the sort of 'some day intentions

... without any description of concrete plans' that the Supreme Court has instructed are insufficient to confer Article III standing." *Id.* at 1256 (quoting *Lujan*, 504 U.S. at 564). Thus, the Eleventh Circuit concluded, the named plaintiffs lacked standing, and the district court "was without jurisdiction to grant their requested injunctive relief." *Id.*

Here, similarly Plaintiff clearly testified under oath that she has no intention of buying any Bragg Apple Cider Vinegar products in the future because she does not believe that they will assist her in losing weight and burning fat. Duran Dep., 65:15-21. Accordingly, if she will not be buying any of Bragg's products in the future even if the allegedly deceptive advertising is changed than she cannot establish an "injury in fact" for purposes of standing to bring an injunction claim and this Court must dismiss all claims for injunctive relief.

## CONCLUSION

For all the reasons set forth above, Bragg's Motion should be granted, and this Court should dismiss for lack of Article III standing all claims which do not relate to Liquid ACV, and "weight or weight management" as well as Plaintiff's claims seeking injunctive relief, and order such other and further relief as the Court deems just and proper.

**LOCAL RULE 7.1(c) CERTIFICATION**

Pursuant to Southern District of Florida Local Rule 7.1(c), undersigned counsel for Defendant certifies that they have conferred with counsel for Plaintiff in a good faith effort to resolve the issues raised by the Motion, including discussing the rationale and interpretation of the case law during multiple telephonic and video conferrals related to the Parties' discovery dispute throughout January 2024, and confirmed on February 5, 2024 that these articulated reasons and case law apply to this dispute and the Parties were unable to agree and require court intervention.

Dated: February 5, 2024

Respectfully submitted,

*/s/ Mark F. Bideau*

MARK F. BIDEAU, Esq.
Fla. Bar No. 564044
MATTHEW A. RICHARD, Esq.
Fla. Bar No. 1031327
VANESSA PALACIO, Esq.
Fla. Bar No. 98054
**GREENBERG TRAURIG, P.A.**
777 South Flagler Drive, Suite 300 East
West Palm Beach, FL 33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222
bideaum@gtlaw.com
matthew.richard@gtlaw.com
palaciov@gtlaw.com
thomasd@gtlaw.com
FLService@gtlaw.com

*Counsel for Defendant Bragg Live Food Products, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 5, 2024, I served the foregoing document using the CM/ECF system, which will send notification of filing to all counsel of record.

*/s/ Mark F. Bideau*
Mark F. Bideau